1  WRIGHT, FINLAY & ZAK, LLP
   Kathy Shakibi, Esq., SBN 237182
2  4665 MacArthur Court, Suite 200
   Newport Beach, CA 92660
3  Tel: (949) 477-5050
4  Email: kshakibi@wrightlegal.net

5  Attorneys for Defendant,
   Selene Finance LP
6  erroneously named herein as
   Selene Finance
7

8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11                 OAKLAND COURTHOUSE

12  THEYA KANAGARATNAM,              Case No.:  4:25CV7833

13              Plaintiff,           *Assigned to Hon. Yvonne Gonzalez
                                     Rogers*
14     vs.

15                                   DEFENDANT'S REQUEST FOR
                                     JUDICIAL NOTICE IN
16  SELENE FINANCE,                  SUPPORT OF MOTION TO
                                     DISMISS COMPLAINT
17              Defendant.

18                                   *[Filed concurrently with Notice of
                                     Motion and Motion to Dismiss
19                                   Complaint and Proposed Order]*

20
                                     Hearing:
21                                   Date: December 2, 2025
                                     Time: 2:00 p.m.
22                                   Ctrm: 1

23
                                     Complaint filed on: 9-15-2025
24

25

26        Pursuant to Federal Rules of Evidence Rule 201, and in support of the concurrently filed Motion

27  to Dismiss the Complaint, Defendant, Selene Finance LP, *erroneously named herein as* Selene Finance,

28  respectfully requests that the Court take judicial notice of the following true and correct copies of

                                     1

publicly filed and/or recorded documents:

| Exhibit No. | Document |
|:---:|---|
| 1 | A Grant Deed recorded on December 11, 2002, which vested title to the property located at 2316 Lakeshore Ave, Unit #16, Oakland, CA 94606 ("Property") to Plaintiff. |
| 2 | A Deed of Trust recorded on June 19, 2013, in Alameda County Recorder's Office as Instrument Number 2013215140. |
| 3 | An Assignment of Deed of Trust recorded on April 5, 2023, in Alameda County Recorder's Office. |
| 4 | An Assignment of Deed of Trust (a second one) recorded on April 5, 2023, in Alameda County Recorder's Office. |
| 5 | A Substitution of Trustee recorded on June 22, 2023, in Alameda County Recorder's Office. |
| 6 | A Notice of Default recorded on October 9, 2023, in Alameda County Recorder's Office. |
| 7 | A Notice of Trustee Sale recorded on January 10, 2024, in Alameda County Recorder's Office. |
| 8 | A Complaint filed on January 29, 2024, in the Superior Court of California, County of Alameda with case number 24CV061740 ("2024 Lawsuit") |
| 9 | The docket for the 2024 Lawsuit. |
| 10 | Order denying Plaintiff's Ex Parte Application to Restrain and Enjoin the Trustee Sale entered in the 2024 Lawsuit. |
| 11 | The docket for In Re: Theya Kanagaratnam, filed in the United States Bankruptcy Court, California Northern, on February 15, 2024, with case number 4:24bk40209. |
| 12 | A Final Decree entered on July 28, 2025, in In Re: Theya Kanagaratnam, filed in |

2

| Exhibit No. | Document |
|---|---|
| | the United States Bankruptcy Court, California Northern, with case number 4:24bk40209. |
| 13 | The First Amended Complaint filed on June 5, 2024, in the 2024 Lawsuit., ("FAC"),  minus the exhibits attached thereto. |
| 14 | The Superior Court's Order dated August 22, 2024, sustaining the demurrer to FAC without leave to amend. |
| 15 | Judgment of Dismissal With Prejudice entered on August 29, 2024. |
| 16 | Notice of Entry of Judgment of Judgment of Dismissal With Prejudice entered on September 20, 2024. |
| 17 | Order on Motion to Set Aside/Vacate Judgment, entered on November 7, 2024. |
| 18 | Order entered on September 30, 2024 and Notice of Rejection-Pleadings entered on September 15, 2025. |
| 19 | Notice of Trustee Sale recorded on August 4, 2025, in Alameda County Recorder's Office. |
| 20 | Screen print out from Nationwide Posting & Publication's website for trustee sale number CA08000646-23-1. |

Respectfully submitted,

WRIGHT, FINLAY & ZAK, LLP


Dated: October 16, 2025

By: */s/ Kathy Shakibi*
Kathy Shakibi, Esq.
Attorneys for Defendant,
Selene Finance LP
*erroneously named herein as* Selene Finance

3

# EXHIBIT "1"

RECORDING REQUESTED BY
**CHICAGO TITLE COMPANY**
AND WHEN RECORDED MAIL TO

THEYA KANAGARATNAM
2316 Lake Shore Avenue, #16
Oakland, California 94606

**2002577971** 12/11/2002 08:30 AM
OFFICIAL RECORDS OF   RECORDING FEE: 10.00
ALAMEDA COUNTY       COUNTY TAX      385.00
PATRICK O'CONNELL     CITY TAX:       5250.00

2   PGS

Escrow No.   645435 - KM
Order No.    645435 - BLO MON

———— SPACE ABOVE THIS LINE FOR RECORDER'S USE ————

# GRANT DEED

The undersigned declares that the documentary transfer tax is  $385.00                    and is

[X]  computed on the full value of the interest or property conveyed, or is
[ ]  computed on the full value less the value of liens or encumbrances remaining thereon at the time of sale.
The undersigned declares that the city/county transfer tax is  $5250.00
The land, tenements or realty is located in  [ ] unincorporated area  [X] City of Oakland
FOR A VALUABLE CONSIDERATION , receipt of which is hereby acknowledged,
SIU FUN LAM, A MARRIED WOMAN, AS HER SOLE AND SEPARATE PROPERTY

hereby **GRANT(S)** to
THEYA KANAGARATNAM, A SINGLE WOMAN

the following described real property in the  City of Oakland
County of Alameda                , State of California:
        LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE

Dated  December 6, 2002

STATE OF CALIFORNIA
COUNTY OF Alameda                }. SS.

On _____ 12-10-02 _____ before me,
M. R. Rayandayan
a Notary Public in and for said County and State, personally appeared
SIU FUN LAM

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of which the
person(s), acted, executed the instrument.

WITNESS my hand and official seal.

_Siu Fun Lam_
SIU FUN LAM

**M. R. RAYANDAYAN**
COMM # 1377866
NOTARY PUBLIC-CALIFORNIA
ALAMEDA COUNTY
COMM EXP. SEPT. 22 2004

_M. R. Rayandayan_
Signature of Notary                                    FOR NOTARY SEAL OR STAMP

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE: IF NO PARTY SO SHOWN, MAIL AS DIRECTED ABOVE
THEYA KANAGARATNAM, 2316 Lake Shore Avenue, #16, Oakland, California 94606
        Name                          Street Address                    City, State & Zip

DEED1 d '94 ksn

Page 1
Escrow No. 645495    - KM

## LEGAL    DESCRIPTION    EXHIBIT

### CITY OF OAKLAND

PARCEL ONE:

AN UNDIVIDED .4.2% INTEREST AS TENANT IN COMMON IN AND TO TRACT 4135, FILED APRIL 2, 1979, IN BOOK 110, PAGE 5, OF MAPS, ALAMEDA COUNTY RECORDS.

EXCEPTING THEREFROM, UNITS 1 TO 16, BUILDING 2316 AND UNITS 1 TO 6, BUILDING 2324, AS SHOWN ON THE CONDOMINIUM PLAN ATTACHED AS EXHIBIT D TO THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS TO TRACT MAP 4135, REFERRED TO IN PARCEL ONE, A CONDOMINIUM PROJECT, RECORDED APRIL 4, 1979, SERIES NO. 79-062227, OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM, EASEMENTS FOR PARKING AREAS AND STORAGE AREAS AS SHOWN ON THE CONDOMINIUM PLAN REFERRED TO IN PARCEL ONE.

PARCEL TWO:

UNIT 16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

PARCEL THREE:

AN EXCLUSIVE EASEMENT TO USE PARKING AREA NO. P-6, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

PARCEL FOUR:

AN EXCLUSIVE EASEMENT TO USE STORAGE SPACE NO. S-16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

ASSESSOR'S PARCEL NO. 023-0415-036

DEEDLEGL-08/00/94bk

# EXHIBIT "2"

Subject Dot

Recording Requested By:
See 'Return To:' name

Return To:
Document Management
Quicken Loans Inc.
1050 Woodward Ave
Detroit, MI 48226-1906

Prepared By:
Sara Davis



2013215140    06/19/2013 09:22 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:    136.00

38   PGS

—————[Space Above This Line For Recording Data]—————

## DEED OF TRUST

MIN

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    May 24, 2013
together with all Riders to this document.
**(B) "Borrower"** is Theya Kanagaratnam, a single woman

Borrower's address is 2316 Lakeshore Ave Apt 16, Oakland, CA 94606
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is Quicken Loans Inc., MML 5357

Lender is a    Corporation
organized and existing under the laws of    the State of Michigan

CALIFORNIA Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005 1/01

Bankers Systems Financial Services

VMP ®-6A(CA) (0711)
Page 1 of 15    Initials: _TK_

Lender's address is 1050 Woodward Ave. Detroit, MI  48226-1906

**(D) "Trustee"** is TSI Title Company of California, Inc.

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated          May 24, 2013           .
The Note states that Borrower owes Lender Three Hundred Four Thousand Two
Hundred and 00/100                                                             Dollars
(U.S. $ 304,200.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than        June 1, 2043           .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Legal Attached Exhibit A |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**          Form 3005  1/01
VMP ®-6A(CA) (0711)                          Page 2 of 15        Initials: _TK_

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County        of        Alameda
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]


SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.



Parcel ID Number:    023 -0415-036         which currently has the address of
2316 Lakeshore Ave Apt 16                            [Street]
          Oakland          [City], California  94606    [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005  1/01
VMP ®-6A(CA) (0711)              Page 3 of 15    Initials: TK



of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Order: 230240783

2013-215140 TDD 06-19-2013

Requested By: pmaruthi, Printed: 5/22/2023 2:19 PM

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

VMP ®-6A(CA) (0711)    Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005  1/01
Page 7 of 15    Initials: TK

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01
VMP ®-6A(CA) (0711)                                   Page 8 of 15          Initials: TK

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**          Form 3005   1/01
VMP ®-6A(CA) (0711)                          Page 9 of 15        Initials: _IK_



to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



CALIFORNIA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**          Form 3005  1/01
VMP ®-6A(CA) (0711)                               Page 10 of 15          Initials: _TK_

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**      Form 3005  1/01
VMP ®-6A(CA) (0711)                                              Page 11 of 15        Initials: _TK_



requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005  1/01
VMP ®-6A(CA) (0711)                          Page 13 of 15         Initials: TK



The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:



_____    Theya Kanagar____ 05/24/2013 (Seal)
                                   Theya Kanagaratnam          -Borrower

_____    _____ (Seal)
                                                            -Borrower

_____ (Seal)    _____ (Seal)
                      -Borrower                          -Borrower

_____ (Seal)    _____ (Seal)
                      -Borrower                          -Borrower

_____ (Seal)    _____ (Seal)
                      -Borrower                          -Borrower

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01
VMP ®-6A(CA) (0711)                        Page 14 of 15

**State of California**
**County of** Alameda                                              } ss.

On      May 24. 2013        before me, Steven Posin, notary Public , personally appeared

Theya Kanagaratnam. a single woman

, who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF
PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (Seal)

> STEVEN POSIN
> Commission # 2011463
> Notary Public - California
> San Francisco County
> My Comm. Expires Mar 11, 2017



CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01
VMP ®-6A(CA) (0711)                              Page 15 of 15      Initials:

MERS MIN: ███████████

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this    24th    day of    May, 2013    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
Quicken Loans Inc.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

2316 Lakeshore Ave Apt 16
Oakland, CA 94606
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as: La Keshore View
NA ML
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in

**MULTISTATE CONDOMINIUM RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3140 1/01**
Wolters Kluwer Financial Services
VMP ®-8R (0810)
Page **1** of 3        Initials: _TK_

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**MULTISTATE CONDOMINIUM RIDER -** Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP ®-8R (0810)                    Page 2 of 3          Initials: _7/<_          Form 3140 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_Theya Kanagaratnam_  05/24/2013 (Seal)           _____ (Seal)
Theya Kanagaratnam          -Borrower                                      -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                      -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                      -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                      -Borrower

**MULTISTATE CONDOMINIUM RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                                           Form 3140 1/01
VMP ®-8R (0810)                         Page 3 of 3

EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number

Land Situated in the City of Oakland in the County of Alameda in the State of CA

PARCEL ONE:

AN UNDIVIDED 4.2% INTEREST AS TENANT IN COMMON IN AND TO TRACT 4135, FILED APRIL 2, 1979, IN BOOK 110, PAGE 5, OF MAPS, ALAMEDA COUNTY RECORDS.

EXCEPTING THEREFROM, UNIT 1 TO 16, BUILDING 2316 AND UNITS 1 TO 6, BUILDING 2324, AS SHOWN ON THE CONDOMINIUM PLAN ATTACHED AS EXHIBIT D TO THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS TO TRACT MAP 4135, REFERRED TO IN PARCEL ONE, A CONDOMINIUM PROJECT, RECORDED APRIL 4, 1979, SERIES NC. 79-062227, OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM, EASEMENTS FOR PARKING AREAS AND STORAGE AREAS AS SHOWN ON THE CONDOMINIUM PLAN REFERRED TO IN PARCEL ONE.

PARCEL TWO:

UNIT 16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

PARCEL THREE:

AN EXCLUSIVE EASEMENT TO USE PARKING AREA NO. P-6, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

PARCEL FOUR:

AN EXCLUSIVE EASEMENT TO USE STORAGE SPACE NO. S-16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

Commonly known as:   2316 Lakeshore Ave Apt 16 , Oakland, CA 94606

Recording Requested By:
See 'Return To:' name

Return To:
Document Management
Quicken Loans Inc.
1050 Woodward Ave
Detroit, MI 48226-1906

(G.C. 27361.7)
Substitution of legible originals:
I declare under penalty of perjury
that this handwritten or typewritten
legible copy is a true copy of the
original page(s).
Ca        6/17/13

Prepared By:
Sara Davis

──────────[Space Above This Line For Recording Data]──────────
# DEED OF TRUST
### MIN

## DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated        May 24, 2013
together with all Riders to this document.
**(B) "Borrower"** is Theya Kanagaratnam, a single woman

Borrower's address is 2316 Lakeshore Ave Apt 16 , Oakland, CA  94606
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is Quicken Loans Inc.. MML 5357

Lender is a                          Corporation
organized and existing under the laws of              the State of Michigan

CALIFORNIA Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005 1/01

Services

VMP ®-6A(CA) (0711)
Page 1 of 15        Initials:_____



Lender's address is 1050 Woodward Ave, Detroit, MI 48226-1906

(D) **"Trustee"** is TSI Title Company of California, Inc.

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated        May 24, 2013
The Note states that Borrower owes Lender Three Hundred Four Thousand Two
Hundred and 00/100                                                                                         **Dollars**
(U.S. $ 304,200.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than           June 1, 2043
(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Legal Attached |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) **"Escrow Items"** means those items that are described in Section 3.
(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**                     Form 3005  1/01
VMP ®-6A(CA) (0711)                                         Page 2 of 15            Initials:_____

Requested By: pmaruthi, Printed: 5/22/2023 2:19 PM

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County           of              Alameda      :
[Type of Recording Jurisdiction]                   [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

Parcel ID Number:             023 -0415-036               which currently has the address of
2316 Lakeshore Ave Apt 16                                         [Street]
                 Oakland                   [City], California 94606      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS       Form 3005  1/01
VMP ®-6A(CA) (0711)                       Page 3 of 15     Initials: _____



of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges,** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**            Form 3005  1/01
VMP ®-6A(CA) (0711)                    Page 5 of 15        Initials:_____

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

VMP ®-6A(CA) (0711)          ddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01
Page 7 of 16     Initials:

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**



-6A(CA) Freddie Mac **UNIFORM INSTRUMENT WITH MERS**

VMP ®-6A(CA) (0711)                Page 8 of 16          Initials: _____          Form 3005  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005   1/01
VMP ®-6A(CA) (0711)                                    Page 9 of 15          Initials:_____



to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**          Form 3005  1/01
VMP ®-6A(CA) (0711)                              Page 10 of 15          Initials: _____

Requested By: pmaruthi, Printed: 5/22/2023 2:19 PM

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**          Form 3005  1/01
VMP ®-6A(CA) (0711)                              Page 11 of 15          Initials:_____



requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



CALIFORNIA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**          Form 3005  1/01
VMP ® -6A(CA) (0711)                              Page 12 of 15        Initials:_____

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**        Form 3005  1/01
VMP ®-6A(CA) (0711)                              Page 13 of 15        Initials:_____

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ 05/24/2013 _____ (Seal)
                                                    Theya Kanagaratnam                        -Borrower


_____                    _____ (Seal)
                                                                                     -Borrower


_____ (Seal)                   _____ (Seal)
                         -Borrower                                                   -Borrower


_____ (Seal)                   _____ (Seal)
                         -Borrower                                                   -Borrower


_____ (Seal)                   _____ (Seal)
                         -Borrower                                                   -Borrower




CALIFORNIA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**          Form 3005  1/01
VMP ®-6A(CA) (0711)                            Page 14 of 15

**State of California**
**County of** Alameda                          } ss.

On        May 24, 2013        before me,

Theya Kanagaratnam, a single woman                    , personally appeared

, who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF
PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (Seal)



CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01
VMP ®-6A(CA) (0711)                    Page 15 of 15      Initials:_____

MERS MIN: ▮▮▮▮▮▮▮▮                                    ▮▮▮▮▮▮▮

# CONDOMINIUM RIDER

**T**HIS CONDOMINIUM RIDERis made this    24th    day of        May, 2013    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
Quicken Loans Inc.

                                                                                   (the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

                            2316 Lakeshore Ave Apt 16
                            Oakland, CA 94606
                            [Property Address]

The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:

                                    N/A
                            [Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. CondominiumObligations.**Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

MULTISTATE CONDOMINIUM RIDER - Single Family - **Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT** ▮▮▮▮▮▮▮
**Form 3140 1/01**
Wolters Kluwer Financial Services
VMP ®-8R (0810)
Page 1 of 3              Initials: _____

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.



**MULTISTATE CONDOMINIUM RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP ®-8R (0810)                    Page 2 of 3        Initials: _____        **Form 3140 1/01**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____05/24/2013_ (Seal)
Theya Kanagaratnam          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

**INSTRUMENT**
VMP ®-8R (0810)

M  RIDER - Single  Family - **Fannie Mae/Freddie Mac  UNIFORM**
                                    **Form 3140 1/01**

Page 3 of 3

Order: 230240783
2013-215140 TDD 06-19-2013

Requested By: pmaruthi, Printed: 5/22/2023 2:19 PM

## EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s): █████████

Land Situated in the City of Oakland in the County of Alameda in the State of CA

PARCEL ONE:

AN UNDIVIDED 4.2% INTEREST AS TENANT IN COMMON IN AND TO TRACT 4135, FILED APRIL 2, 1979, IN BOOK 110, PAGE 5, OF MAPS, ALAMEDA COUNTY RECORDS.

EXCEPTING THEREFROM, UNIT 1 TO 16, BUILDING 2316 AND UNITS 1 TO 6, BUILDING 2324, AS SHOWN ON THE CONDOMINIUM PLAN ATTACHED AS EXHIBIT D TO THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS TO TRACT MAP 4135, REFERRED TO IN PARCEL ONE, A CONDOMINIUM PROJECT, RECORDED APRIL 4, 1979, SERIES NC. 79-062227, OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM, EASEMENTS FOR PARKING AREAS AND STORAGE AREAS AS SHOWN ON THE CONDOMINIUM PLAN REFERRED TO IN PARCEL ONE.

PARCEL TWO:

UNIT 16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

PARCEL THREE:

AN EXCLUSIVE EASEMENT TO USE PARKING AREA NO. P-6, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

PARCEL FOUR:

AN EXCLUSIVE EASEMENT TO USE STORAGE SPACE NO. S-16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

Commonly known as:    2316 Lakeshore Ave Apt 16 , Oakland, CA 94606

# EXHIBIT "3"

Recording requested by simplifile

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

APN/PIN# 023-0415-036

2023038301        04/05/2023 09:51 AM        2 PGS
OFFICIAL RECORDS OF ALAMEDA COUNTY
MELISSA WILK, CLERK-RECORDER
RECORDING FEES: $102.00

**ELECTRONICALLY RECORDED**

Space above for Recorder's use _____



## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS**, whose address is **P.O. BOX 2026, FLINT, MI 48501-2026**, (ASSIGNOR), does hereby grant, assign and transfer to **FEDERAL NATIONAL MORTGAGE ASSOCIATION**, whose address is **5600 GRANITE PKWY. BUILDING VII, PLANO, TX 75024**, (ASSIGNEE), its successors, transferees and assigns forever, all interest, all liens, and any rights due or to become due thereon under that certain deed of trust described below.

Date of Deed of Trust: **5/24/2013**
Original Loan Amount: **$304,200.00**
Executed by (Borrower(s)): **THEYA KANAGARATNAM**
Original Trustee:  **TSI TITLE COMPANY OF CALIFORNIA, INC.**
Original Beneficiary:  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book N/A, Page N/A
Document/Instrument No: **2013215140** in the Recording District of **Alameda, CA**, Recorded on **6/19/2013**.

Property more commonly described as: **2316 LAKESHORE AVE APT 16, OAKLAND, CALIFORNIA 94606**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____ **JAN 1 3 2023**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS**

By: **Brandy Thompson**
Title: **ASSISTANT SECRETARY**

Witness Name: _Manacus hossin_

MIN# ▮▮▮▮▮▮▮        MERS PH# 1-888-679-MERS

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of      **TEXAS**
County of     **DALLAS**

On _____ **JAN 1 3 2023** _____, before me, Suzanne Lynn Walker _____, a Notary Public, personally
appeared __**Brandy Thompson**_____, **ASSISTANT SECRETARY of/for MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR QUICKEN
LOANS INC., ITS SUCCESSORS AND ASSIGNS,** personally known to me to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY
under the laws of the State of **TEXAS** that the foregoing paragraph is true and correct. I further certify
__Brandy Thompson_____, signed, sealed, attested and delivered this document as a voluntary act in
my presence.

Witness my hand and official seal.

(Notary Name): Suzanne Lynn Walker
My commission expires: ___**APR 2 5 2026**

# EXHIBIT "4"

Recording requested by simplifile

2023038302    04/05/2023 09:51 AM    2 PGS

OFFICIAL RECORDS OF ALAMEDA COUNTY
MELISSA WILK, CLERK-RECORDER
RECORDING FEES: $102.00

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442



**ELECTRONICALLY RECORDED**

APN/PIN# 023-0415-036

_____ Space above for Recorder's use _____



## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL NATIONAL MORTGAGE ASSOCIATION**, whose address is **5600 GRANITE PKWY. BUILDING VII, PLANO, TX 75024**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST**, whose address is **C/O SELENE FINANCE LP, 3501 OLYMPUS BLVD., SUITE 500, DALLAS, TX 75019**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **5/24/2013**
Original Loan Amount: **$304,200.00**
Executed by (Borrower(s)): **THEYA KANAGARATNAM**
Original Trustee: **TSI TITLE COMPANY OF CALIFORNIA, INC.**
Original Beneficiary:  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book N/A, Page N/A
Document/Instrument No: **2013215140** in the Recording District of Alameda, CA, Recorded on 6/19/2013.

Property more commonly described as: **2316 LAKESHORE AVE APT 16, OAKLAND, CALIFORNIA 94606**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **3/15/2023**

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **RICHARD NEEFE, JR.**
Title: **VICE PRESIDENT**

Witness Name: **SHULA FERGUSON**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of      **FLORIDA**
County of   **PINELLAS**

On **3/15/2023**, before me, **ISABEL LOPEZ**, a Notary Public, personally appeared **RICHARD NEEFE, JR., VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION**, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that RICHARD NEEFE, JR., signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **ISABEL LOPEZ**
My commission expires: **2/13/2027**

**ISABEL LOPEZ**
Notary Public
State of Florida
Comm# HH361490
Expires 2/13/2027

# EXHIBIT "5"

2023070944        06/22/2023 11:12 AM        1 PGS
OFFICIAL RECORDS OF ALAMEDA COUNTY
MELISSA WILK, CLERK-RECORDER
RECORDING FEES: $99.00

RECORDING REQUESTED BY:

ServiceLink

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614



**ELECTRONICALLY RECORDED**

---

TS No: CA08000646-23-1                APN: 023-0415-036-00                TO No: 230240783-CA-VOI

## SUBSTITUTION OF TRUSTEE

WHEREAS, THEYA KANAGARATNAM, A SINGLE WOMAN was the original Trustor(s), TSI TITLE COMPANY OF CALIFORNIA, INC. was the original Trustee and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, as nominee for QUICKEN LOANS INC. was the original Beneficiary under that certain Deed of Trust dated May 24, 2013 and recorded on June 19, 2013, as Instrument No. 2013215140, of official records in the Office of the Recorder of Alameda County, California;

WHEREAS, the undersigned current Beneficiary, desires to substitute a new Trustee under said Deed of Trust in place of and instead of said original Trustee, or Successor Trustee, thereunder in the manner in said Deed of Trust provided;

NOW THEREFORE, **U.S. Bank Trust National Association, not in its individual capacity, but solely as Owner Trustee for RCF 2 Acquisition Trust** hereby substitutes **MTC Financial Inc. dba Trustee Corps,** whose address is 17100 Gillette Ave, Irvine, CA 92614, as Trustee under said Deed of Trust.

Dated: **JUN 1 5 2023**

**U.S. Bank Trust National Association, not in its individual capacity, but solely as Owner Trustee for RCF 2 Acquisition Trust by Selene Finance, LP as Attorney in Fact**

By: _____
        Korey McGovern

Title: Document Execution Specialist

STATE OF FLORIDA

COUNTY OF _____ **Duval** _____

The foregoing instrument was acknowledged before me by means of [ ✓ ] physical presence or [ ] online notarization, this _____ **15th** _____ day of _____ **June** _____, 2023, by _____ **Korey McGovern** _____ as _____ **Document Execution Specialist** _____ for U.S. Bank Trust National Association, not in its individual capacity, but solely as Owner Trustee for RCF 2 Acquisition Trust by Selene Finance, LP as Attorney in Fact.

Signature _____ **Debbie Benzley** _____

Print Name _____ **Debbie Benzley** _____

___X___ Personally Known

_____ Produced Identification

Type of Identification Produced _____ N/A _____

> DEBBIE BENZLEY
> Commission # HH 343297
> Expires December 20, 2026

# EXHIBIT "6"

RECORDING REQUESTED BY:

ServiceLink

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

2023117389      10/09/2023 10:59 AM      3 PGS

OFFICIAL RECORDS OF ALAMEDA COUNTY
MELISSA WILK, CLERK-RECORDER
RECORDING FEES: $105.00



**ELECTRONICALLY RECORDED**

---

APN: 023-0415-036-00          TS No: CA08000646-23-1          TO No: 230240783-CA-VOI

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided
to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your

past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recording appears on this notice).

This amount is $26,411.33 as of October 6, 2023, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or Mortgage, the Beneficiary or Mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or Mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or Mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or Mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

APN: 023-0415-036-00              TS No: CA08000646-23-1              TO No: 230240783-CA-VOI

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: **U.S. Bank Trust National Association, not in its individual capacity, but solely as Owner Trustee for RCF 2 Acquisition Trust c/o MTC Financial Inc. dba Trustee Corps** located at 17100 Gillette Ave Irvine, CA 92614 Phone: 949-252-8300 TDD: 711 949.252.8300 Ref No: CA08000646-23-1

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** MTC Financial Inc. dba Trustee Corps is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated as of May 24, 2013, executed by THEYA KANAGARATNAM, A SINGLE WOMAN, as Trustor(s), to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, as nominee for QUICKEN LOANS INC.. MML 5357, the original Beneficiary, recorded June 19, 2013 as Instrument No. 2013215140, of the official records in the Office of the Recorder of Alameda County, California, as more fully described on said Deed of Trust. Including a Note(s) for the sum of $304,200.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: **THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON December 1, 2022 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, ALONG WITH LATE CHARGES, PLUS ALL OF THE TERMS AND CONDITIONS AS PER THE DEED OF TRUST, PROMISSORY NOTE AND RELATED LOAN DOCUMENTS.**

That by reason thereof, the present Beneficiary under such Deed of Trust, has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.5(b) or California Civil Code Section 2923.55 is attached.

Dated: October 6, 2023              **MTC Financial Inc. dba Trustee Corps**
                                    **as Duly Appointed Successor Trustee**

                                    By: Bernardo Sotelo, Authorized Signatory

To the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

# CALIFORNIA DECLARATION OF COMPLIANCE
## (Civil Code § 2923.55(c))

Borrower(s):          THEYA KANAGARATNAM
Mortgage Servicer:    SELENE FINANCE, LP
Property Address:     2316 LAKESHORE AVE APT 16
                      OAKLAND, CA 94606
T.S. No.:             CA08000646-23-1

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

    1. ☐ The mortgage servicer has contacted the Borrower pursuant to California Civil Code § 2923.55(b)(2) to "assess the Borrower's financial situation and explore options for the Borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

    2. ☒ The mortgage servicer has exercised due diligence to contact the Borrower pursuant to California Civil Code § 2923.55(f) to "assess the Borrower's financial situation and explore options for the Borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

    3. ☐ No contact was required by the mortgage servicer because the individual did not meet the definition of 'Borrower' pursuant to subdivision (c) of Section 2920.5.

    4. ☐ No contact was made with the Borrower pursuant to Civil Code § 2923.55 because the above-referenced loan is not secured by a first lien mortgage or deed of trust on an owner-occupied residential real property. As described in Civil Code § 2924.15(a), "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes and all requirements effective 1/1/2023, pertaining to tenants-occupied conditions have been reviewed.

Additionally, pursuant to California Civil Code § 3273.10, to include all updates effective 1/1/2023:

    1. ☐ The mortgage servicer has not denied the borrower a forbearance request on or after 8/312020.

    2. ☐ The mortgage servicer was unable to approve the borrower's request for a forbearance on or after 8/31/2020, and a forbearance was not subsequently provided. A copy of the notice is attached.

    3. ☐ The mortgage servicer was unable to approve the borrower's request for a forbearance on or after 8/31/2020, however, a forbearance was subsequently provided. A copy of the approval notice is attached.

    4. ☐ The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on "owner-occupied" or qualifying tenant –occupied residential real property as defined by California Civil Code § 2924.15.

    5. ☒ The mortgage servicer is in compliance with California Civil Code § 3273.10 because the mortgage servicer has complied with the relevant provisions regarding forbearance in Section 4022 of the federal Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) (Public Law 116-136), including any amendments or revisions to those provisions, pursuant to California Civil Code § 3273.10(d).

I certify and represent that this mortgage servicer's declaration is accurate, complete and based upon competent and reliable evidence, including my review of the mortgage servicer's business records.

Date: _____ JUN 27 2023 _____

                           SELENE FINANCE, LP, Mortgage Servicer

                        By:    Debbie Benzley

                ATTACHMENT TO NOTICE OF DEFAULT

EXHIBIT "7"

2024005925    01/10/2024 09:48 AM    4 PGS

OFFICIAL RECORDS OF ALAMEDA COUNTY
MELISSA WILK, CLERK-RECORDER
RECORDING FEES: $108.00

RECORDING REQUESTED BY:

ServiceLink

WHEN RECORDED MAIL TO:



**ELECTRONICALLY RECORDED**

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

| APN: 023-0415-036-00 | TS No: CA08000646-23-1 | TO No: 230240783-CA-VOI |
|---|---|---|

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
(The above statement is made pursuant to CA Civil Code Section 2923.3(d)(1). The Summary will be provided
to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(d)(2).)

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED May 24, 2013. UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

On **February 16, 2024 at 12:00 PM, at the Fallon Street emergency exit to the Alameda County
Courthouse, 1225 Fallon St., Oakland, CA 94612,** MTC Financial Inc. dba **Trustee Corps,** as the duly
Appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust recorded
on June 19, 2013 as Instrument No. 2013215140, of official records in the Office of the Recorder of Alameda
County, California, executed by THEYA KANAGARATNAM, A SINGLE WOMAN, as Trustor(s), in favor of
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, as nominee for QUICKEN
LOANS INC.. MML 5357 as Beneficiary, **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER,**
in lawful money of the United States, all payable at the time of sale, that certain property situated in said
County, California describing the land therein as: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A
PART HEREOF

The property heretofore described is being sold "as is". The street address and other common designation,
if any, of the real property described above is purported to be: 2316 LAKESHORE AVE APT 16, OAKLAND,
CA 94606

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other
common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or
encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with
interest thereon, as provided in said Note(s), advances if any, under the terms of the Deed of Trust,
estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

APN: 023-0415-036-00          TS No: CA08000646-23-1          TO No: 230240783-CA-VOI

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $322,708.41 (Estimated). However, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the Trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The property offered for sale excludes all funds held on account by the property receiver, if applicable.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

## Notice to Potential Bidders

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a Trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a Trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same Lender may hold more than one mortgage or Deed of Trust on the property.

## Notice to Property Owner

The sale date shown on this Notice of Sale may be postponed one or more times by the Mortgagee, Beneficiary, Trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about Trustee Sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call Nationwide Posting & Publication at 916.939.0772 for information regarding the Trustee's Sale or visit the Internet Website www.nationwideposting.com for information regarding the sale of this property, using the file number assigned to this case, CA08000646-23-1. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Website. The best way to verify postponement information is to attend the scheduled sale.

APN: 023-0415-036-00              TS No: CA08000646-23-1              TO No: 230240783-CA-VOI

## Notice to Tenant

### NOTICE TO TENANT FOR FORECLOSURES AFTER JANUARY 1, 2021

You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call 916.939.0772, or visit this internet website www.nationwideposting.com, using the file number assigned to this case CA08000646-23-1 to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

Date: January 8, 2024

MTC Financial Inc. dba Trustee Corps
TS No. CA08000646-23-1
17100 Gillette Ave
Irvine, CA 92614
Phone: 949-252-8300
TDD: 711 949.252.8300

By: Bernardo Sotelo, Authorized Signatory

**SALE INFORMATION CAN BE OBTAINED ONLINE AT www.nationwideposting.com**
**FOR AUTOMATED SALES INFORMATION PLEASE CALL:**
Nationwide Posting & Publication AT 916.939.0772

To the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

APN: 023-0415-036-00          TS No: CA08000646-23-1          TO No: 230240783-CA-VOI

## EXHIBIT "A"

PARCEL ONE:

AN UNDIVIDED 4.2% INTEREST AS TENANT IN COMMON IN AND TO TRACT 4135, FILED APRIL 2, 1979, IN BOOK 110, PAGE 5, OF MAPS, ALAMEDA COUNTY RECORDS.

EXCEPTING THEREFROM, UNIT 1 TO 16, BUILDING 2316 AND UNITS 1 TO 6, BUILDING 2324, AS SHOWN ON THE CONDOMINIUM PLAN ATTACHED AS EXHIBIT D TO THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS TO TRACT MAP 4135, REFERRED TO IN PARCEL ONE, A CONDOMINIUM PROJECT, RECORDED APRIL 4, 1979, SERIES NO. 79-062227, OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM, EASEMENTS FOR PARKING AREAS AND STORAGE AREAS AS SHOWN ON THE CONDOMINIUM PLAN REFERRED TO IN PARCEL ONE.

PARCEL TWO:

UNIT 16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

PARCEL THREE:

AN EXCLUSIVE EASEMENT TO USE PARKING AREA NO. P-6, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

PARCEL FOUR:

AN EXCLUSIVE EASEMENT TO USE STORAGE SPACE NO. S-16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

# EXHIBIT "8"

IN PRO PER

Name:   Theya Kanagaratnam
Address: 2316 Lakeshore Avenue, #16
         Oakland, CA 94606
Phone:
E-mail:

FILED
ALAMEDA COUNTY

JAN 2 9 2024

LERK OF THE SUPERIOR COURT

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

Case No. 24CV 061740

**PLAINTIFF**
THEYA KANAGARATNAM

**DEFENDANTS**
SELENE FINANCE LP, US-BANK TRUST
NATIONAL ASSOCIATION, MTC
FINANCIAL, INC DBA TRUSTEE CORPS
AND DOES 1-20

COMPLAINT FOR
1. Declaratory Relief
2. Violation of FDCPA 15 USC § 1692g

## PARTIES AND JURISDICTION

1. Plaintiff Theya Kanagaratnam is the owner of the property located at 2316 Lakeshore Avenue, #16, Oakland, California which is her primary residence.

2. Defendant U.S. Bank Trust Association, Not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust based out of Delle Donne Corporate Center 1011 CENTRE ROAD - SUITE 203, WILMINGTON, DE 19805

-1-

3. Defendant Selene Finance LP with Head Quarters in 3501 Olympus Blvd., Suite 500 Dallas, TX 75019.

4. Defendant MTC Financial Inc, dba Trustee Corps with 17100 Gillette Avenue, Irvine, CA 92614.

5. Plaintiff is ignorant of the true identities and capacities of Defendants designated as Does 1-20, but will amend the Complaint when their identities have been ascertained according to proof within the time permitted. However, Plaintiff alleges on information and belief, that each and every Doe Defendant is in some manner responsible to the acts and conduct of the Defendants and were, and are responsible for the injuries, damages, and harm incurred by Plaintiff. Plaintiff further alleges on information and belief that each such designated Defendant acted, and acts as the authorized agent, representative and associate of the other Defendants in doing the things alleged herein.

## FACTS, CAUSE AND DECLARATORY RELIEF

1. Plaintiff and family have been living in their primary residence since December 2002.

2. Plaintiff and her family are in imminent danger as they are facing the prospect of becoming homeless on February 16, 2024.

3. Plaintiff refinanced her home in 2013 with Quicken Loans. Since then the loan has gone through many hands with many servicers coming and going.

4. In 2020 during the Covid lockdown, Plaintiff applied for forbearance with her then Servicer NATIONSTAR MORTGAGE DBA Mr. Cooper due to financial hardship, health issues, loss of family members and a multitude of other uncertainties in her life.

5. The forbearance was extended and ended in July of 2022 or thereabouts and Plaintiff was to resume payments with Mr. Cooper in August of 2022. Right when it was about to

resume Plaintiff received notice that U.S. Bank Trust Association is the new owner of the loan and Selene Finance LP is the new servicer (Exhibit A).

6. They asked her to sign some papers which they called it loan modification but informed her none of the loan terms changed etc , which she did in October 2022.

7. As Plaintiff was starting to have concerns over these changes and under pressure, she didn't even know what she had just signed; As a consequence, in November 2022 Plaintiff started to delve deeper into these matters and started to investigate further.

8. When she investigated the Official Records at the Alameda County Recorder's office and found that last entry with regard to this loan was made on June 19, 2013 with Mortgage Electronic Recording System (MERS) being designated as the beneficiary (Exhibit B). Plaintiff was not able to find any other entries.

9. As part of her investigation, Plaintiff found that the loan was set in Inactive Status in MERS with &#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608; (Exhibit C).

10. As Plaintiff continued to monitor the Alameda County Records, she also started to question the so-called Lender(s) and Servicer(s) who came and went as well as Selene Finance and U.S. Bank Trust by sending various Debt Verification Letters (DVL) and Qualified Written Response (QWR) (Exhibit D).

11. Though overwhelmed by this process as it was not her profession or area of expertise, Plaintiff was nevertheless continuously educating herself on these matters and so she demanded Selene Finance  and U.S. Bank Trust to provide the original NOTE, Deed of Trust (not copies) as well as Accrual GAAP accounting entries and other related documents as required by law.

-3-

12. In response U.S. Bank Trust repeatedly stated that she should only communicate with Selene Finance.

13. Nevertheless, in the meantime, in February 2023 Plaintiff issued a Bill of Exchange (BOE) Pursuant to UCC 3-603 (b) in the amount of $294,000.00 and requested them to set off, settle, discharge and to close the account. Defendant Selene Finance kept the BOE and never returned it back to Plaintiff but refused to acknowledge it.

14. Plaintiff moved on still demanding them to provide the GAAP accounting records all other related documents as she felt there were issues with the contract, NOTE and accounting.

15. To date Selene Finance has failed to provide what she has consistently asked for and U.S Bank Trust doesn't even bother to reply/respond to her queries for the most part other than telling her to contact Selene Finance.

16. However, she noticed in April 2023, Defendants recorded two instruments into Alameda County Official Records.

    a. Instrument #2023038301 recorded on April 5, 2023 –some eight plus months after they claimed to have taken ownership of the alleged loan (Exhibit E).

    b. Instrument #2023038302 recorded on April 5, 2023 -the same date as the above; again some eight plus months after they claimed to have taken ownership of the alleged loan (Exhibit F).

17. Plaintiff questions the legitimacy of these instruments and have grave concerns about them. The status of the loan was set to inactive in MERS and MERS is the last recorded official entry at the Alameda County Recorder's Office.

-4-

18. For eight plus months after U.S. Bank purported to have acquired the loan, they never bothered to record and update the county records.

19. Plaintiff wholeheartedly believe the instruments that were recorded on April 5, 2023 (Exhibits E &F) were recorded in an effort to reverse engineer the missing pieces and to conceal the defects as they were preparing to assign Trustee Corps as the substitute Trustee in preparation for foreclosing on Plaintiff's Property.

20. No sooner they recorded it with the county, Plaintiff started to receive letters and notices from Defendant Trustee Corps beginning May of 2023. Plaintiff provided them some history and the status, her concerns and asked them not get involved (Exhibit G).

21. Plaintiff continued to question the legitimacy of their standing and warned Trustee Corps to stay out of it.

22. Plaintiff has recently hired a Private Qualified Consultant Expert to investigate this matter further and has launched a Forensic Audit (Exhibit H) .

23. The Consultant has informed her that the whole process will take an additional 90-120 days before a resolution can be reached.

24. Plaintiff received from SELENE FINANCE (Exhibit I) dated January 8, 2024 acknowledging the receipt of Plaintiff's Forensic Audit Notice and its intend to respond in accordance with Federal and State laws.

25. Defendant U.S. Bank have never even bothered to even acknowledge the receipt of the Forensic Audit which was delivered to them on January 3, 2024.

26. In the meantime, however, they posted a NOTICE OF TRUSTEE'S SALE on Plaintiff's Property on January 12, 2024 with a foreclosure sale date of February 16, 2024.

27. Plaintiff has informed Trustee Corps of the Forensic Audit. However, in response it made it clear to her it will follow its client's instructions regardless whether its client has provided all the documents plaintiff has requested or has standing.

28. Since the posting NOTICE OF TRUSTEE SALE on Plaintiff's property, she has been trying her best to communicate with both TRUSTEE CORPS and SELENE FINANCE LP through e-mails, fax, phone calls to no avail as they are unresponsive to her request.

29. Defendants collectively make it extremely difficult to contact the appropriate parties, correct agent for service of Process that it has consumed so much of Plaintiff's time and effort just to get those details (Exhibit J).

30. While Plaintiff is Awaiting 45-days for response from Defendants SELENE FINANCE AND U.S BANK Trust before moving to the next step of the Forensic Audit Process, she is extremely worried Defendants will not suspend the sale of her home.

31. Therefore, she is being forced to file this complaint and requesting the court to intervene and suspend the sale of her home; her only roof-over-her head.

32. Defendants intend to sell, and unless restrained, will sell or cause to be sold, the Property, all to Plaintiff's great irreparable injury and loss, for which damages will not adequately compensate the Plaintiff and her family.

33. Allowing Defendants to move forward with this action on February 16, 2024 will put Plaintiff and her family in imminent danger and do irreparable harm to their lives.

**PRAYER AND RELIEF SOUGHT**

**WHEREFORE**, Plaintiff Prays as follows:

1. For the court to issue an order restraining Defendants, their agents or employees from continuing or initiating any foreclosure proceedings against the Property, including but not limited to, conducting a Trustee's Sale, and enjoining Defendants, their agents or employees from doing so during the pendency of this matter;

2. Provide the time necessary to Complete the Forensic Audit and Administrative Process that Plaintiff has recently hired a third-party Consultant Expert to conduct which is already well underway.

3. For an award of all fees and costs; and

4. For such other and further relief as the Court may deem proper.

Date: <u>January 29, 2024</u>                    Respectfully Submitted,

Theya Kanagaratnam

# EXHIBIT A



U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2
Acquisition Trust c/o U.S. Bank Trust National Association
Mail Code: EX-DE-WD2D, Delle Donne Corporate Center
1011 Centre Rd, Suite 203
Wilmington, DE, 19805

Temp-Return Service Requested

000128-000001-000002-000255 2067701 4595LT01_1
THEYA KANAGARATNAM
2316 LAKESHORE AVE APT 16
OAKLAND, CA  94606-1055

000128-000002-000002-000256 2067701 4595LT01_1



U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association

08/22/2022

THEYA KANAGARATNAM
2316 LAKESHORE AVE 16
OAKLAND, CA 94606

Re:   Account Number: ████████
      Mortgagor(s):        THEYA KANAGARATNAM
      Property:            2316 LAKESHORE AVE APT 16
                           16
                           OAKLAND, CA 94606

## NOTIFICATION OF ASSIGNMENT, SALE OR TRANSFER OF YOUR MORTGAGE LOAN

The ownership of your mortgage loan has been acquired by U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association. This transfer was effective 07/28/2022.

The assignment, sale or transfer of the mortgage loan does not affect any term or condition of the Mortgage, Deed of Trust, Note or any subsequent modification of your original loan terms. The transfer of ownership of your mortgage loan to U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association has not been publicly recorded.

Nationstar Mortgage LLC d/b/a Mr. Cooper is the servicer of your loan until 08/30/2022. **After this date, your new loan servicer will be Selene Finance LP.** You may contact Selene Finance LP by calling (877) 735-3637 or written correspondence should be sent to Selene Finance LP, Attention Customer Service Department, P. O. Box 8279 , Philadelphia, PA 19101-8279. We also encourage you to visit Selene's website at www.selenefinance.com for additional helpful information.

**U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association does not service your loan.** It is important that your monthly payments be sent directly to your servicer and NOT to U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association. All correspondence and inquiries concerning your mortgage loan should be addressed to your servicer. The servicer has authority to act on our behalf with regard to the administration of your mortgage loan and respond to any questions about your mortgage loan.

In the unlikely event you find it necessary to contact **U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association**, you may write us at the address listed below or you may telephone us at 800-236-3488.

U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association
Mail Code: EX-DE-WD2D, Delle Donne Corporate Center 1011 Centre Rd, Suite 203
Wilmington, DE 19805

Please send all payments to your appropriate servicer. **Payments received by U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association may be returned OR forwarded to the appropriate servicer and this may result in late charges and your account becoming past due. U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association is not responsible for late charges or other consequences of misdirected payments.**

TL001                                                                                          2 of 3

**Partial Payment Policy** - Your lender may hold partial payments in a separate account until you pay the remainder of the payment, and then apply the full payment to your loan.  If this loan is sold, your new lender may have a different policy.

Please note that if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally.

# EXHIBIT B

11/21/22, 11:02 AM                         Search Real Estate Index: Index Detail - Alameda County Recorder's Office Web Access

 **Alameda County, California**
**Clerk-Recorder Web Access**

Welcome Visitor.                                                                                        🛒 View Basket

| Welcome | Fictitious Business Names | Marriage | Real Estate | FAQ |

Real Estate Document Access

**Other Options**
New Search
Refine Search
Back to Results

General    Legal Description    Related Documents

### Document Detail

Image for this record is not available on this website.

**Instrument #**
**Multi Seq:** 0
**Date Filed:** 06/19/2013 09:22:42 AM
**Document Type:** DEED OF TRUST
**Book:**
**Page:**
**# Pages in Image:** 38
**Image:**

### Grantor Names

1    P    KANAGARATNAM  THEYA

### Grantee Names

1    P    QUICKEN LOANS INC
2    P    MERS
3    C    MORTGAGE ELECTRONIC
         REGISTRATION SYSTEMS INC

### Returnee

**Name:**
**Address:**
**City, State, Zip:**

Aumentum Recorder - Public Access Web UI, Version 2021.2.0
Copyright © 2001 – 2022  Aumentum Technologies, All Rights Reserved

# EXHIBIT C

 **MERS®**
**ServicerID**

## 3 Records Matched Your Search

MIN ▮▮▮▮▮▮▮▮▮▮▮▮    Note Date: 05/06/2004    MIN Status: Inactive
Servicer:  Bank of America, N.A.    Phone: (800) 669-6607
Simi Valley, CA

If you are a borrower on this loan, you can click here to enter additional information
and display the Investor name.

MIN: ▮▮▮▮▮▮▮▮▮▮▮    Note Date: 07/11/2005    MIN Status: Inactive
Servicer:  Kyanite Services, Inc.    Phone: (866) 570-5277
Beaverton, OR

If you are a borrower on this loan, you can click here to enter additional information
and display the Investor name.

MIN: ▮▮▮▮▮▮▮▮▮▮▮    Note Date: 05/24/2013    MIN Status: Inactive
Servicer:  Nationstar Mortgage LLC    Phone: (888) 480-2432
Coppell, TX

If you are a borrower on this loan, you can click here to enter additional information
and display the Investor name.

Return to Search

For more information about Mortgage Electronic Registration Systems, Inc. (MERS) please go to www.mersinc.org

© 2023 MERSCORP Holdings, Inc. All rights reserved.

# EXHIBIT D

2316 Lakeshore Avenue, Unit #16
Oakland, CA 94606

December 24, 2022

Selene Finance LP
Attn: Mark Kearns or Current CFO
3501 Olympus Blvd.; Suite 500
Dallas, TX 75019

Under duress, I recently signed some loan modification forms. However, upon further research and regarding your recent statement for Account Number: ▮▮▮▮▮▮▮ dated 12/05/2022 sent to THEYA KANAGARATNAM is not a true bill, verified claim, or invoice.

Therefore, Selene Finance, must herein provide the original contract between us or your representative and a true and certified copy of the complete audit trail, all allonges, and assignments of said account; furthermore, in order for me, Theya Kanagaratnam , to validate your alleged claimed debt, please provide verification through audit certification of debt entry in accordance with **DAC and IFRS** in accordance with **GAAP, General Accepted Accounting Principles; Basal 3, Banking principals** and **accounting;** and the **UNITED NATIONS** accord **(UNCITRAL)** convention Bills of Exchange and Promissory Note Treaty Law that was legally adopted by the United States in 1989 as money and payment of all debts.

I require a verified and certified copy of your **FR 1099** for the current year and your **FR 2046** balance sheet as they relate to the claimed original "loan" or "debt" you claim I owe you. I will also need the original signed contract (not the so-called loan modification documents but the very original documents) under penalty of perjury of my **wet Blue** Inked signed bilateral credit agreement contract which is the only establishment of my debt with you.

As far as I know nor can remember, there is no legal and binding bilateral contract signed by me and you in blue ink of the very original document, as I always sign, that is between you and myself establishing any debt or loan with you or your corporate company where I received in the total amount as you claim in your statement as outstanding Principal Balance owed to you or the one you represent in the amount of $289,574.47. Again, I am not asking for the loan modification documents; this debt you claim I owe needs to be proven with original documents.

.

Sincerely,

Signature: BY _____
By Theya Kanagaratnam,

# EXHIBIT E

Recording requested by simplifile

2023038301      04/05/2023 09:51 AM      2 PGS
OFFICIAL RECORDS OF ALAMEDA COUNTY
MELISSA WILK, CLERK-RECORDER
RECORDING FEES: $102.00

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442



**ELECTRONICALLY RECORDED**

**APN/PIN# 023-0415-036**

Space above for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS**, whose address is P.O. BOX 2026, FLINT, MI 48501-2026, (ASSIGNOR), does hereby grant, assign and transfer to **FEDERAL NATIONAL MORTGAGE ASSOCIATION**, whose address is **5600 GRANITE PKWY, BUILDING VII, PLANO, TX 75024**, (ASSIGNEE), its successors, transferees and assigns forever, all interest, all liens, and any rights due or to become due thereon under that certain deed of trust described below.

Date of Deed of Trust: 5/24/2013
Original Loan Amount: $304,200.00
Executed by (Borrower(s)): THEYA KANAGARATNAM
Original Trustee: TSI TITLE COMPANY OF CALIFORNIA, INC.
Original Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS
Filed of Record: In Book N/A, Page N/A
Document/Instrument No: 2013215140 in the Recording District of Alameda, CA, Recorded on 6/19/2013.

Property more commonly described as: **2316 LAKESHORE AVE APT 16, OAKLAND, CALIFORNIA 94606**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____**JAN 1 3 2023**_____

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS**

By: **Brandy Thompson**
Title: **ASSISTANT SECRETARY**

Witness Name: Channary Hossin

MIN#                    MERS PH# 1-888-679-MERS

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of        **TEXAS**
County of      **DALLAS**

On _____ **JAN 1 3 2023** _____, before me, ___ Suzanne Lynn Walker ___, a Notary Public, personally appeared ___ Brandy Thompson ___, ASSISTANT SECRETARY of/for **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS**, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of TEXAS that the foregoing paragraph is true and correct. I further certify ___ Brandy Thompson ___, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): Suzanne Lynn Walker
My commission expires: ____ **APR 2 5 2026**

# EXHIBIT F

Recording requested by simplifile

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

APN/PIN# 023-0415-036

2023038302      04/05/2023 09:51 AM      2 PGS
OFFICIAL RECORDS OF ALAMEDA COUNTY
MELISSA WILK, CLERK-RECORDER
RECORDING FEES: $102.00



**ELECTRONICALLY RECORDED**

_____ Space above for Recorder's use _____

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL NATIONAL MORTGAGE ASSOCIATION**, whose address is **5600 GRANITE PKWY. BUILDING VII, PLANO, TX 75024,** (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST**, whose address is **C/O SELENE FINANCE LP, 3501 OLYMPUS BLVD., SUITE 500, DALLAS, TX 75019,** (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 5/24/2013
Original Loan Amount: $304,200.00
Executed by (Borrower(s)): THEYA KANAGARATNAM
Original Trustee: TSI TITLE COMPANY OF CALIFORNIA, INC.
Original Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS
Filed of Record: In Book N/A, Page N/A
Document/Instrument No: 2013215140 in the Recording District of Alameda, CA, Recorded on 6/19/2013.

Property more commonly described as: 2316 LAKESHORE AVE APT 16, OAKLAND, CALIFORNIA 94606

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **3/15/2023**

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **RICHARD NEFF, JR.**
Title: **VICE PRESIDENT**

Witness Name: SHULA FERGUSON

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of      **FLORIDA**
County of     **PINELLAS**

On **3/15/2023**, before me, **ISABEL LOPEZ**, a Notary Public, personally appeared **RICHARD NEEFE, JR., VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION**, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that RICHARD NEEFE, JR., signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **ISABEL LOPEZ**
My commission expires: 2/13/2027

**ISABEL LOPEZ**
Notary Public
State of Florida
Comm# HH361490
Expires 2/13/2027

# EXHIBIT G

June 2, 2023

Trustee Corps
17100 Gillette Ave, Irvine 92614

<u>Notice:</u>

Re: Loan # ▮▮▮▮▮▮▮

To Whom It May Concern at Trustee Corps:

You have sent me an unsigned piece of paper stating Selene Finance has referred my loan to you for foreclosure.

There are few issues with this:

Neither Selene Finance nor U.S. Bank who claims to be the owner of this alleged debt have any standing to make such claims in the first place.

Nevertheless, I have already tendered a negotiable instrument in the form of Bill of Exchange , a copy of which is enclosed here, for the amount of $294,000.00 as well as the notice I sent to Selene regarding this discharge.

And as per

**UCC § 3-603(b) TENDER OF PAYMENT.**

**(b) If tender of payment of an obligation to pay an <u>instrument</u> is made to a <u>person entitled to enforce</u> the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an <u>indorser</u> or accommodation <u>party</u> having a right of recourse with respect to the obligation to which the tender relates.**

**Please take note even if it's refused, there is still discharge and the debt is set-off.**

**Whether Selene accepts it or not the alleged debt has been paid-off.**

Furthermore, If Selene Finance LP didn't want to accept this instrument of payment, they should have returned this instrument back to me which they never did.

Obviously, Selene is unwilling to accept the discharge and set-off

I shall also point out, to date Selene Finance LP has failed to produce:

A wet Ink signed bilateral credit agreement contract which is the only establishment of my debt with it (Not the loan modification) but the original agreement.

Pursuant of U.C.C. - ARTICLE 3 -§3-501 (b) 2 (1), I am entitled to demand presentation of the negotiable instrument. This is required to establish SELENE FINANCE LP/ US Bank's right of enforcement as "Holder in Due Course" via a chain of endorsement/assignment as evidenced by the Note or Allonge. Claiming to be the "the holder in due course" as a statement is insufficient proof of status. A photocopy of the documents is insufficient proof as it does not answer the question of who CURRENTLY is the rightful and lawful holder in Due Course.

Throughout the long history of this loan, the Chain Title has been broken and Bifurcation has occurred. This loan was put in Inactive status in MERS long ago, and there were no assignments recorded in the Alameda county recorder's office for a very long time even though I continued to pay the various Servicers who came and went with U.S dollar for a very long-time.

SELENE FINANCE LP must show perfection of the Chain of Title for the Promissory Note. There must be a Chain of Endorsement following UCC 9-206. Blank Assignment is not acceptable. In order to collect and enforce the note under UCC 9-301, SELENE FINANCE LP or US Bank must show it has the position of the "holder in due course."

SELENE FINANCE LP must show a perfection of the Chain of Title for the Deed of Trust. If an assignment of the Promissory Note is not registered on the county records , then perfection is not achieved and bifurcation has occurred and there is a defect in the Chain of Title and that the Deed of Trust is unenforceable.

Neither SELENE FINANCE LP nor US Bank have not done that; therefore, They will be committing theft if they moved forward with this. Just because they have copies of the loan docs from Quicken from decades ago , does not mean they are the "holder in due course"

After me pushing these issues with both Selene and U.S Bank through debt verification letters and qualified written response requests, I see Selene and U.Bank, who claims to be the owner of the loan, trying to play catch up or reverse engineer by recording it in April, 2023 at Alameda County Recorder's Office in California what some 6-months after the so-called loan modification agreement was signed. They are trying to reverse Engineer this to make believe they are proper the "holder in due course" or whatever you want to call it.

None of this can be reverse engineered now; once an instrument is defective, it is forever defective. I will be getting securitization audit done and investigating the chain of title in the near future. In another words, they are trying to use some defective, unenforceable Deed of Trust to get you involved in this.

Again, In spite of it all, I have tendered a negotiable instrument in the form of **Bill of Exchange for the amount of $294,000.00 on February 6, 2023.**

**Let me also provide you with some background regarding Bill of Exchange in case you are not familiar with it and advise you to consult with a qualified expert on this as there have been many court cases regarding this:**

According to the Honorable State Circuit Judge William C. Johnson, Jr. in **Bank One, N.A. as Trustee v. Robert E Ward** (Florida 2002) and many more court cases nationwide... Upon full payment twice by Defendant, Sara Sue Fugate, the court dismissed the case on the merits. Judge Johnson, regarding the Bill of Exchange quoted in the Defendant's favor with dismissal with prejudice the following quote directly from the court case transcripts.

"#13. When asked, "What is a Bill of Exchange or Security Note Draft as My client does not know what it is." by the Bank One, N.A. Representative Attorney, the court proceeded to clarify by stating that a Bill of Exchange, promissory note, and registered Security Note Draft must be acceptable as debt payoff by the Plaintiff, Bank One, as "they are in the Banking Business", then the court added; "They're

in the Business (BANKING BUSINESS). It is a Bank Instrument and payment." Court also said:

... "state registered new credit agreement contracts, state registered bank NOTE drafts, state registered Bills of Exchange, registered promissory Notes must be accepted by banks because Banks and lenders are in the "Banking Business" and these are "Bank Business Instruments."

Listed below are a few more laws, court cases, and authorities that quote these bank business instruments as debt payment that must be accepted as debt payment by Federal Private Reserve banks, lenders, investor trusts, and debt collector servicers:

1) **Public Law73-10,**

2) **UCC3-104(c),**

3) **Banking Business Law Title 12 USC 24 seventh,**

4) **Highland Capital Mgmt. LP v. Schneider**, 607 F.3d 322, 327 (2d Cir. 2010),

5) **Spencer v Sterling Bank**, 63 Cal Ap. 4th 1055 (1998),

6) **Guaranty Trust Co. of New York v Henwood** et al, 59 S.Ct.847, **7) PHYLLIS HORACE VS. LASALLE BANK NATIONAL ASSOCIATION**, ET AL (2011),

8) **MINNESOTA LAW REVIEW**, Journal of the State Bar Association, VOLUME XIV, MARCH, 1930, No. 4, THE PROMISSORY NOTE AS A SUBSTITUTE FOR MONEY By J. S. WATERMAN*,

9) **Wells Fargo v Carigliano** (2010), and

10) **Witkin Negotiable Instruments**, Vol 3 (2001 Supplement) on the undersigned's UCC Contract Trust Account. **These are not Treasury/Bond Account bank business instruments."**

Constitutionally and in the laws of equity, the United States **could not borrow or pledge the property and wealth of its private citizens, put at risk as collateral for its currency and credit without legally providing them equitable remedy for recovery of what is due them. Remedy under Reservation of Rights can be found at UCC 1-103.**6 and **UCC 1 -308 (Old 207.4)**

The United States government, of course, did **not** violate the law or the Constitution in this way, in order to collateralize its financial reorganization, but did, **in fact**, provide such a legal remedy so that it has been able to continue on since 1933 to hypothecate the **private** wealth and assets of those classes of persons by whom it is owned, **at risk backing the government's** obligations and currency, **by their implied consent**, through the government having provided such **remedy,**

as defined and codified above, for recovery of what is due them on their assets and wealth at risk.

**Public law 73-10, Chapter 48 (112) (113)** under HJR 192 is that remedy and in part states that the Federal Government will discharge all of our debts, public and private, dollar for dollar. if submitted in GOOD FAITH, WITH CLEAN HANDS, it is acceptable as tendered payment. Note for note, dollar for dollar This has been one of the best kept secrets in this Bankrupt Nation

As I have stated above, these entities like Selene Finance LP and U.S Bank have no standing whatsoever in the first place. Chain of title was broken long ago and bifurcation has occurred.   Even then, I have tendered Bill of Exchange in the amount $294,000.00 with instructions to discharge, set-off and zero out their ledgers and settle this.

So in summary, I suggest to you before you take this on, you properly investigate this matter.  Otherwise, you will be named as an accomplice in attempting to steal my home.

So please do not waste my time by sending anymore of these useless letters and notices regarding the unenforceable Deed of Trust ; any further effort by you attempting to contact me by U.S. mail or otherwise will be prosecuted in the appropriate manner.

Without Recourse, Theya Kanagaratnam, Executor, Administrator, Beneficiary, and Principal of the THEYA KANAGARATNAM ESTATE/TRUST, GOVERNMENT created LEGAL FICTION COMMERCIAL ENTITY. All offers are accepted for honor pursuant to 40 Stat 411, Section 7(e); 50 USC 4305(b)(2).

# EXHIBIT H

FROM:
THEYA KANAGARATNAM
On the county at Large, alameda
Non-Domestic
c/o 2316 Lakeshore Ave #16
Oakland, California [94606]

TO:
US BANK
c/o John Stern, CFO
800 Nicollet Mall
Minneapolis, MN 55402-7014
**************************************
CERTIFED MAIL RESTRICTED DELIVERY
7022 0410 0000 9829 9083
**************************************

CC:
SELENE FINANCE
c/o Robert Lay, CFO
3501 Olympus Blvd., Suite 500
Dallas, TX 75019
**************************************
CERTIFED MAIL RESTRICTED DELIVERY
7022 0410 0000 9830 3247
**************************************

DATE: December 29, 2023

RE:  **NON-NEGOTIABLE NOTICE OF FORENSIC AUDIT
FDCPA 15 USC § 1692g  VALIDATION OF DEBT
QUALIFIED WRITTEN RESPONSE REQUIRED**

IN REPLY TO: ACCOUNT NO ███████████████████████████, MIN#
███████████Date 05/24/2013

NOTICE TO AGENT IS NOTICE TO PRINCIPAL
NOTICE TO PRINCIPAL IS NOTICE TO AGENT

APPLICABLE TO ALL SUCCESSORS AND ASSIGNS

ACTUAL AND CONSTRUCTIVE LEGAL NOTICE
UCC §§ 1-201(b)(1)(2)(3)(24)(25)(26)(27)

PRESENTED IN GOOD FAITH
UCC § 1-201(20), § 1-202, § 1-203

FRCP Rule 36 "Request for Admission"
18 USC § 1001 "False Statements"
Silence is Acquiescence

Page 1

```
*************************************************************************
```
# THE TRUST STANDS FIRM IN EQUITY
```
*************************************************************************
```

Greetings,

I am sending you this this NON-NEGOTIABLE NOTICE OF FORENSIC AUDIT under the FAIR DEPT COLLECTION PRACTICES ACT, 15 USC § 1692g to validate the debt (herein "Notice") as an administrative request in accordance with 5 USC § 552a. I have come to learn that there are problems with the Contract, the Note, and the accounting. To protect everyone involved, I will remind you not to violate 18 USC § 341 "Mail Fraud", 15 USC § 1692e(2A) "False or misleading statements", FRCP Rule 36 "Request for Admission", and 18 USC § 1001 "False statements", which apply to you as fiscal agents of the United States Treasury Department, 12 USC § 266.

Please respond with the following items:

1. A certified copy of the front and back of the Contract "instrument", showing any applicable CUSIPs.

2. A certified copy of the front and back of the Note "instrument", showing any applicable CUSIPs.

3. The MERS Min Number, which is proof of securitization of the Note, and is required to have a CUSIP number. Please provide the CUSIP number for the Note.

4. If there is a CUSIP, I am instructing you to apply the funds as an offset to the principal and balance the account to zero $0.

5. Since it appears that you may be the holder/holder-in-due-course of the "instrument" please provide instructions for the remedy to setoff and discharge the liabilities by the exemption in accordance with Public Policy.

6. Please provide a payoff statement or quote with the coupon or voucher.

7. A certified copy of the __accrual__ GAAP accounting. Please include all debit and credit accounts [assets and liabilities] and all off-balance sheet liabilities income accounts and the accounting from the REMIC's. See UCC § 9-210. If you only respond with the accounts receivable accounting I may accept that as the refund due to me as you have concealed the other entries due to me as an offset as the creditor, beneficiary, and equity title owner. By IRS rules you are required to use accrual accounting methods, not cash accounting methods.

8. The name and address of the Trustee for each REMIC, the CUSIP's, and all the Tranches and/or CDOs invested in the Note.

9. A copy of the IRS 1099 A/OID for the Note. If you filed the 1099 A, <u>I did not abandon the deposit</u> - you never sent me Notice of abandoning the deposit. You were required by IRS Publication 1212, 938, 550 to send it to me. If you filed the 1099 A, please apply the funds as an offset to the principal balance and issue an appropriate refund due to

me.

10.    A certified copy of the MoneyNet Daily Transfer Log for the extension of my credit from my minor account [31 CFR § 363.6] through the Central Bank and the conversion to Federal Reserve notes. This may also be known generically as the cash receipt for the demand deposit of funds. Someone in your banking matrix has a TT&L banking terminal [31 CFR 200 series] to transfer the credit from my minor account.

11.    Since I gave you a Promissory Note, as a negotiable instrument, backed with credit funded from my minor account, 31 CFR § 363.6; in the nature of 31 USC § 5119(d)(1,2) and 18 USC § 8 "Obligations or other securities of the United States", which form of currency will you accept as payment and settlement as a fiscal agent of the United States Treasury Department? Please note, that as per MacLoed v Hoover, 159 La. 244 and Guaranty Trust v Henwood, 59 S.Ct. 847; I OBJECT that the only form of payment is Federal Reserve notes as I never extended you Federal Reserve notes. I extended you my credit, which you converted to Federal Reserve notes. Because we use fiat currency, nobody can demand payment in any specific coin or currency. The loan and repayment/settlement can be made by any equivalent kind - a negotiable instrument representing credit [UCC Article 1,3,4,8].

12.    It appears that you sent me a Presentment ("Monthly Statement"). Does the statement represent or include a Coupon or Voucher? According to the law, I can either Accept or pay Presentments, Coupons, and Vouchers for full settlement. Therefore, I Accept your Presentment. What form of accord and satisfaction will you accept for your Presentment/Coupon/Voucher?    Since    I    Accept    your Presentment/Coupon/Voucher, will you agree to adjust the account, setoff, settle, and discharge the Public Charges by the exemption in accordance with Public Policy? If no, please explain what the remedy is. Will you accept a 1099 A/OID and 1040v to release the funds from the U.S. Treasury Department [minor account at 31 CFR 363.6] to setoff, settle, and discharge the Public Charges by the exemption in accordance with Public Policy? If no, please explain what the remedy is if you are refusing tender, UCC § 3-603(b)?

13. According to the Affidavit of Walker Todd, senior counsel for the Federal Reserve, it appears that I extended my credit from my estate Legacy account (31 CFR § 363.6) to fund the loan, which was paid in full at closing without recourse. How does this NOT make me the lender and creditor and your bank the borrower and debtor given your bank did not lend its own money or assets? Will you agree to fix the loan documents to reflect the correct information in accordance with the Uniform Commercial Code, the U.S. Treasury Department, and Federal Reserve monetary policies and laws?

14. It appears that I am the Beneficiary of the alleged loan. Why have you not submitted your Presentment to the common-law Trustee, 50 USC § 4312 and 28 USC 581(a)(17) for payment?

15. It appears that you may have a TT&L Terminal (31 CFR § 200 series) to my estate Legacy minor account at 31 CFR § 363.6. If this is the case, please make another "pull" from that account to setoff, settle, and discharge the balance due. Then send me a copy of the MoneyNet Daily Transaction Log as evidence that you have performed the transfer so I

may report it on my taxes to the IRS.

16. In accordance with 31 USC § 3113, it is my right to make a non-conditional gift of the Note to the U.S. Treasury Department as my property to reduce the national debt. Who is the REMIC Trustee and will you instruct them to gift the Note (not the land) on behalf of my Trust?

I look to you for payment or performance.

If you fail or refuse to respond and provide full disclosure of the requested information, within **45 DAYS**, it will be presumed that you have committed fraud and/or embezzlement. I will also remind you of what's at stake if you fail or refuse to respond - 15 USC § 1; Trusts in restraint of trade illegal, 15 USC § 2 Monopolizing trade a felony, and 18 USC § 371; Conspiracy to commit offense or to defraud United States, which may result in a Tort claim being filed against you at the U.S. Court of Federal Trade or the U.S. Court of International Trade.

Sincerely,

Date: 10/29/2023

By: _Theya K_
Theya Kanagaratnam, living woman
Beneficiary,
Lender,
Creditor,
Secured Party,
Real Party In Interest,
Without Prejudice,
Without Recourse,
d/b/a THEYA KANGARATNAM

Page 4

# EXHIBIT I



P.O. Box 8619
Philadelphia, PA 19101-8619
Telephone (877) 735-3637
Fax (866) 926-5498
www.selenefinance.com

Hours of Operation (CT)
Monday - Thursday: 8 a.m. - 9 p.m.
Friday: 8 a.m. - 5 p.m.

01/08/2024

THEYA KANAGARATNAM
2316 LAKESHORE AVE 16
OAKLAND, CA 94606

Re:    Loan #:            ████████████
       Borrower(s):       THEYA KANAGARATNAM
       Property:          2316 LAKESHORE AVE APT 16
                          OAKLAND, CA 94606

Dear Customer,

We are in receipt of correspondence requesting information regarding your loan. Federal law requires Selene Finance LP to respond to your correspondence within 30 business days of receipt, or less if required by state law. Your request is a priority with us and in the interim if you require additional assistance please contact our Customer Service Department toll-free at (877) 735-3637.

If your correspondence is related to a payment application please be advised that Selene will suspend adverse credit reporting on your loan for 60 days from the date of receipt.

Sincerely,

Customer Service Department
Selene Finance LP

C3903                                          NMLS #9173

# EXHIBIT J

Yahoo Mail - Fw: Attn: SELENE FINANCE CFO - ROBERT LAY          https://mail.yahoo.com/d/folders/58/messages/140668?.intl=us&.lang=...

## Fw: Attn: SELENE FINANCE CFO - ROBERT LAY

From:  TheyaK ▮▮▮▮▮▮▮▮▮▮▮

To:    legal@trusteecorps.com

Date:  Sunday, January 28, 2024 at 07:11 AM PST

MTC Financial; dba Trustee Corps
C/O:   Rande Johnsen - CEO, CFO, Secretary

# NOTICE TO AGENT IS NOTICE TO PRINCIPAL

# NOTICE TO PRINCIPAL IS NOTICE TO AGENT

FYI

----- Forwarded Message -----
**From:** TheyaK ▮▮▮▮▮▮▮▮
**To:** Selenefinance Customerservice <customerservice@selenefinance.com>
**Sent:** Sunday, January 28, 2024 at 06:49:02 AM PST
**Subject:** Attn: SELENE FINANCE CFO - ROBERT LAY

SELENE FINANCE
C/O:   ROBERT LAY - CFO

# NOTICE TO AGENT IS NOTICE TO PRINCIPAL

# NOTICE TO PRINCIPAL IS NOTICE TO AGENT

I need you to provide me with your California Registered Agent and the address where court documents can be served.

I am filing a court case tomorrow and you along with U.S. Bank and Trustee Corps will named Defendants and I will be asking the judge for an ex-parte hearing to stop you from selling my home when you have no standing and you are under further Forensic Audit which will take another 90-120 days.

In MERS this loan was put in inactive status. It was also MERS who was last in my county records.

U.S. Bank Trust ... claimed to have taken ownership of this alleged loan in July 2022 yet you do not record anything with the county until April 5, 2023 (see attached)

I had already started to question you about the validity of this loan by sending you DVLs and QWRs.  Even though you never providing me with all the accounting documents etc I requested and proved your standing  , I still went ahead and set off and settled this loan by tendering a Bill of Exchange in Feb. 2023 in the amount $294,000.00 .  If you do not understand what a bill of exchange is and related laws,  please go read  UCC 3-601, 3-602, 3-603, 3-307, 15 USC 1,2 , 18 USC 371.. HJR 192, Public law 73-10 , 31 USC 5118 d(1) d(2).   Most specifically 3-603 (b) , even if it is refused, there is still discharge.

**It was after that I asked your customer service to stop calling me because I set off and settled this alleged debt with you whether you accepted it not and I told them to check with your Accounting department and stop calling me.   Please also note at this time I do not have time to be writing you through USPS when you are trying to steal my home on Feb 16.   So take this as my permission to correspond with me if you need me to provide you something in writing but I do not want your customer service calling me nonstop.**

What I see with your recording of your DOT April 5, 2023 with my county some 8-months after you have taken over the alleged loan, you were reverse engineering and playing catch in preparation for foreclosing on my home.

I have already filed a case against Trustee Corps in small claims.  I will be filing a case against you tomorrow asking the judge for all costs and more as you are clearly indicating to me you have no intention of stopping the steal of my property for another 90-120 days for me to complete the Forensic Audit as I have hired a private consultant to investigate all this and that's what he told me it would take another 90-120 days to complete it.

  Again I ask you to provide me urgently where to serve the court documents.
I found on CA Secretary of State's website:

2710 Gateway Oaks Drive
Sacramento, CA

Please confirm if the above address is correct for me to have the court papers served?


/Theya Kanagaratnam




MERS® ServicerID - Results.pdf
78.8kB


Alameda_Record_Instrument7_QuickenLoan_2013.pdf
150.8kB


Theya_Kanagaratnam_MERS_Fannie_DOT_Assignment.pdf
1.5MB

Yahoo Mail - Fw: Attn: SELENE FINANCE CFO - ROBERT LAY          https://mail.yahoo.com/d/folders/58/messages/140668?.intl=us&.lang=...

 Theya_Kanagaratnam_USBank_Selene_DOT_Assignment.pdf
1.6MB

 SeleneProcessServiceAddress.png
393.5kB

1/29/2024, 9:50 AM

# EXHIBIT "9"

 # Superior Court of Alameda County Public Portal

---

**24CV061740** KANAGARANTNAM vs SELENE FINANCE LP, et al.
**Civil Unlimited** (Other Real Property (not emin...)
Filed: 01/29/2024 Disposed: 08/29/2024
Dismissal Judgment

Rene C. Davidson Courthouse / DEPT 24 - HON. Rebekah Evenson

Document Download

Case Summary

Register of Actions    Participants

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 01/29/2024 | Complaint<br>Filed by: Theya Kanagarantnam (Plaintiff)<br>As to: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant); MTC Financial Inc. (Defendant) | Document | ⬇ |
| 01/29/2024 | Civil Case Cover Sheet<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 01/29/2024 | Summons on Complaint<br>Issued and Filed by: Clerk | Document | ⬇ |
| 01/29/2024 | Notice of Case Management Conference<br>Filed by: Clerk | Document | ⬇ |
| 01/29/2024 | Notice of Case Assignment<br>Filed by: Clerk | Document | ⬇ |
| 01/29/2024 | Case assigned to Hon. Rebekah Evenson in Department 24 Rene C. Davidson Courthouse | Assignment | |
| 01/29/2024 | Initial Case Management Conference scheduled for 06/12/2024 at 09:00 AM in Rene C. Davidson Courthouse at Department 24 | Event | |
| 02/01/2024 | Proof of Personal Service<br>Filed by: Theya Kanagarantnam (Plaintiff)<br>As to: MTC Financial Inc. (Defendant)<br>Service Date: 01/30/2024<br>Service Cost: 65.00<br>Service Cost Waived: No | Document | ⬇ |
| 02/01/2024 | Ex Parte Application for Temporary Restraining Order to Cancel and Enjoin Trustee's Sale and Order to Show Cause for Preliminary Injunction<br>Filed by: Theya Kanagarantnam (Plaintiff)<br>Type: Without Hearing | Document | ⬇ |
| 02/01/2024 | Declaration of Notice<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 02/01/2024 | Memorandum of Points & Authorities<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 02/01/2024 | Ex Parte Proposed Order<br>Received from: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 02/01/2024 | Updated -- Ex Parte Application for Temporary Restraining Order to Cancel and Enjoin Trustee's Sale and Order to Show Cause for Preliminary Injunction:<br>Result: Denied<br>Result Date: 02/14/2024 | Document | ⬇ |
| 02/02/2024 | Proof of Personal Service<br>Filed by: Theya Kanagarantnam (Plaintiff)<br>As to: US Bank Trust National Association (Defendant)<br>Service Cost Waived: No | Document | ⬇ |
| 02/05/2024 | Notice of Hearing<br>Issued and Filed by: Clerk | Document | ⬇ |
| 02/05/2024 | Ex-parte Hearing on Ex Parte Application for Temporary Restraining Order to Cancel and Enjoin Trustee's Sale and Order to Show Cause for Preliminary Injunction scheduled for 02/14/2024 at 03:00 PM in Rene C. Davidson Courthouse at Department 20 | Event | |
| 02/05/2024 | Updated -- General Order (Ex-Parte Proceedings Setting Hearing on Ex Parte Application ...):<br>Status Date changed from 02/05/2024 to 02/05/2024<br>Name Extension changed from (Ex-Parte Proceedings Setting Hearing on Ex Parte Application ...) to (Ex-Parte Proceedings Setting Hearing on Ex Parte Application ...) | Document | ⬇ |
| 02/05/2024 | General Order (Ex-Parte Proceedings Setting Hearing on Ex Parte Application ...)<br>Entered by: Court | Document | ⬇ |
| 02/09/2024 | Opposition Defendants' Opposition to Plaintiff's Ex Parte Application for Temporary Restraining Order; Memorandum of Points and Authorities in Support Thereof<br>Filed by: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) | Document | ⬇ |
| 02/13/2024 | Exhibits in Support of....<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 02/13/2024 | Proof of Personal Service<br>Filed by: Theya Kanagarantnam (Plaintiff)<br>As to: Selene Finance LP (Defendant)<br>Service Date: 02/05/2024<br>Service Cost: 85.00<br>Service Cost Waived: No | Document | ⬇ |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 02/13/2024 | Tentative Ruling Published for 02/14/2024 3:00 PM Hearing on Ex Parte Application for Temporary Restraining Order to Cancel and Enjoin Trustee's Sale and Order to Show Cause for Preliminary Injunction) | Tentative Ruling | |
| 02/14/2024 | Minute Order (Hearing on Ex Parte Application for Temporary Restraining Ord...) | Minute Order | ⬇ |
| 02/14/2024 | Order re: Hearing on Ex Parte Application for Temporary Restraining Order to Cancel and Enjoin Trustee's Sale and Order to Show Cause for Preliminary Injunction filed by Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) on 0...<br>Signed and Filed by: Court | Document | ⬇ |
| 02/14/2024 | Tentative Ruling Published for 02/14/2024 3:00 PM Hearing on Ex Parte Application for Temporary Restraining Order to Cancel and Enjoin Trustee's Sale and Order to Show Cause for Preliminary Injunction) | Tentative Ruling | |
| 02/14/2024 | Ex-parte Hearing on Ex Parte Application for Temporary Restraining Order to Cancel and Enjoin Trustee's Sale and Order to Show Cause for Preliminary Injunction scheduled for 02/14/2024 at 03:00 PM in Rene C. Davidson Courthouse at Department 20 updated:<br>Result Date to 02/14/2024<br>Result Type to Held | Event | |
| 02/15/2024 | Declaration Declaration of Non-Monetary Status<br>Filed by: MTC Financial Inc. (Defendant) | Document | ⬇ |
| 03/18/2024 | Demurrer<br>Filed by: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) | Document | ⬇ |
| 03/18/2024 | Request for Judicial Notice<br>Filed by: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) | Document | ⬇ |
| 03/18/2024 | Updated -- Demurrer:<br>Result: Sustained with Leave to Amend<br>Result Date: 05/09/2024 | Document | ⬇ |
| 03/19/2024 | Hearing on Demurrer to Plaintiff's Complaint; filed by US Bank Trust National Association (Defendant) + scheduled for 05/09/2024 at 09:00 AM in Rene C. Davidson Courthouse at Department 24 | Event | |
| 05/01/2024 | Notice of DEFENDANTS' NOTICE OF PLAINTIFF'S NON-OPPOSITION TO DEMURRER TO PLAINTIFF'S COMPLAINT<br>Filed by: Selene Finance LP (Defendant)<br>As to: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 05/03/2024 | Opposition to Defendants Notice of Plaintiff Non-Opposition Demurrer to Plaintiffs Complaint<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 05/06/2024 | Additional Exhibit to Opposition to Defendant's Notice Plaintiff's Non-Opposition Demurrer to Plaintiff's Complaint<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 05/06/2024 | Tentative Ruling Published for 05/09/2024 9:00 AM Hearing on Demurrer to Plaintiff's Complaint; filed by US Bank Trust National Association (Defendant) +} | Tentative Ruling | |
| 05/09/2024 | Proof of Service by Mail<br>Filed by: Theya Kanagarantnam (Plaintiff)<br>As to: Selene Finance LP (Defendant)<br>After Substituted Service of Summons and Complaint?: No | Document | ⬇ |
| 05/09/2024 | Proof of Service by Mail<br>Filed by: Theya Kanagarantnam (Plaintiff)<br>As to: MTC Financial Inc. (Defendant)<br>After Substituted Service of Summons and Complaint?: No | Document | ⬇ |
| 05/09/2024 | Tentative Ruling Published for 05/09/2024 9:00 AM Hearing on Demurrer to Plaintiff's Complaint; filed by US Bank Trust National Association (Defendant) +} | Tentative Ruling | |
| 05/09/2024 | Minute Order (Hearing on Demurrer to Plaintiff's Complaint; filed by US Ban...) | Minute Order | ⬇ |
| 05/09/2024 | Order re: Hearing on Demurrer to Plaintiff's Complaint; filed by US Bank Trust National Association (Defendant) + filed by Selene Finance LP (Defendant)<br>Signed and Filed by: Court | Document | ⬇ |
| 05/09/2024 | Hearing on Demurrer to Plaintiff's Complaint; filed by US Bank Trust National Association (Defendant) + scheduled for 05/09/2024 at 09:00 AM in Rene C. Davidson Courthouse at Department 24 updated:<br>Result Date to 05/09/2024<br>Result Type to Held | Event | |
| 05/10/2024 | Notice of Ruling<br>Filed by: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) | Document | ⬇ |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 05/10/2024 | Order [proposed] Order On Defendants' Demurrer To Plaintiff's Complaint<br>Received from: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant)<br>As to: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 05/28/2024 | Case Management Statement<br>Filed by: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) | Document | ⬇ |
| 06/05/2024 | 1st Amended Complaint<br>Filed by: Theya Kanagarantnam (Plaintiff)<br>As to: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant); MTC Financial Inc. (Defendant) | Document | ⬇ |
| 06/05/2024 | Updated -- 1st Amended Complaint:<br>Name Extension changed from (1st) to (1st) (2nd) | Document | ⬇ |
| 06/06/2024 | Initial Case Management Conference scheduled for 11/19/2024 at 09:00 AM in Rene C. Davidson Courthouse at Department 24 | Event | |
| 06/06/2024 | Proof of Service by Mail<br>Filed by: Theya Kanagarantnam (Plaintiff)<br>As to: MTC Financial Inc. (Defendant) | Document | ⬇ |
| 06/06/2024 | Proof of Service by Mail<br>Filed by: Theya Kanagarantnam (Plaintiff)<br>As to: Selene Finance LP (Defendant) | Document | ⬇ |
| 06/06/2024 | General Order (Case Management Order continuing hearing)<br>Entered by: Court | Document | ⬇ |
| 06/06/2024 | Initial Case Management Conference scheduled for 06/12/2024 at 09:00 AM in Rene C. Davidson Courthouse at Department 24 Not Held - Rescheduled by Court was rescheduled to 11/19/2024 09:00 AM | Event | |
| 06/25/2024 | Demurrer<br>Filed by: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) | Document | ⬇ |
| 06/25/2024 | Request for Judicial Notice<br>Filed by: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) | Document | ⬇ |

| Date | Message | Category | Download |
|---|---|---|---|
| 06/25/2024 | Order [PROPOSED] ORDER ON DEFENDANTS' DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT<br>Received from: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant)<br>As to: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 06/25/2024 | Motion to Strike (not initial pleading) DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF<br>Filed by: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) | Document | ⬇ |
| 06/25/2024 | Order [PROPOSED] ORDER ON DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT<br>Received from: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant)<br>As to: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 06/25/2024 | Updated -- Demurrer:<br>Result: Sustained without Leave to Amend<br>Result Date: 08/22/2024 | Document | ⬇ |
| 06/25/2024 | Updated -- Motion to Strike (not initial pleading) DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF:<br>Result: Dropped<br>Result Date: 08/22/2024 | Document | ⬇ |
| 06/26/2024 | Hearing on Demurrer to Plaintiff's First Amended Complaint; filed by Selene Finance LP (Defendant) + scheduled for 08/22/2024 at 09:00 AM in Rene C. Davidson Courthouse at Department 24 | Event | |
| 06/26/2024 | Hearing on Motion to Strike Plaintiff's First Amended Complaint; filed by Selene Finance LP (Defendant) + scheduled for 08/22/2024 at 09:00 AM in Rene C. Davidson Courthouse at Department 24 | Event | |
| 07/19/2024 | Opposition to Defendants' Demurrer<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 07/19/2024 | Notice of and Declaration and Evidence ISO Selene Finance is a Debt Collector<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 07/19/2024 | Notice of of Moving Case Within the Admiralty<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 07/26/2024 | Proof of Service by Mail<br>Filed by: Theya Kanagarantnam (Plaintiff)<br>As to: MTC Financial Inc. (Defendant) | Document | ⬇ |
| 07/26/2024 | Proof of Service by Mail<br>Filed by: Theya Kanagarantnam (Plaintiff)<br>As to: Selene Finance LP (Defendant) | Document | ⬇ |
| 08/15/2024 | Notice of Defendants' Notice of Plaintiff's Non-opposition to Motion to Strike Plaintiff's First Amended Complaint<br>Filed by: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant)<br>As to: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 08/15/2024 | Reply Defendants' Reply to Plaintiff's Opposition to Demurrer to<br>Filed by: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) | Document | ⬇ |
| 08/19/2024 | Tentative Ruling Published for 08/22/2024 9:00 AM Hearing on Demurrer to Plaintiff's First Amended Complaint; filed by Selene Finance LP (Defendant) +} | Tentative Ruling | |
| 08/19/2024 | Tentative Ruling Published for 08/22/2024 9:00 AM Hearing on Motion to Strike Plaintiff's First Amended Complaint; filed by Selene Finance LP (Defendant) +} | Tentative Ruling | |
| 08/21/2024 | Notice of Declaration of American Public Citizen and Private Bank in the American Republic and Tendering and Liquidation of GSA Bonds<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 08/22/2024 | Minute Order (Hearing on Demurrer to Plaintiff's First Amended Complaint; f...) | Minute Order | ⬇ |
| 08/22/2024 | Order re: Hearing on Demurrer to Plaintiff's First Amended Complaint; filed by Selene Finance LP (Defendant) + filed by Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) on 06/25/2024<br>Signed and Filed by: Court | Document | ⬇ |
| 08/22/2024 | Minute Order (Hearing on Motion to Strike Plaintiff's First Amended Complai...) | Minute Order | ⬇ |
| 08/22/2024 | Order re: Hearing on Motion to Strike Plaintiff's First Amended Complaint; filed by Selene Finance LP (Defendant) + filed by Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) on 08/15/2024<br>Signed and Filed by: Court | Document | ⬇ |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 08/26/2024 | Hearing on Demurrer to Plaintiff's First Amended Complaint; filed by Selene Finance LP (Defendant) + scheduled for 08/22/2024 at 09:00 AM in Rene C. Davidson Courthouse at Department 24 updated:<br>Result Date to 08/22/2024<br>Result Type to Held | Event | |
| 08/26/2024 | Hearing on Motion to Strike Plaintiff's First Amended Complaint; filed by Selene Finance LP (Defendant) + scheduled for 08/22/2024 at 09:00 AM in Rene C. Davidson Courthouse at Department 24 updated:<br>Result Date to 08/22/2024<br>Result Type to Held | Event | |
| 08/27/2024 | Judgment<br>Received from: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant)<br>As to: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 08/27/2024 | Notice of Ruling<br>Filed by: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) | Document | ⬇ |
| 08/29/2024 | Court orders judgment entered for Defendant Selene Finance LP and Defendant US Bank Trust National Association against Plaintiff Theya Kanagarantnam on the Amended Complaint (2nd) filed by Theya Kanagarantnam on 06/05/2024.<br><br>Other: See terms of Judgment Dismissal | Judgment | |
| 08/29/2024 | Judgment<br>Signed and Filed by: Selene Finance LP (Defendant); US Bank Trust National Association (Defendant)<br>As to: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 08/29/2024 | Updated -- Judgment:<br>Result: Granted<br>Result Date: 08/29/2024 | Document | ⬇ |
| 09/18/2024 | Notice of To Court Of Assigned Trusteeship To Set Off, Settle Discharge<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 09/18/2024 | Updated -- Notice To Court Of Assigned Trusteeship To Set Off, Settle, Discharge And Balance Account:<br>Exact Name: Notice To Court Of Assigned Trusteeship To Set Off, Settle, Discharge And Balance Account | Document | ⬇ |

| Date | Message | Category | Download |
|------|---------|----------|----------|

09/20/2024    Notice of Entry of Judgment / Dismissal / Other Order    Document    [↓]
Filed by: Selene Finance LP (Defendant); US Bank Trust National Association
(Defendant)

09/25/2024    Opposition Defendants' Opposition to Plaintiff's Motion to Vacate    Document    [↓]
Judgment; Memorandum of Points and Authorities in Support Thereof
Filed by: Selene Finance LP (Defendant); US Bank Trust National Association
(Defendant)

09/26/2024    Notice of Court Equity to Enforce Settlement, Release Lien and Reconvey    Document    [↓]
Title
Filed by: Theya Kanagarantnam (Plaintiff)

09/30/2024    General Order (Court Order)    Document    [↓]
Entered by: Court

10/09/2024    Hearing on Motion to Set Aside/Vacate Judgment (CCP 473) scheduled for    Event
11/07/2024 at 09:00 AM in Rene C. Davidson Courthouse at Department 24

11/04/2024    Initial Case Management Conference scheduled for 11/19/2024 at 09:00    Event
AM in Rene C. Davidson Courthouse at Department 24 Not Held - Vacated
by Court on 11/04/2024

11/04/2024    Tentative Ruling Published for 11/07/2024 9:00 AM Hearing on Motion to    Tentative Ruling
Set Aside/Vacate Judgment (CCP 473)}

11/07/2024    Minute Order (Hearing on Motion to Set Aside/Vacate Judgment (CCP 473)    Minute Order    [↓]
file...)

11/07/2024    Order re: Hearing on Motion to Set Aside/Vacate Judgment (CCP 473) filed    Document    [↓]
by Selene Finance LP (Defendant); US Bank Trust National Association
(Defendant) on 09/25/2024
Signed and Filed by: Court

11/07/2024    Hearing on Motion to Set Aside/Vacate Judgment (CCP 473) scheduled for    Event
11/07/2024 at 09:00 AM in Rene C. Davidson Courthouse at Department 24
updated:
Result Date to 11/07/2024
Result Type to Held

11/13/2024    Order to Show Cause Re: Dismissal scheduled for 03/18/2025 at 09:00 AM    Event
in Rene C. Davidson Courthouse at Department 24

11/13/2024    General Order (ORDER TO SHOW CAUSE RE SANCTIONS OR DISMISSAL)    Document    [↓]
Entered by: Court

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 03/13/2025 | Request for Dismissal<br>Filed by: | Document | |
| 03/13/2025 | On the Amended Complaint (2nd) filed by Theya Kanagarantnam on 06/05/2024, entered Order for Dismissal without prejudice as to the entire action | Dismissal | |
| 03/13/2025 | Updated -- Request for Dismissal:<br><br>Result Date changed from 03/18/2025 to 05/30/2025 | Document | |
| 03/13/2025 | Tentative Ruling Published for 03/18/2025 9:00 AM Order to Show Cause Re: Dismissal) | Tentative Ruling | |
| 03/18/2025 | Updated -- Minute Order (Order to Show Cause Re: Dismissal):<br>Status Date changed from 03/18/2025 to 03/18/2025<br>Name Extension changed from (Order to Show Cause Re: Dismissal) to (Order to Show Cause Re: Dismissal) | Document | |
| 03/18/2025 | Minute Order (Order to Show Cause Re: Dismissal) | Minute Order | |
| 03/18/2025 | Order re: Order to Show Cause Re: Dismissal<br>Signed and Filed by: Court | Document | ⤓ |
| 03/18/2025 | Order to Show Cause Re: Dismissal scheduled for 03/18/2025 at 09:00 AM in Rene C. Davidson Courthouse at Department 24 updated:<br>Result Date to 03/18/2025<br>Result Type to Held | Event | |
| 09/04/2025 | Miscellaneous - Other Non-Negotiable Notice of Acceptance<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⤓ |
| 09/04/2025 | Miscellaneous - Other Non-Negotiable Notice of Acceptance<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⤓ |
| 09/04/2025 | Miscellaneous - Other Non-Negotiable Notice of Acceptance<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⤓ |
| 09/04/2025 | Miscellaneous - Other Notice of Rescission of Case Number 24CV061740-Notice for Cause<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⤓ |
| 09/04/2025 | Updated -- Miscellaneous - Other Non-Negotiable Notice of Acceptance:<br>Status Date changed from 09/05/2025 to 09/04/2025 | Document | ⤓ |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 09/04/2025 | Miscellaneous - Other Non-Negotiable of Acceptance<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 09/04/2025 | Miscellaneous - Other Non-Negotiable Notice of Acceptance<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 09/04/2025 | Miscellaneous - Other Notice of and Rescission of Case Number 24CV-061740/ Opposition for Cause<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 09/04/2025 | Notice of and rescission of case<br>Filed by: Court | Document | ⬇ |
| 09/04/2025 | and Recission of Case number 24cv061740 memorandum of cause<br>Filed by: Court | Document | ⬇ |
| 09/04/2025 | Updated -- Notice of and Recission of Case number 24cv061740 memorandum of cause:<br>Name Extension: and Recission of Case number 24cv061740 memorandum of cause<br>Exact Name: blank | Document | ⬇ |
| 09/04/2025 | Non-Negotiable Notice of Acceptance<br>Filed by: Court | Document | ⬇ |
| 09/04/2025 | Notice of of and reccission of case Number 24cv061740<br>Filed by: Court | Document | ⬇ |
| 09/04/2025 | Updated -- Notice of of and rescission of case Number 24cv061740 declaration for cause:<br>Name Extension changed from of and reccission of case Number 24cv061740 to of and rescission of case Number 24cv061740 declaration for cause | Document | ⬇ |
| 09/04/2025 | Notice of for cause<br>Filed by: | Document | ⬇ |
| 09/04/2025 | Miscellaneous - Other Notice of and Rescission of Case Number 24CV-061740/ Notice of Cause<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 09/04/2025 | Miscellaneous - Other Notice of and rescission of Case Number 24CV-061740/ First Amended Complaint for Cause<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 09/04/2025 | Miscellaneous - Other Notice of and Resciision of Case Number 24CV061740/ Opposition for Cause<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 09/04/2025 | Notice of and Rescission of case number 24CV061740 Complaint for cause<br>Filed by: Court | Document | ⬇ |
| 09/04/2025 | Notice of and rescission of case Number 24Cv061740 Exparte Application for cause<br>Filed by: Court | Document | ⬇ |
| 09/04/2025 | Notice of and rescission of case number 24CV061740 Additional Exhibit to Opposition for cause<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 09/04/2025 | Notice of and Rescission of case number 24CV061740 Notice of<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 09/04/2025 | Updated -- Notice of and Rescission of case number 24CV061740 Notice for cause:<br>Name Extension changed from and Rescission of case number 24CV061740 Notice of to and Rescission of case number 24CV061740 Notice for cause | Document | ⬇ |
| 09/04/2025 | Notice of and rescission of case Number 24CV061740 Notice of Exhibits for cause<br>Filed by: | Document | ⬇ |
| 09/04/2025 | Non-Negotiable Notice of acceptance<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 09/05/2025 | Miscellaneous - Other Non-Negotiable Notice of Acceptance<br>Filed by: Theya Kanagarantnam (Plaintiff) | Document | ⬇ |
| 09/15/2025 | Notice of Rejection - Miscellaneous<br>Filed by: Clerk | Document | ⬇ |

Copyright © Journal Technologies, USA. All rights reserved.

# EXHIBIT "10"

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Rene C. Davidson Courthouse

| | |
|---|---|
| Theya Kanagarantnam<br>        Plaintiff/Petitioner(s)<br>vs.<br>Selene Finance LP et al<br>        Defendant/Respondent<br>(s) | **No.**    24CV061740<br><br>**Date:**   02/14/2024<br>**Time:**   3:00 PM<br>**Dept:**   20<br>**Judge:**  Karin Schwartz<br><br>ORDER re: Hearing on Ex Parte Application for Temporary Restraining Order to Cancel and Enjoin Trustee's Sale and Order to Show Cause for Preliminary Injunction filed by Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) on 02/09/2024 |

The Ex Parte Application for Temporary Restraining Order to Cancel and Enjoin Trustee's Sale and Order to Show Cause for Preliminary Injunction filed by Theya Kanagarantnam on 02/01/2024 is Denied.

As a preliminary point, the application is not supported by admissible evidence (the attachments to the Ex Parte Application are not properly authenticated). Further, as to the merits, plaintiff has not identified facts or law that would support equitable relief. Instead, the basis for the application appears to be plaintiff's speculation that responses to a "forensic audit" might demonstrate that defendants lack standing to conduct the trustee's sale. Finally, no competent evidence has been offered to support irreparable injury.

ORDER re: Hearing on Ex Parte Application for Temporary Restraining
        Order to Cancel and Enjoin Trustee's Sale and Order to
        Show Cause for Preliminary Injunction filed by Selene
        Finance LP (Defendant); US Bank Trust National
        Association (Defendant) on 02/09/2024

                                                    Page 1 of 2

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

Dated :  02/14/2024

Karin Schwartz / Judge

ORDER re: Hearing on Ex Parte Application for Temporary Restraining
Order to Cancel and Enjoin Trustee's Sale and Order to
Show Cause for Preliminary Injunction filed by Selene
Finance LP (Defendant); US Bank Trust National
Association (Defendant) on 02/09/2024

Page 2 of 2

| **SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>02/15/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _A. Amponsah_ Deputy<br>A. Amponsah |
| PLAINTIFF/PETITIONER:<br>Theya Kanagarantnam | |
| DEFENDANT/RESPONDENT:<br>Selene Finance LP et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24CV061740 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Theya Kanagarantnam
2316 Lakeshore Ave.
#16
Oakland, CA 94606

Chad Finke, Executive Officer / Clerk of the Court

Dated: 02/15/2024                    By:

_A. Amponsah_

A. Amponsah, Deputy Clerk

**CERTIFICATE OF MAILING**

# EXHIBIT "11"

## *4:24bk40209, Theya Prakashini Kanagaratnam*

US Bankruptcy Court Docket

United States Bankruptcy Court, California Northern

(Oakland)

**This case was retrieved on** 10/12/2025

Claims **were retrieved on N/A**

Creditors **were retrieved on** 09/24/2025

## Header

**Case Number:** 4:24bk40209
**Date Filed:** 02/15/2024
**Date Proceedings & Schedule Retrieved:** 10/12/2025
**Misc:** (0) UNKNOWN
**Chapter:** 7
**Flags:** MEANSNO, CLOSED
**Case Type:** Bankruptcy
**Assets:** No
**Vol:** Voluntary
**Judge:** Judge William J. Lafferty
**Disposition:** DISCHARGED
**341 Date:** 03/20/2024
**341 Location:** VIA TELE VIDEOCONFERENCE WWW CANB USCOUR
**Pending Status:** Case Closed

## Participants

### Litigants

CITIBANK, N.A.
**TAXID / EIN:**
Added: 08/07/2024
**Creditor**


U.S. BANK TRUST NATIONAL ASSOCIATION
Robertson, Anschutz, Schneid, Crane & Pa
13010 Morris Road., Suite 450
Alpharetta, GA 30004
**TAXID / EIN:**
Added: 09/19/2024
**Creditor**

### Attorneys

Richard L. Stevenson
Law Office of Richard L. Stevenson
1633 Pegasus Way
San Marcos, CA 92069
**Phone:** 858-337-9557
 Assigned: 08/07/24;
**Email:** rls@tblaw.com
Creditor

David Coats
Ghidotti Berger LLP
1920 Old Tustin Avenue
Santa Ana, CA 92705
**Phone:** 949-427-2010
 Assigned: 03/17/25;
**Email:** dacoats@raslg.com
Creditor

4:24bk40209, Theya Prakashini Kanagaratnam

## Litigants

## Attorneys

Theron S. Covey
Robertson, Anschutz, Schneid & Crane LLP
1 Park Plaza, Suite 600
Irvine, CA  92614
**Phone:** 858-997-0500
  Assigned: 09/19/24;
**Email:** AttorneyTCovey@gmail.com

Theya Prakashini Kanagaratnam
2316 Lakeshore Avenue #16
Oakland, CA  94606
SSN / ITIN: xxx-xx-3
**TAXID / EIN:**
Added: 02/15/2024
**Debtor**

Paul Mansdorf
1569 Solano Ave. #703
Berkeley, CA  94707
**TAXID / EIN:**
**Phone:** 510 526-5993
**Email:** paul@mansdorftrustee.com
Added: 02/15/2024
**Trustee**

Office of the U.S. Trustee/Oak
Office of the United States Trustee
Phillip J. Burton Federal Building,450 Golden Gate Ave. 5th
Fl., #05-0153
San Francisco, CA  94102
**TAXID / EIN:**
**Phone:** 415 252-2080
**Email:** USTPRegion17.OA.ECF@usdoj.gov
Added: 02/15/2024
**U.S. Trustee**

## Schedule

| Document No | Deadline/Hearing | Event Filed | Due/Set | Satisfied Date | Terminated | Hearing Judge |
|---|---|---|---|---|---|---|
| 1 | Incomplete Filings Due | 02/15/2024 | 02/29/2024 | | 02/28/2024 | |
| 1 | Order Mtg of Creditors | 02/15/2024 | 02/29/2024 | 02/18/2024 | | |
| 4 | Social Security Form/Matrix | 02/15/2024 | 02/29/2024 | | 02/28/2024 | |
| 2 | 341 Meeting | 02/15/2024 | 03/20/2024 at 09:00 AM | 03/20/2024 | | |
| 2 | Financial Management | 02/15/2024 | 04/01/2024 | 04/02/2024 | | |
| 2 | Objection to Discharge Due | 02/15/2024 | 05/20/2024 | 06/05/2024 | | |
| 29 | Case Management Action | 06/05/2024 | 07/05/2024 | | 07/08/2024 | |
| 47 | Case Management Action | 07/09/2025 | 07/23/2025 | | 07/28/2025 | |

4:24bk40209, Theya Prakashini Kanagaratnam

## Proceedings

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 1 | 02/15/2024 | Chapter 7 Voluntary Petition for Individuals. Fee Amount $338. Financial Management Certificate Due Prior to Discharge. Filed by Theya Prakashini Kanagaratnam . Incomplete Filings due by 2/29/2024. Order Meeting of Creditors due by 2/29/2024. (rs) (Entered: 02/15/2024) | |
| 2 | 02/15/2024 | First Meeting of Creditors with 341(a) meeting to be held on 3/20/2024 at 09:00 AM via Tele/Videoconference - www.canb.uscourts.gov/calendars. Last day to oppose discharge or dischargeability is 5/20/2024. (Scheduled Automatic Assignment) (Entered: 02/15/2024) | |
| 3 | 02/15/2024 | Creditor Matrix Filed by Debtor Theya Prakashini Kanagaratnam (rs) (Entered: 02/15/2024) | |
| 4 | 02/15/2024 | Notice of Failure to Provide Debtor"s Social Security Number, Employer Identification Number, and/or List of Creditors. Social Security Form/EIN/Matrix due by 2/29/2024. (rs) (Entered: 02/15/2024) | |
| 5 | 02/15/2024 | Order to File Required Documents and Notice of Automatic Dismissal . (rs) (Entered: 02/15/2024) | |
| 6 | 02/15/2024 | Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines (Generated) (rs) (Entered: 02/15/2024) | |
| | 02/15/2024 | Receipt of Filing Fee for Chapter 7 Voluntary Petition. Amount 338.00 from Theya Prakashini Kanagaratnam. Receipt Number 41000110. (admin) (Entered: 02/16/2024) | |
| 7 | 02/17/2024 | BNC Certificate of Mailing - Notice of Failure to Provide Debtor"s Social Security Number (RE: related document(s) 4 Notice of Failure to Provide SSN/EIN/List of Creditors). Notice Date 02/17/2024. (Admin.) (Entered: 02/17/2024) | |
| 8 | 02/17/2024 | BNC Certificate of Mailing (RE: related document(s) 5 Order to File Missing Documents). Notice Date 02/17/2024. (Admin.) (Entered: 02/17/2024) | |
| 9 | 02/18/2024 | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s) 6 Generate 341 Notices). Notice Date 02/18/2024. (Admin.) (Entered: 02/18/2024) | |
| 10 | 02/28/2024 | Statement of Social Security Number. Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 02/28/2024) | |
| 11 | 02/28/2024 | Summary of Your Assets and Liabilities and Certain Statistical Information, Schedules A - J, Declaration About Individual Debtor"s Schedule, Statement of Financial Affairs for Individual. (RE: related document(s)5 Order to File Missing Documents). Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 02/28/2024) | |
| 12 | 02/28/2024 | Chapter 7 Statement of Your Current Monthly Income. Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 02/28/2024) | |
| | 02/29/2024 | List of Debtor"s Prior Filings for debtor Theya Prakashini Kanagaratnam Case Number 23-40702, Chapter 13 filed in California Northern Bankruptcy Court on 06/15/2023 , Dismissed for failure to make plan payments on 09/27/2023.(Admin) (Entered: 02/29/2024) | |
| 13 | 03/06/2024 | Certificate of Credit Counseling. Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 03/06/2024) | |
| | 03/14/2024 | The trustee declares, under penalty of perjury, that the debtor(s) named above have failed to submit a copy of their federal income tax document(s) as required by 11 U.S.C. Section 521 (e)(2)(A)(i) | |

4:24bk40209, Theya Prakashini Kanagaratnam

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | . (Mansdorf, Paul) (Entered: 03/14/2024) | |
| 14 | 03/14/2024 | Order and Notice Regarding Failure of the Debtor(s) to Submit a Copy of their Federal Income Tax Return(s) to the Trustee as Required by 11 U.S.C. Section 521(e)(2)(A)(i)(admin) (Entered: 03/14/2024) | |
| 15 | 03/17/2024 | BNC Certificate of Mailing (RE: related document(s) 14 Order and Notice Regarding Failure to Submit Tax Returns). Notice Date 03/17/2024. (Admin.) (Entered: 03/17/2024) | |
| 16 | 03/19/2024 | Exhibit A-C (RE: related document(s)11 Statistical Summary of Certain Liabilities, Schedules A-J, Declaration About Individual Debtor"s Schedule, Statement of Financial Affairs). Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 03/19/2024) | |
| | 03/20/2024 | Chapter 7 Trustee"s Report of No Distribution: I, Paul Mansdorf, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 1 months. Assets Abandoned (without deducting any secured claims): $ 1217622.00, Assets Exempt: Not Available, Claims Scheduled: $ 424000.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 424000.00. Meeting of Creditors Held. Debtor appeared. (Mansdorf, Paul) (Entered: 03/20/2024) | |
| 17 | 04/02/2024 | Notice of Deficiency of Financial Management Course Certificate Due Before Discharge (admin) (Entered: 04/02/2024) | |
| 18 | 04/03/2024 | Personal Financial Management Course Certificate. Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 04/03/2024) | |
| 19 | 04/05/2024 | BNC Certificate of Mailing (RE: related document(s) 17 Notice of Deficiency Financial Management Course). Notice Date 04/05/2024. (Admin.) (Entered: 04/05/2024) | |
| 20 | 05/01/2024 | Personal Financial Management Course Certificate. Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 05/01/2024) | |
| 21 | 05/15/2024 | Motion for Urgent Action to Suspend the Sale of Petitioner"s Home and Motion for Set off, Settle and Discharge Liabilities. Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 05/15/2024) | |
| 22 | 05/16/2024 | Memorandum Regarding Debtor"s Motion to Suspend Sale (Related Doc # 21). (cf) (Entered: 05/16/2024) | |
| 23 | 05/17/2024 | Amended Memorandum Regarding Debtor"s Motion to Suspend Sale (RE: related document(s)22 Order on Motion for Miscellaneous Relief). (cf) (Entered: 05/17/2024) | |
| 24 | 05/17/2024 | Motion for Set Off, Settle and Discharge all Liabilities with Payment. Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 05/17/2024) | |
| 25 | 05/18/2024 | BNC Certificate of Mailing (RE: related document(s) 22 Order on Motion for Miscellaneous Relief). Notice Date 05/18/2024. | |

4:24bk40209, Theya Prakashini Kanagaratnam

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | (Admin.) (Entered: 05/18/2024) | |
| 26 | 05/19/2024 | BNC Certificate of Mailing (RE: related document(s) 23 Amended Order). Notice Date 05/19/2024. (Admin.) (Entered: 05/19/2024) | |
| 27 | 05/20/2024 | Amended Motion for Set Off, Settle and Discharge all Liabilitie and Balance Account to Zero. (RE: related document(s)24 Motion for Set Off, Settle and Discharge all Liabilities with Payment. filed by Debtor Theya Prakashini Kanagaratnam) . Filed by Debtor Theya Prakashini Kanagaratnam (Attachments: # 1 Exhibit 1 # 2 Exhibit 2) Modified on 5/20/2024 (dc) (Entered: 05/20/2024) | |
| 28 | 05/20/2024 | Objection to Docket Entry made on 3/20/2024 and other Clarifications. (RE: related document(s) Chapter 7 Trustee''s Report of No Distribution). Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 05/20/2024) | |
| 29 | 06/05/2024 | Order Discharging Chapter 7 . (RE: related document(s) 2 Meeting (Chapter 7)). Case Management Action due after 7/5/2024. (rs) (Entered: 06/05/2024) | |
| 30 | 06/07/2024 | BNC Certificate of Mailing - Order of Discharge. (RE: related document(s) 29 Order Discharging Chapter 7 Debtor). Notice Date 06/07/2024. (Admin.) (Entered: 06/07/2024) | |
| 31 | 06/14/2024 | Motion for Request for Admissions by Negative Averment Affidavit Responsive to Writings of Alleged Creditors US Bank and Citibank. Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 06/14/2024) | |
| 32 | 06/14/2024 | Motion for Clarification Regarding Discharge in Light of CUSIP and Birth Certificate BankNote Bond. Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 06/14/2024) | |
| 33 | 06/17/2024 | Letter to the Court (RE: related document(s)31 Motion for Request for Admissions by Negative Averment Affidavit Responsive to Writings of Alleged Creditors US Bank and Citibank). Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 06/17/2024) | |
| 34 | 07/03/2024 | Motion to Issue Order to Stop and Cancel Foreclosure Scheduled for July 23, 2024. Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 07/03/2024) | |
| 35 | 07/17/2024 | Move Case to Admiralty and Addendum to the Motion filed on July 3, 2024 to Issue Order to Stop and Cancel Foreclosure Scheduled for July 23, 2024 (RE: related document(s)34 Motion to Issue Order to Stop and Cancel Foreclosure Scheduled for July 23, 2024. filed by Debtor Theya Prakashini Kanagaratnam) . Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 07/17/2024) | |
| 36 | 08/07/2024 | Brief/Memorandum in Opposition to Debtor''s Motions/Letters - Document Nos. 31, 33, 34, and 35 (RE: related document(s)31 Motion Miscellaneous Relief, 34 Motion Miscellaneous Relief, 35 Amended Application/Motion). Filed by Creditor CITIBANK, N.A. (Attachments: # 1 Certificate of Service) (Stevenson, Richard) (Entered: 08/07/2024) | |
| 37 | 09/19/2024 | Request for Notice  Filed by Creditor U.S. BANK TRUST NATIONAL ASSOCIATION (Covey, Theron) (Entered: 09/19/2024) | |
| 38 | 09/25/2024 | Notice to the Court of Assigned Trusteeship; Status Declaration And Other Related Documents; Motion to bring Contempt of Court Charges Against US Bank et al. Filed by Debtor Theya Prakashini Kanagaratnam (rs) (Entered: 10/02/2024) | |
| 39 | 10/04/2024 | Memorandum Regarding Debtor''s Notice to the Court (RE: related document(s)38 Notice filed by Debtor Theya Prakashini Kanagaratnam). (cf) (Entered: 10/04/2024) | |

4:24bk40209, Theya Prakashini Kanagaratnam

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 40 | 10/06/2024 | BNC Certificate of Mailing (RE: related document(s) 39 Order). Notice Date 10/06/2024. (Admin.) (Entered: 10/06/2024) | |
| 41 | 11/01/2024 | Trustee Certification of Services Rendered Under 11 U.S.C. Section 330(e). I rendered the following service in the case and am eligible for payment under 11 U.S.C. Section 330(e): Filed a Report of No Distribution. I declare under penalty of perjury that the foregoing is true and correct. (Executed on 11/1/2024). ((RE: related document(s) Chapter 7 Trustee"s Report of No Distribution). Filed by Trustee Paul Mansdorf (Mansdorf, Paul) (Entered: 11/01/2024) | |
| 42 | 11/15/2024 | Bill in Equity for Breach of Contract and Enforcement of Accord and Satisfaction. Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 11/15/2024) | |
| 43 | 11/15/2024 | Judicial Notice in Support of (RE: related document(s)42 Bill in Equity for Breach of Contract and Enforcement of Accord and Satisfaction). Filed by Debtor Theya Prakashini Kanagaratnam (dc) (Entered: 11/15/2024) | |
| 44 | 11/26/2024 | Addendum To Bill In Equity - Demanding An Affidavit Of Balance Due By Any Injured Party And Additional Evidence That Defendants Have No Standing For Any Claims Filed by Debtor Theya Prakashini Kanagaratnam (rs) Modified on 11/26/2024 (rs). Related document(s) 42 Bill in Equity for Breach of Contract and Enforcement of Accord and Satisfaction. filed by Debtor Theya Prakashini Kanagaratnam. Modified on 11/27/2024 (ds). (Entered: 11/26/2024) | |
| 45 | 02/03/2025 | Motion for Summary Judgment, with Certificate of Service. Filed by Debtor Theya Prakashini Kanagaratnam . (dc) (Entered: 02/03/2025) | |
| 46 | 03/17/2025 | Objection to Debtors Motion for Summary Judgment (RE: related document(s)45 Motion for Summary Judgment/Adjudication). Filed by Creditor U.S. BANK TRUST NATIONAL ASSOCIATION (Coats, David) (Entered: 03/17/2025) | |
| 47 | 07/09/2025 | Memorandum Regarding Debtor"s Motion For Summary Judgment (Related Doc # 45) Case Management Action due after 7/23/2025. (rs) (Entered: 07/09/2025) | |
| 48 | 07/11/2025 | BNC Certificate of Mailing (RE: related document(s) 47 Order on Motion for Summary Judgment/Adjudication). Notice Date 07/11/2025. (Admin.) (Entered: 07/11/2025) | |
| 49 | 07/28/2025 | Final Decree (no) (Entered: 07/28/2025) | |
| | 07/28/2025 | Bankruptcy Case Closed. (no) (Entered: 07/28/2025) | |
| 50 | 07/30/2025 | BNC Certificate of Mailing (RE: related document(s) 49 Final Decree). Notice Date 07/30/2025. (Admin.) (Entered: 07/30/2025) | |

## Claims  Retrieved on N/A

### No information is available for this case

## Creditors  Retrieved on 09/24/2025

CITIBANK, N.A.

U.S. BANK TRUST NATIONAL ASSOCIATION

Robertson, Anschutz, Schneid, Crane & Pa

4:24bk40209, Theya Prakashini Kanagaratnam

13010 Morris Road., Suite 450

Alpharetta, GA  30004

Bank of America

100 North Tryon Street

Charlotte NC 28255

Cenlar FSB

P.O. Box 77404

Ewing, NJ  08628

Charlotte Bank of America Corporate Center

100 North Tryon Street

Charlotte, North Carolina  28255

Citibank

P.O. Box 769004

San Antonio, TX  78245

Mortgage Electronic Registration System MERS

P.O. Box 2026

Flint, MI  48501-2026

Selene Finance LP

P.O. Box 8619

Philadelphia PA 19101-8619

U.S. Bank

800 Nicollet Mall

Minneapolis, MN  55402-7014

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

End of Document

EXHIBIT "12"

Form FIND

## UNITED STATES BANKRUPTCY COURT
### California Northern Bankruptcy Court

| In Re: | Theya Prakashini Kanagaratnam | Case No.: 24−40209 WJL 7 |
|---|---|---|
| | Debtor(s) | Chapter: 7 |

### FINAL DECREE

The estate of the above named debtor has been fully administered.

☐ The deposit required by the plan has been distributed.

**IT IS ORDERED THAT:**

☑ Paul Mansdorf is discharged as trustee of the estate of the above−named debtor and the bond is canceled.

☑ the chapter 7 case of the above−named debtor is closed;

and

☐ Other

Dated: <u>7/28/25</u>

By the Court:

William J. Lafferty
United States Bankruptcy Judge

## Notice Recipients

| | | |
|---|---|---|
| District/Off: 0971−4 | User: admin | Date Created: 7/28/2025 |
| Case: 24−40209 | Form ID: FIND | Total: 3 |

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| ust | Office of the U.S. Trustee/Oak | USTPRegion17.OA.ECF@usdoj.gov |
| tr | Paul Mansdorf | paul@mansdorftrustee.com |

TOTAL: 2

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | |
|---|---|---|---|
| db | Theya Prakashini Kanagaratnam | 2316 Lakeshore Avenue #16 | Oakland, CA 94606 |

TOTAL: 1

# EXHIBIT "13"

1   Theya Kanagaratnam, living woman
    On the county at Large, alameda
2   Non-Domestic
    c/o 2316 Lakeshore Ave, #16
3   Oakland, California [94606]
    e-mail: ███████████████

4   By Special Appearance, In Propria Persona

5                SUPERIOR COURT OF CALIFORNIA
6                FOR THE COUNTY OF ALAMEDA

7
    THEYA KANAGARATNAM,          )   CASE No. 24CV061740
8       Plaintiff,              )
                                )   FIRST AMENDED COMPLAINT:
9       v.                      )
                                )   REQUEST FOR ADMISSIONS BY
10  SELENE FINANCE LP, US BANK   )   NEGATIVE AVERMENT AFFIDAVIT
    TRUST NATIONAL ASSOCIATION,  )   RESPONSIVE TO WRITINGS OF
11  MTC FINANCIAL, INC DBA       )   DEFENDANT.
    TRUSTEE CORPS AND DOES 1-20  )
12      Defendant.              )   DEFENDANTS HAVE NO STANDING TO
                                )   FORECLOSE ON PLAINTIFF'S
13                               )   PROPERTY
                                )
14                               )   DEFENDENTS HAVE COMMITED FRAUD
                                )   BY FAILING TO DISCLOSE TRUE
15                               )   NATURE OF NOTE AND CONTRACT
                                )   AND IN VIOLATION FDCPA, FCRA,
16                               )   CA ROSENTHAL ACT (SB 187) 15
                                )   USC _ AND OTHER VIOLATIONS
17                               )
                                )_  DEFENDENTS ARE IN BREACH OF
18                               )   FIDUCIARY DUTY BY FAILING TO
                                )   SET OFF, SETTLE AND DISCHARGE
19                               )   AND RELEASE AND RECONVEY TITLE
                                )
20  _____ )

21

22
                 AN AUTHENTICATED FOREIGN DOCUMENT
23               HAGUE CONVENTION, 5 October 1961

24           PUBLIC NOTICE, HONORABLE CLARIFICATIONS

                              1

State of California }

County of Alameda  } Subscribed, affirmed, and sealed }

### INTRODUCTION

NOW COMES Aggrieved party with a right to a remedy, Theya Kanagaratnam (U.C.C. § 1-201;(1)(2)(3)(27)(14) (Hereinafter Aggrieved party), Sui Juris, **Secured Party** (U.C.C. § 9-105), NONPERSON (U.C.C. § 1-201(27)), NON-RESIDENT, NON-DEBTOR (28 U.S.C. § 3002(4)), NON-CORPERATED, NON-FICTION, NON-SUBJECT, NONPARTICIANT in any Government programs, a Living flesh and blood Woman standing on the ground. Sovereign, NON-CITIZEN, under **Special Appearance** (Rule 8(E)) not generally, NON-DEFENDANT (U.C.C. § 1-201(14)), **Holder-In-Due-Course** (U.C.C. § 3-302(A)(2)) of all documentation (U.C.C. § 5-102(6)) of the "Entity" Cestui Que Vie trust CORPORATE FICTION: THEYA KANAGARATNAM®, representing the Corporate Fiction. **Under no circumstances** is the Plaintiff "Pro Se" as this Complaint is filed under the Holder-In-Due-Couse; Theya Kanagaratnam of the "Cestui Que Vie trust" of THEYA KANAGARATNAM.

2

**Theya Kanagaratnam, challenges DEFENDANT's standing to foreclose on her property and moves this Court to cancel the sale of her property, set off, settle and discharge all liabilities, and release and reconvey title:**

1. I, Theya Kanagaratnam, living woman, Affiant, being over 18 years of age, of sound mind, appear in propria persona by **Special appearance** and not generally and state that the following is true and correct to the best of my knowledge and belief under penalty of perjury to place testimonial evidence on the commercial record.

2. Affiant appears from the soil/Land, on the county at Large, Oahu, in accord with the premises set forth in Norton v. Shelby County, 118 U.S. 425 (1886), and is not a fiction at law.

3. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that what follows is NOT "nonsensical", "unintelligible", or "word-salad."

4. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that what follows is blackletter law.

   https://www.law.cornell.edu/wex/blackletter_law

5. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that DEFENDANT US Bank is best described as a "predatory lender."

   https://www.law.cornell.edu/wex/predatory_lending

6. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that every single notice sent to DEFENDANT US Bank has the **conspicuous** (UCC § 1-201(10), UCC § 1-103) notice:

   **NOTICE TO AGENT IS NOTICE TO PRINCIPAL**

   **NOTICE TO PRINCIPAL IS NOTICE TO AGENT**

   **APPLICABLE TO ALL SUCCESSORS AND ASSIGNS**

   **ACTUAL AND CONSTRUCTIVE LEGAL NOTICE**

   **UCC §§ 1-201(b)(1)(2)(3)(24)(25)(26)(27)**

   **PRESENTED IN GOOD FAITH**

   **UCC § 1-201(20), § 1-202, § 1-203**

   **FRCP Rule 36 "Request for Admission"**

   **18 USC § 1001 "False Statements"**

   **Silence is Acquiescence**

   And was signed as:

Theya Kanagaratnam, living woman
Beneficiary,
Lender,
Creditor,
Secured Party,
Real Party In Interest,
Without Prejudice,
Without Recourse,
d/b/a THEYA KANAGARATNAM

Therefore, there was overwhelming, obvious notice and knowledge that Theya Kanagaratnam is the Beneficiary, Principal Owner, Secured Party Creditor, and Holder in Due Course for the entire Cestui Que Vie Estate THEYA KANAGARATNAM and that **the minor account, 31 CFR § 363.6 is available for unlimited setoff and discharge.**

7. It does not appear that the bank, banker, Clerk of the Court, Judge, and Bar members in this case do not admit, acknowledge, and stipulate that the Judge (as case trustee) is NOT bonded, but has an Oath of Office to support and defend the United States Constitution (i.e. CSIG Treaty). That the Clerk of the Court has no Oath of Office and is not bonded. That the court claims that it is not required to carry any bonding, underwriting, of bond surety fund for securities, in violation of 15 USC _ and the Securities and Exchange Act. Please provide the court case CUSIP: _____, which is my property as the Bailor. Otherwise, I will be forced to pay $1500.00 to a broker in order to obtain the CUSIP. See CO SOS UCC-1: **202420228620**

where I obtained CUSIP for another Court Case, for my **Birth
Certificate BankNote Bond** etc. Likewise, I also, hereby, ask
the **DEFENDANT** to provide the CUSIP for the NOTE. Otherwise, I
will obtain it from a broker and demand that I be reimbursed by
the **DEFENDANT** and court at $1500 per CUSIP. It appears that the
**SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY** and its BAR
members, as fiscal agents of the U.S. Treasury Department and
alleged "common-law trustees" (12 USC § 266 and 50 USC § 4312)
are liable for the tort claim for private trespass by stepping
through my UCC-1 lien and may be uttering counterfeit
obligations or securities in violation of 18 USC § 472 in an
attempt to gain presumption of jurisdiction and strip money from
the U.S. Treasury Department to sell on the International Bond
Market, which may be embezzlement and tax evasion. The **MoneyNet
Daily Transfer Log 120** from the CRIS Custodian shall show the
source of the court bond and where it was transferred to. This
entire transaction should be reported to the F.B.I., U.S.
Department of Justice, and the SEC. All orders from this court
and judge are therefore void and unenforceable on their face
due to fraud by the court itself.

8. It does not appear that the bank, banker, Clerk of the Court,
   Judge, and Bar members in this case do not admit, acknowledge,
   and stipulate that DEFENDANT has failed and refused to state

6

the **remedy** for **discharge** in accord with Public Policy; 31 USC §
5118(d)(1,2) and the CSIG Treaty.

9. It does not appear that the bank, banker, and Bar members in
this case do not admit, acknowledge, and stipulate that the
Requirements for Securitization (using MERS) is so complicated
and convoluted, that no person appearing in this court can
possibly explain it and therefore is not possible to be in full
compliance.

10. It does not appear that the bank, banker, and Bar members in
this case do not admit, acknowledge, and stipulate that in
accordance with the "Affidavit of Walker Todd (Federal Reserve
Banks of New York and Cleveland)", Case No. 03-047448-CZ CIRCUIT
COURT FOR THE COUNTY OF OAKLAND, STATE OF MICHIGAN, that the
following is true in accord with the Federal Reserve Act 1913
and can be proven by the production of all the accounting books
and forensic investigation by a Special Master and the **MoneyNet
Daily Transfer Log 120**:

    a. Banks are required to follow GAAP and FASB, using accrual
accounting methods. The entire process is a book entry
system. DEFENDANT has failed to produce the accounting as
evidence.

    b. The credit is extended from the borrower's minor account
at 31 CFR § 363.6.

c. Money (legal tender: UCC § 1-201(24)), is based on "money of account" (credit). The debt can be settled with money of account (credit); UCC § 3-104 or bonds 48 CFR Ch. 1 § 53.228, 18 USC § 8, CSIG Treaty.

d. The bank is not allowed to refuse tender; UCC §§ 3-307, 3-601, 3-602, 3-603 or **discharge** and UCC § 3-305 "defenses and claims in recoupment" applies.

e. The Note never explained what type or the source of the **CREDIT** can be used to repay the obligation. "$" is ambiguous as we currently use book entry fiat currency also known as "legal tender", also based on the CSIG Treaty. See UCC § 1-201(24).

f. The bank did not lend its own funds, credit, or money to Plaintiff thereby causing Plaintiff to owe the DEFENDANT $304,200.00. Plaintiff extended her unlimited credit from her minor account at 31 CFR § 363.6. "It is not an unreasonable argument to state that DEFENDANT apparently changed the economic substance of the transaction from that contemplated in the credit application form, agreement, note, or other similar instrument(s), that the Plaintiff executed thereby changing the costs and risks to the DEFENDANT… which creates at least the inference of inequality of obligations on the two sides of the transaction." Said inequality and deceptive nature of the

contract renders it void and voidable by the notice of rescission of Plaintiff's signature(s), cancellation of the contract, and correction by tender of credit to the bank to settle the account without dishonor in the form of a negotiable instrument or bond based on credit from the original TDA account (31 CFR § 363.6), which is accessible for setoff and discharge of all liabilities.

g. Credit or promissory notes (money of account) becomes money when banks deposit promissory notes with the intent of treating them like deposits of cash; 12 USC § 1813(l)(1). The promissory note, may be treated as a deposit of money.

h. DEFENDANT in fact, never lent any of its own pre-existing money, credit, or assets as consideration to purchase the Note or credit agreement from the Plaintiff. There is an utter failure of consideration for the loan contract. The consideration was simply that the bank and banker are licensed and bonded to access the minor account to extend the credit of the Plaintiff.

i. DEFENDANT is trying to use the credit application form or the note to persuade and deceive the Plaintiff into believing that the opposite occurred and that the Plaintiff was the borrower and not the lender. That there is no remedy to discharge by Public Policy using another form of approved legal tender or in accord with the CSIG Treaty.

9

j. The bank has not suffered, nor will suffer any financial loss or actual damages. The "loan" was paid in full at closing. DEFENDANT may very well have made more money on the tranches that was ever indicated in the loan principal and interest repayment terms. **Exhibit A**

**A bond has been delivered to the DEFENDANT (39 CFR § 760.1 "Treasury Department regulations; applicability to Postal Service") to settle the liabilities. A payment tendered is a payment paid. Debit is discharged. Plaintiff may be owed a refund, DEFENDANT has no standing to foreclose on Plaintiff's Property.**

**EXHIBIT B**

11. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Plaintiff is entitled to all the rights and guarantees by the Constitution of the State of California and the Constitution of the United States Article IV, § 4 Full Faith and Credit;

a. Section 1: "Full Faith and Credit **SHALL** be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings **SHALL** be proved, and the Effect thereof."

b. Section 2: "The Citizens of each State **SHALL** be entitled to all Privileges and Immunities of Citizens in the several States."

12. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that based on the Federal Rules of Evidence by and through alleged Bar members are attempting to utilize a "Simulated Legal Process" in an Article 1, administrative court for contracts and legal fictions, by proffering records and documents alleging an obligation and debt owing to the bank based on evidence that is nothing more than "hearsay" in an attempt to seize property owned by the Secured Party Creditor and Holder In Due Course Estate. Claiming that Theya Kanagaratnam, living woman is one in the same as the alleged DEBTOR THEYA KANAGARATNAM, in violation of 26 USC § 7701(a)(26), 28 USC § 1331, FRCP Rule 12(b)(1)(2), UCC § 3-302(a)(2), UCC § 3-305, and 18 USC § 2073.

13. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank claims to have made a financial transaction with Plaintiff but in actuality only acted as a "transfer agent" for and on behalf of an indispensable undisclosed party, who by operation of law did in fact "extend" credit for the benefit to and on behalf of Plaintiff.

14. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank will not suffer irreparable damage as the loan was paid in full at closing by the extension of credit by the Plaintiff.

15. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the claim made by the DEFENDANT is disingenuous, misleading, deceptive, false, libelous, slanderous, and no factual basis of the claim when the real question is did the bank by and through its agents engage in a predatory loan practice to falsely induce the Plaintiff to think that the application of "credit" was coupled with deceptive wording would entitle the bank to assume that the Plaintiff was applying for a "so-called loan" when in fact it was an "extension of credit" from the Plaintiff's minor account (31 CFR § 363.6), which the internal bank records reflect and supported by the **MoneyNet Daily Transfer Log 120.**

16. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the MoneyNet Daily Transfer Log 120 is a reporting method used by the Federal Reserve banks depicting the essential fact elements of the funding process that is essential to understanding the true "source" of the funding by and through the Federal Reserve Banks and depict and evidence that the "source bank" was the applicant's Social Security Number, coupled with the FRAN

(Federal Reserve Account Number) red number on the back of the card, by and through the Cestui Que Trust that is the "New Money" based upon 40 Stat. 411 § 7e as established by the United States Congress in 1933.

17. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank did not issue any loan, but in fact utilized the Plaintiff's "credit worthiness" to act as a transfer agent falsely claiming and alleging to have "loaned" the DEFENDANT's money when in fact the details are the complete opposite and are now attempting to unjustly enrich themselves by and through false and deceptive claims before this honorable court.

18. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Real Party in Interest (Plaintiff) was unaware that the bank would and was engaging in false and deceptive trade practices by failing to disclose material facts as fiduciaries for and to the benefit Plaintiff by issuing them an over the counter security falsely claiming it to be a loan, when in fact it was an extension of credit by and through the application for the benefit of the Plaintiff. The fact is that Plaintiff has unlimited credit and therefore **unlimited ability to setoff and discharge any alleged liability by and through the minor account.**

19. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank claiming with an implied right to make a claim when the bank did knowingly, willfully, and intentionally entice and induce the Plaintiff to falsely believe that the bank was in the business of making loans when behind the scenes the bank was utilizing through a pattern of practice by application accessing credit using the Social Security Number and credit score to falsely claim to be in the business of a bank when in fact they only act as a transfer agent.

20. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank is barred from loaning depositor's money, shareholder's money, or assets all the while showing an active loan on the books in a double-entry bookkeeping process (accrual accounting), misapplying proceeds from an extension of credit to be shown as a debt owing with an explicit obligation to the bank, falsely claiming before this honorable court that they have or will suffer irreparable damages. The fact is that the bank refuses to provide all accounting records, which is an issue at bar. They are claiming to do cash accounting, by only claiming the existence of accounts receivable records, which violates GAAP and FASB rules.

21. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that falsely claiming by and through fraudulent recording on the public records and in this court is **NOT** evidence, but mere heresay, that this Court should grant relief to Plaintiff. Thus, placing the burden of proof on the on the DEFENDANT to prove its claim before this court that they in fact made a loan, thus entitling them to relief.

22. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank is claiming to have a security interest in the property as listed in the fraudulent recording on the public record when it is further evidenced of a scheme and artifice to defraud the Plaintiff by intentionally, knowingly, and willfully filing fake and false documents to further unjustly enrich themselves at the detriment and demise of the Plaintiff when the bank is falsely claiming to be a "lender" with a "security interest" filed in the public record, further evidence of the deceptive trade practices and fraud the bank regularly engages in.

23. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank filed a new deceptive and fraudulent conveyance on the public record **AFTER** discharge and **AFTER** Plaintiff gave notice of being the Holder In Due Course.

24. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the responsibility of the court is to make sure that parties claiming to have a legal, lawful claim as "creditors" be subject to challenge by the Plaintiff, to demand verification **AND** validation in order for the DEFENDANT in this court to properly allow all claims that are properly evidenced, supported, agreed upon by the parties, and subject to setoff and discharge by Public Policy.

25. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank is attempting to defraud the court by placing into the docket unconfirmed, unsubstantiated, un-authenticated documents, not sworn under oath, in direct contradiction to the Federal Rules of Evidence Rule 901.

26. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank should be subpoenaed to disclose a full forensic audit of the alleged loans to be conducted by a court appointed Special Master in efforts to determine all of the true facts surrounding the over-the-counter security, loan, and extension of credit, subjecting the bank to actually perfect their alleged claim in order for them to demonstrate that they have in fact a "lawful claim."

27. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank failed to join the "indispensable parties" being the IRS, the U.S. Treasury Department, The Federal Reserve, the GSA, the Secretary of the Treasury of Puerto Rico, et. al. pursuant to IRS Code 6903 and FRCP Rule 12(b)(7).

28. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has failed to show evidence of the bond required pursuant to 26 USC § 2032A(e)(11) to be able to maintain any and all claims.

29. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank falsely claims that the mortgage is in arrears when further inquiry will reveal the entire so-called loan was settled by the transfer of funds from the Federal Reserve Bank MoneyNet Daily Transfer Log 120 evidencing the source and destination of the funds. As well as a GSA Bond lodged in this court (UCC § 3-307, 28 USC § 2041, and 48 CFR Ch. 1 § 53.228). Therefore, **the alleged debt has been discharged.** The bank does not have standing to foreclose Plaintiff's property.

30. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank presentments are forgeries and presented to be factual correct and complete by and through Bar counsel.

31. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has not produced IRS Forms 2678 and 8655 by and through Bar counsel as required.

32. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has not produced Proof to the Secretary of the Treasury under 26 USC § 6903 for the taxable transaction by and through Bar counsel.

33. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has not produced and presented IRS Forms 1098 and 1065 to reflect the transactions alleged by the bank by and through Bar counsel.

34. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has not produced IRS Form 1099 OID as required by IRS Publication 1212, 938, 550.

35. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank by and through a bonded and licensed Notary committed fraud by inducing parties to execute known fraudulent, deceptive, and misrepresented documents to be used to reflect an obligation owed to the bank as an ongoing scheme and artifice by and through Bar counsel.

36. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank by and through Bar counsel has proffered, forged and deceptive documents and caused them to be recorded in the public record causing injury, harm, including financial harm by falsely claiming a security interest held as property of the Estate.

37. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has failed to produce the Notary Log for the Notary memorializing and documenting the execution of documents before a Notary Public.

38. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has recklessly endangered the livelihood of the Real Parties in Interest by and through Bar counsel by creating false, deceptive, and misleading documents by and through Bar counsel.

39. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has engaged in tax evasion by and through Bar counsel.

40. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has caused to be filed false and fictitious documents into the public records by and through Bar counsel.

41. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has failed to report the true identity of the alleged creditors by and through Bar counsel.

42. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has failed to name all indispensable parties by and through Bar counsel.

43. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank needs to be reported, under 18 USC § 4 "Misprision of Felony" to the Department of Justice Financial Crimes Division and the Tax Inspector General for tax evasion, and the IRS and DOJ for uttering false securities disguised as loans (18 USC §§ 472, 475).

44. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that pursuant to 15 USC § 1692g the "ALLEGED DEBTOR" (a fiction at law), has the rights to validation of the debts in question to determine the true nature of who the actual responsible debtor agency is. Any alleged creditor has to provide the debt verification under pains and penalties of perjury or be subject to 18 USC § 1001 "False statements."

45. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that pursuant to 15 USC § 1692g(c) "Admission of Liability" The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer. That the bank and banker have failed and refused to respond to the forensic audit and is now estopped from making any claims to the contrary. That the bank agreed to setoff and discharge by adjusting the accounting as well as receiving tender of a negotiable instrument. **Debt is discharged.**

46. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Plaintiff has not waived any remedies or rights under Federal Rules of Evidence.

47. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Plaintiff has not waived any remedies or rights under Federal Rules of Procedure.

48. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that pursuant to Federal Rules of Evidence Rule 401, the Plaintiff has not seen any proof or evidence that the bank by and through Bar counsel have produced any evidence that comparts with Rule 401 stating: "Evidence is relevant if:

a. It has any tendency to make a fact more or less probable than it would be without the evidence; and

b. The fact is of consequence in determining the action.

49. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that pursuant to Federal Rules of Evidence Rule 103 Ruling of Evidence state in part:

a. Preserving a Claim of Error. A party may claim an error in a ruling to admit or exclude evidence only if the error affect a substantial right of the party and:

i. If the ruling admits evidence, a party, on the record:

1. Timely objects or moves to strike; and

2. States a specific ground, unless it was apparent from the context; or

ii. If the ruling excludes evidence, a party informs the court of its substance by and offer of proof, unless the substance was apparent from the context.

50. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Plaintiff's substantive right to move the court with this filing is paramount to identifying all of the documents and circumstances surrounding the alleged transaction proffered by the bank by and through Bar counsel as well as the bank refusing tender, which is **evidence of discharge; UCC § 3-603.**

22

51. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Plaintiff has substantive right to move this court in Plaintiff's favor for Summary Judgement.

52. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that based upon information and belief, pursuant to Rule 402 General Admissibility of Relevant Evidence, which is admissible unless any of the following provides otherwise:

    a. The United States Constitution;

    b. A Federal statute;

    c. These rules; or

    d. Other rules prescribed by the Supreme Court.

    **Irrelevant evidence is not admissible.**

53. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Plaintiff has a substantive right to move this court with a Motion to Strike the bank's actions and filings due to false, misleading, fraudulent, and deceptive documents by and through Bar counsel for Irrelevant Evidence that is not admissible. That the bank through Bar counsel has knowingly, intentionally, and willfully failed to supply this court with the private administrative process documents served upon them and is concealing this evidence from this court. That the bank was in

1  **Default** and **Dishonor** and **Estoppel** when Bar counsel filed this

2  libelous, bogus, and frivolous demurrer and **discharge** had

3  already occurred.

4  54. It does not appear that the bank, banker, and Bar members in

5  this case do not admit, acknowledge, and stipulate that the bank

6  by and through Bar counsel has utilized vague and ambiguous

7  language, and false claims in an attempt to sway this court,

8  after being served with notice of the GSA bond lodged in the

9  court waiting for setoff and discharge. Bank by and through Bar

10  counsel are obligated to motion and order the Judge to perform

11  the accounting and adjudicate the claims. Instead, the bank by

12  and through Bar counsel are still pursuing foreclosure in

13  violation of 18 USC § 2073 and UCC §§ 3-305, 3-306. Bar counsel

14  is in violation of FRCP Rule 11 for increasing litigation costs

15  by failing and refusing to order setoff and discharge and

16  therefore is not subject to receiving any type of award of fees

17  and costs.

18  55. It does not appear that the bank, banker, and Bar members in

19  this case do not admit, acknowledge, and stipulate that the

20  Plaintiff's opposition to **CLAIMS, DEMURRERS AND OTHER FILINGS**

21  **BY DEFENDANT** <u>**other than to setoff, settle, and discharge all**</u>

22  <u>**liabilities and release the lien**</u> or be held civilly liable in

23  violation of UCC § 3-307, 28 USC § 2041, 48 CFR Ch. 1 § 53.228,

24  26 USC § 6325, 18 USC § 2073 and the CSIG Treaty.

**EXHIBIT D.**

56. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank presentment, notes, contracts, pleadings, papers, records, public records and filings, and "Facts not Agreed to" are inadmissible and heresay by and through their Bar counsel.

57. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank presentments, notes, contracts, pleadings, papers, records, filing, public records filings are 'Facts that required legal determination" and are inadmissible, heresay by and through Bar counsel.

58. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank presentments, notes, contracts, pleadings, papers, records, filings, public records filing were **NOT** done in good faith, but performed with unclean hands in bad faith and all attempts to Pray to this honorable court are false, malicious, libelous, deceptive, fraud upon the court, a scheme to artifice to defraud the court, money laundering, tax evasion, treason, and sedition.

59. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank by and through Bar counsel have claimed to be providing a true and correct copy of the alleged note that is a forgery, but

submitted redacted documents in this instant case further evidence of the nature of dealing in bad faith with unclean hands attempting to persuade this court of their authenticity. That Plaintiff has already accepted the only alleged known copy of the note for value and gave notice of being the Holder in Due Course.

60. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that they have failed and refused to provide the loan level data and Corporate/Trust Documents to validate the securitization, assignment, creation of trusts under deed of trust, pooling and service agreements, issuance of asset-backed securities and specifically mortgage-backed securities, the entire GAAP accounting, the payment stream (The Debt), and the tranches for the pooled and comingled payments.

61. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that they never recorded all the transfers at the county level. Therefore, there is a lack of showing chain of title in the principal-agent relationship and the alleged current agent has no standing to foreclose.

62. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that it is impossible to determine the exact amounts from any mortgage

26

1    payment paid out to any specific investor, as this was done

2    AFTER the Plaintiff's payments were comingled with other monies.

3    63. It does not appear that the bank, banker, and Bar members in

4    this case do not admit, acknowledge, and stipulate that the loan

5    may show that the payment stream (The Debt) was securitized,

6    however, it was not done properly; and that the REMIC TRUST paid

7    value for the payment stream (The Debt), which was the right to

8    collect future payments for the mortgage loan. The evidence in

9    the Court is that bank was paid by the Plaintiff after the bank

10   refused to disclose the trust, the trustee, and the CUSIP, which

11   they themselves provide to the IRS for Publication 1212.

12   64. It does not appear that the bank, banker, and Bar members in

13   this case do not admit, acknowledge, and stipulate that

14   Residential mortgage-backed securities, or RMBS, are bonds or

15   notes created by securitization that are backed by residential

16   mortgages or residential real estate loans. The RMBS in this

17   issue at bar is unknown.

18   65. It does not appear that the bank, banker, and Bar members in

19   this case do not admit, acknowledge, and stipulate that to

20   create residential mortgage-backed securities, or RMBS,

21   institutions sell pools of their loans to a special-purpose

22   vehicle, or SPV, which then sells the loans to a trust. The

23   trust then repackages the loans as interest-bearing securities

24   and issues them. This true sale of the loans to the SPV ensures

that the RMBS is treated as bankruptcy-remote from the originator.

66. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that these trust entities are REMIC's in which the IRS describes a (Real Estate Mortgage Investment Conduit) REMIC as an entity formed for the purpose of holding a fixed pool of mortgages secured by interests in real property (IRS Publication 550, Investment Income and Expenses, 2015).

67. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that without these transactions going through the proper parties, valid transactions cannot take place and that would leave the trust without having properly secured assets for the certificate holders.

68. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Trust is not named in any manner on any of the instruments, nor is the CUSIP identified.

69. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Note delivered to Plaintiff shows no endorsement to the Note, attempting to make the Note payable to anyone. There is no indication of how many people this Note was transferred to or

if it was transferred properly in the public records. It is highly improbable that the bank is the only payee/transferee. It appears that Bar counsel is withholding this loan-level data from this Court in a scheme to defraud Plaintiff who has repeatedly demanded this data from the bank. The bank intentionally withheld this information to prevent Plaintiff from knowing who to send tender to directly for settlement as they can process any deposit of tender in accord with 12 USC § 266 and 31 CFR § 203. The bank as a transfer agent, refused to transfer tender to the bank and banker for settlement, which is the equivalent of refusal of tender and therefore **discharge.** The bank was obligated to inform the bank and banker they refused tender.

70. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Trust and CUSIP is not named in any way on the Note.

71. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that there is no evidence that the Trust ever received any ownership interest in the Note.

72. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that endorsement is mechanically necessary to constitute transfer interest to party not originally named. Entitlement to enforce

a Note focuses on the relationship between the maker of the Note and the person enforcing it. Ownership of the Note is a concept that deals with who is entitled to the economic fruits of the Note.

73. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Note filed by Bar counsel does not name any Trust or CUSIP in any way to the mortgage.

74. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Bar counsel fraudulently filed records at the country recorder's office, post cancellation of the contract, setoff, and discharge in an attempt to defraud Plaintiff and file false claims in this case at bar. The records filed are not proper Assignment of Mortgage records.

75. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that there is no evidence or indication that the Trust ever acquired ownership rights to the loan, note, mortgage, the debt purportedly "evidenced" thereby, and/or the real property purportedly "secured" thereby.

76. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the

Trust never acquired rights to the Note and Mortgage, those rights can not be transferred to another party.

77. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the evidence lacks proof, or even a showing of proof, of any proper transfer of the debt obligation (purportedly evidenced by the Note) along with proper transfer of collateral rights in the real property (purportedly evidences by the Mortgage). In fact, there is no evidence that suggests the Note was properly transferred simultaneously with any purported transfer of the beneficial rights in the Mortgage.

78. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Note was highly deceptive and misleading in regard to who or what is the actual DEBTOR. It appears the actual DEBTOR is a fiction at law (Estate/Trust), and not the Trustee, Secured Party Creditor, Principal Owner, and Holder In Due Course for the Estate of THEYA KANAGARATNAM, who has limited liability authority to instruct and move this court to setoff and discharge any liability by and through the exemption of the minor account.

79. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Plaintiff performed a forensic audit of the Note and the Mortgage and found series problems that caused Plaintiff to give

legal notice of canceling the contract by revoking and rescinding her signature for good cause; **mistake.** The bank was sent actual and constructive legal notice to fix the errors or by default be subject to the TERMS AND CONDITIONS of the NON NEGOTIABLE CONDITIONAL ACCEPTANCE. The bank failed and refused to fix the errors and by nihil dicit "they said nothing" chose to adjust the account, setoff, settle, and discharge the liabilities by the exemption in accord with Public Policy and the Plaintiff's minor account, and reconvey the property by either the issuance of a new Note or Bond, which are evidenced in this court, or be subject to default in dishonor and estoppel for forced judicial/non-judicial discharge.

80. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the alleged note is securitized, monetized, and pooled in a REMIC Trust.

81. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that by the forensic audit performed under the FDCPA it was identified that the Note was not signed by the bank and was not securitized property by CA statute law. Therefore, the Note is unsecured debt and the alleged Trust/Trustee/Nominee/Bank has no standing to foreclose as they are not listed on the Note and there is an issue at bar for chain of title. That any attempt of correcting

the Note from this point forward is proof of fraud in an attempt

to gain standing after Theya Kanagaratnam gave legal notice of

being the **Holder In Due Course.**

82. It does not appear that the bank, banker, and Bar members in

this case do not admit, acknowledge, and stipulate that Bar

counsel in NOT the custodian of the records as Theya

Kanagaratnam is the Holder In Due Course after the bank

delivered the only known copy of the Note to Theya Kanagaratnam.

That Theya Kanagaratnam accepted the Note and sent notice to

the banks of taking possession of the Note as the Holder In Due

Course. Therefore, the bank has no standing to sue.

83. It does not appear that the bank, banker, and Bar members in

this case do not admit, acknowledge, and stipulate that I have

already **accepted** your **presentment** to adjust the account, setoff,

settle, and discharge the liabilities by the exemption in accord

with Public Policy (31 USC § 5118(d)(1,2)) by and through the

minor discharge account and provided a bond (48 CFR Ch. 1 §

53.228, CSIG Treaty) as legal tender to settle the account. That

the bank, banker, and Bar members have repeatedly refused

tender, which is **dishonor** and **discharge.**

84. It does not appear that the bank, banker, and Bar members in

this case do not admit, acknowledge, and stipulate that

DEFENDANT failed and refused to supply Plaintiff with a 1099

OID in accord with IRS Publication 1212, 938, 550, which may be

accounting fraud, embezzlement, and tax evasion. That Plaintiff is owed a refund.

85. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Plaintiff canceled the contract by revoking and rescissioning her signature from the contract for good cause; **mistake.** That rescinding of the contract reset the contract back to the beginning for re-negotiation by accord and satisfaction, UCC § 3-311. That DEFENDANT is currently estopped and cannot deny the cancellation of the contract and rescission as they never signed the adhesion contract, which made it revocable by giving notice, UCC § 3-202.

86. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that DEFENDANT is harassing Plaintiff for no legitimate business purposes, in violation of FRCP Rule 11, as they are ESTOPPED by nihil dicit "they said nothing." The bank already agreed by the TERMS AND CONDITIONS of the NON NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANCE to adjust the account, setoff, settle, and discharge the liabilities in accord with the exemption by Public Policy and GAAP/FASB accounting standards and release the lien. That the bank refuses to bring ALL the accounting books forward; debits and credits, assets and liabilities, and off-balance sheet books for the REMIC/Tranche for inspection.

87. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that DEFENDANT has full knowledge that Plaintiff gave notice that she cancelled the contract by revoking and rescinding her signature from the contract for cause; **mistake** and **no full disclosure** after a forensic audit uncovered fraud and mistakes in violation of UCC § 1-103(b) and UCC § 3-202. That the contract was/is invalid and void and the new TERMS AND CONDITIONS of the NON NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANCE are now the agreement between the parties and that the bank is in breach, UCC § 3-307 of said TERMS AND CONDITIONS by failing and refusing to adjust the account, setoff, settle, and discharge, and refusal of tender, which they agreed is **discharge.** That they agreed to the TERMS AND CONDITIONS of UCC § 3-305 "defenses and claims of recoupment" and UCC § 3-306 "claims to an instrument" and have no standing to sue or collect after **discharge.**

88. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that **the bank agreed to EQUITY practices only.**

89. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they can process notes and bonds to discharge the alleged commercial paper liability.

90. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they have access to a Treasury Tax and Loan (TT&L) computer portal to process the note and bond previously tendered to discharge the alleged commercial paper liability at issue.

91. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they are in **Default in Dishonor** and **Estoppel** in the commercial realm after refusing to pay or perform in accord with the TERMS AND CONDTIONS of the NON NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANNCE.

92. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they never signed the note and did not record it properly in the public records in accord with state statute law. Therefore, the note was not properly securitized. That Theya Kanagaratnam cancelled the contract, revoked and rescinded her signature for cause: **mistake** and therefore, there is no contract between the parties. That the TERMS AND CONDITIONS of the NON NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANCE are the agreement between the parties. That the alleged Trust/Trustee/Nominee is not registered on the Note and therefore has no standing to sue in this legal relation. There is a lack of chain of title and principal-agent relationship.

93. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that Theya Kanagaratnam revoked and revested legal and equitable title for all her property, collapsed the Note, and removed the Trustee/Nominee for breach by nonfeasance in violation of 31 USC § 3113. Therefore, the Trustee/Nominee has no standing to foreclose or take any action in this legal relation.

94. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they have refused to adjust the account, setoff, settle, and discharge the liabilities by the exemption in accord with Public Policy.

95. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they are a "fiscal agent of the United States [Treasury]," in accord with Title 12 USC § 266.

96. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they are a "fiscal agent," with a banking license, violating the premises of Title 48 C.F.R. Ch.1, § 53.228, UCC 3-307, and the CISG Treaty.

97. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they are a "fiscal agent," with a banking license, violating the premises of the Discharge Rights associated with the Treasury Direct Account held by the United States Treasury and its International Treaty

1  with the United Kingdom aka The United Nations Convention on

2  Contracts for the International Sale of Goods (CISG).

3  98. It does not appear that the Bar members involved in this case

4  as well as the bank and banker do not admit, acknowledge, and

5  stipulate that they are liable for presenting a claim previously

6  discharged via both a negotiable instrument and bonds tendered.

7  99. It does not appear that the bank and banker in this case do

8  not admit, acknowledge, and stipulate that they were previously

9  served bonds for discharging the alleged credit extension at

10  issue before this court via the instrument known as the AON,

11  Affidavit of Notice [of Discharge].

12  100.    It does not appear that the bank and banker in this case

13  do not admit, acknowledge, and stipulate that they were served

14  the negotiable instrument via USPS Registered Mail Restricted

15  Delivery mail in accord with the TEEMS AND CONDITIONS for the

16  NON NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANCE.

17  101.    It does not appear that the bank and banker in this case

18  do not admit, acknowledge, and stipulate that they were served

19  with a complete private administrative process, UCC § 3-501~505,

20  via USPS Certified mail.

21  102.    It does not appear that the bank and banker in this case

22  do not admit, acknowledge, and stipulate that the negotiable

23  instrument was compliant with 12 USC § 412, UCC § 1-201(24),

24  Article 3 of the UCC, and 18 USC § 8. That Theya Kanagaratnam

is a private banker in accord with 31 USC § 5312(a)(2)(C) as the Secured Party Creditor.

103.    It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that the bonds for discharge are found in the AON and were compliant with the CISG Treaty.

104.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the law form that applies herein is found in Admiralty as the subject matter in this case at bar operates in relation to securities and underwriting, see Benedict on Admiralty, Vol. 1, Jurisdiction.

105.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that case law that applies to this case in admiralty is found at page 11, Answer etc., Black Diamond S. S. Corp. v. Robert Stewart & Sons, 336 U.S. 386 (1949).

106.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the law regarding discharge is found in Uniform Commercial Code, Article 3, section 307.

107.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that

1    Plaintiff Theya Kanagaratnam is a Secured Party Creditor, and

2    Principal Owner to the THEYA KANAGARATNAM Estate.

3    108.   It does not appear that the bank, banker, and Bar members

4    in this case do not admit, acknowledge, and stipulate that

5    neither the President, the CFO, nor any other officer of

6    DEFENDANT, bank, has ever made an appearance in relation to the

7    subject matter of this case.

8    109.   It does not appear that the bank, banker, and Bar members

9    in this case do not admit, acknowledge, and stipulate that the

10   bank is a fiction at law and requires a living wo/man to appear

11   and complain, and therein, no complaint/clams/filings appear by

12   DEFENDANT in this case at Bar.

13   110.   It does not appear that the bank, banker, and Bar members

14   in this case do not admit, acknowledge, and stipulate that it

15   appears to Theya Kanagaratnam that all parties associated are

16   "minors," in accord with said definition found at Title 31 CFR

17   § 363.6, whose Estates are held in trust by the "common-law

18   trustee," found at Title 50 USC § 4312.

19   111.   It does not appear that the bank, banker, and Bar members

20   in this case do not admit, acknowledge, and stipulate that Theya

21   Kanagaratnam is the source of the funds at issue pursuant to

22   Title 15 USC § 1602 (the mortgage application and Note was

23   security used by the LICENSED banker/DEFENDANT to access Theya

24   Kanagaratnam's minor account) and the **MoneyNet Daily Transaction**

**Log Report 120**, which is in the possession of the DEFENDANT/banker proving source of funds.

112. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Theya Kanagaratnam is the original source of the funds for the mortgage Note in the first place.

113. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Kanagaratnam extended credit by and through Plaintiff's Treasury Direct Account, see Title 31 CFR § 363.6, "account" defined. It is illegal for a currency ban. The consideration was the fact that DEFENDANT has a license to access my TDA account and to issue said currency on deposit in accord with Title 12 USC § 266. The term "indebted" is a misnomer as DEFENDANT is a "licensed" "fiscal agent…", supra, and are not the source of the funds.

114. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that "A bank is not the holder in due course upon merely crediting the depositors account." Bankers Trust v. Nagler, 229 NYS 2d 142, 143.

115. It does not appear that the bank, banker, and BAR members in this case do not admit, acknowledge, and stipulate that they could not produce the original Note and have supplied Plaintiff

with the only known copy, which was accepted by Plaintiff and returned for value to DEFENDANT with a new bond to settle and close the account. That Plaintiff gave DEFENDANT legal notice of being the Holder In Due Course. That no party has come forward with any valid evidence to the contrary.

116.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Theya Kanagaratnam tendered "payment"/discharge in the **Affidavit of Notice [of Discharge]** (AON) in accord with Title 48 C.F.R. Ch.1, § 53.228, UCC 3-307 and The United Nations Convention on Contracts for the International Sale of Goods (CISG).

117.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Theya Kanagaratnam already resolved the elements demanded by opposing counsel in his filings, which settled the matter.

118.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that it appears that bank, banker, and Bar members in this case at bar failed to state a claim upon which relief can be granted.

119.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that it is illegal for a currency bank to "lend credit."

120.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has a habit, custom, and practice, of dishonoring payment.

121.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Bank was previously served with bonds for discharge. The bank has been paid and is refusing legal tender, UCC § 1-201(24), which is **discharge.**

122.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Theya Kanagaratnam holds all Right, Title, and Interest to the KANAGARATNAM Estate.

123.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that failure of the bank, banker and bar member in this case to process the bonds for discharge is in violation of Consumer Financial Protection Bureau laws found at **Title 12 CFR Part 1006** (Regulation F), **§1006.18 False, deceptive, or misleading representations or means.**

Regulation F implements the Fair Debt Collection Practices Act (FDCPA), prescribing Federal rules governing the activities of debt collectors, as that term is defined in the FDCPA.

(a) In general. A debt collector must not use any false, deceptive, or misleading representation or means in connection

with the collection of any debt, including, but not limited to, the conduct described in paragraphs

(b) through (d) of this section.

**(b) False, deceptive, or misleading representations**

(2) A debt collector must not falsely represent:

(i) **The character, amount, or legal status of any debt.**

124.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that they were repeatedly noticed by Plaintiff and therefore may be criminally liable for willful and knowing violation of the FCRA in accord with 15 USC § 1611 by intentionally misleading this court in violation of the nature of FRCP Rule 11.

125.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the attorney(s) in this case are in violation of the Annotated Model Rules of Professional Conduct, Rule 1.1 (**competence**), 1.3 (**Diligence**), 3.3(a)(1) (**Candor toward the Tribunal**), 3.4 (**Fairness to Opposing Party and Counsel**), 4.1 (**Truthfulness in Statements to Others**), 4.4 (**Respect with Persons other than Clients**), and 8.4 (**Misconduct**).

126. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that this case presents questions about Discharge Rights associated with the Treasury Direct Account held by the United States

1   Treasury and its International Treaty with the United

2   Kingdom (CISG).

3   "The United Nations Convention on Contracts for the
    International Sale of Goods (CISG) has been recognized as the
4   most successful attempt to unify a broad area of **commercial
    law** at the **international level**. It has been ratified by most
5   of the world's important trading countries and become a
    template for the manner in which commercial law treaties are
6   drafted. As of this writing, the CISG has been adopted by
    eighty-three countries. These nations are referred to as
7   "Contracting States." Every major trading nation except India,
    South Africa, and the **United Kingdom** has ratified the **CISG**.
8   Cases interpreting it currently number in the low thousands,
    and more than 135 United States cases have referred to the
9   CISG. With unreported arbitration awards added, this number
    must be considerably higher. The effect of the CISG within a
10  Contracting State may vary with domestic law. For example,
    within **the United States**, which **ratified the CISG in 1986** and
11  where it entered into force in 1988, **the CISG is considered a
    self-executing treaty**. The CISG therefore creates a private
12  right of action in federal court under federal law. The CISG
    provides the default set of rules that govern contracts for
13  the sale of goods between parties located in different
    Contracting States, and, in some cases, where only one of the
14  parties is located in a Contracting State. Where applicable
    the CISG preempts contrary provisions of domestic sales law,
15  such as Article 2 of the Uniform Commercial Code ("UCC") and
    other state contract law in the United States, and conflicting
16  provisions of the German Civi Code ("BGB") or the French Civil
    Code."

17  See The CISG: history, methodology, and construction,
18  Published online by Cambridge University Press: 05 June 2016.

19  127.   It does not appear that the bank, banker, and Bar members

20  in this case do not admit, acknowledge, and stipulate that in

21  the United States, Bonds and Insurance fall under Special Rules

22  of Admiralty and Maritime Jurisdiction. Therein, Title 48 CFR

23  Ch.1, 53.228 is applicable for discharge in addition to the

24  nature of California Civil Code § 8424, Mechanics Lien Release

45

Bond, or the applicable State Code on using bonds to settle commercial liabilities.

128.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that in accord with FRCP XIII. SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS, Rule E. Actions in Rem and Quasi in Rem: General Provisions, Rule 5(E)(a) Special Bond, "The various forms of security for the release of a vessel – a 'club' letter of undertaking, letter of credit payable against a sight draft drawn by the plaintiff, or a bond – are interchangeable in admiralty." Overstreet v. Water Vessel Norkong, 706 F.2d. 641, 1987 AMC 818 (5th Cir. 1983). Once security is posted and the vessel released, the lien is extinguished. Folkstone Maritime Ltd. v. CSX Corp., 866 F.2d. 955, 1989 AMC 867 (7th Cir. 1989).

129.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that it is a principal of law that "**A PAYMENT TENDERED IS A**

**PAYMENT PAID.**"

**UCC § 3-603. TENDER OF PAYMENT.**
(a)   If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract.

**(b) If tender of payment of an obligation to pay an instrument is made** to a person entitled to enforce the instrument and the tender is refused, **there is discharge**, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

(c) If tender of payment of an amount due on an instrument is made to a person entitled to enforce the instrument, the obligation of the obligor to pay interest after the due date on the amount tendered is discharged. If presentment is required with respect to an instrument and the obligor is able and ready to pay on the due date at every place of payment stated in the instrument, the obligor is deemed to have made tender of payment on the due date to the person entitled to enforce the instrument.

130.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that with admiralty jurisdiction comes the application of substantive admiralty law. Insurance Co. v. Dunham, 78 U.S. (11 Wall.) 1, 25, 20 L.Ed. 90 (1870) states: "Admiralty jurisdiction defines also the place or territory where the law maritime prevails."

"And plainly, we think, [no state's] legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the **general maritime law** or interferes with the proper harmony and uniformity of that law in its international and Interstate relations." [244 U.S. at 215-16, 37 S.Ct. at 528-29] Southern Pacific Company v. Jensen, 244 U.S. 205, 37 S.Ct. 524 (1917).

131.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the law of marine insurance has never been codified in the United States. However, the basic substantive law of marine insurance is federal maritime law, [Insurance Co. v. Dunham, 78 U.S. (11

47

Wall.) 1, 20 L.Ed. 90 (1870); DeLovio v. Boit, 7 F.Cas. 418, 1997 AMC 550 (C.C.D.Mass.1815) (No.3776)], and the Supreme Court has stated that United States courts should look to English law for the applicable rules because of the "special reasons for keeping in harmony with the marine insurance laws of England, the great field of this business." [Queen Ins. Co. of America v. Globe & Rutgers Fire Ins. Co., 263 U.S. 487, 493, 44 S.Ct. 175, 176, 68 L.Ed. 402 (1924)] However, in Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), the Supreme Court ruled that in the absence of a controlling federal admiralty law principle to guide the resolution of a particular issue, the courts must apply the applicable state law rule.

132.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Wilburn Boat does not change the initial inquiry of the courts in interpreting a policy of marine insurance to determine whether there is an established federal maritime law rule. [Continental Oil Co. v. Bonanza Corp., 677 F.2d 455, 461, 1983 AMC 387 (5th Cir.1982)]

133.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that in practice the application of the Wilburn Boat doctrine means that marine insurance in the United States will be dominated by state

1    law rules; most federal courts simply recite the rule and apply

2    state law.

3    134.    It does not appear that the bank, banker, and Bar members

4    in this case do not admit, acknowledge, and stipulate that many

5    (probably most) in the admiralty bar would favor the enactment

6    of a federal marine insurance act such as the British Marine

7    Insurance Act of 1906.

8    135.    It does not appear that the bank, banker, and Bar members

9    in this case do not admit, acknowledge, and stipulate that,

10    whatever the case may be, we are dealing with **British Crown**

11    **Commercial paper.**

12    136.    It does not appear that the bank, banker, and Bar members

13    in this case do not admit, acknowledge, and stipulate that the

14    International Bond Market (IBM) controls. That the proper venue,

15    if this court lacks the necessary authority or machinery, is

16    the U.S. Court of Federal Claims or the Court of International

17    Trade.

18    137.    It does not appear that the bank, banker, and Bar members

19    in this case do not admit, acknowledge, and stipulate that the

20    bonds tendered to the court are to be processed in the IBM by

21    the GSA and apply to the court charges in question.

22    138.    It does not appear that the bank, banker, and Bar members

23    in this case do not admit, acknowledge, and stipulate that the

premises of **Black Diamond S. S. Corp. v. Robert Stewart & Sons, 336 U.S. 386 (1949)**, apply;

"Admiralty practice is a unique system of substantive law and procedure with which members of this Court are singularly deficient in experience."

"The proceeding is conducted in **two stages**. In **the first** or **preliminary stage** the owner petitions for relief from personal liability, is required either to surrender his interest in the ship and her freight or to stipulate, with adequate bond, to pay into court its value. The statute says, '**Upon compliance with the requirements of this section all claims and proceedings against the owner with respect to \*\*630 the matter in question shall cease.**' At this point an Important change in the nature of the proceeding occurs.

**The proceeding continues as a proceeding in rem against either the ship or the fund as the res.** Our rules provide that when petitioner complies with the court's order as to surrender or bond, the court shall issue a monition requiring all persons asserting claims to file the \*401 same and may also issue injunction against the further prosecution of suits against either the owner or the vessel. **Rule 51. The court then adjudicates the claims and apportions the available fund among them.** Rule 52. The owner is at liberty to contest his liability or the liability of the vessel 'provided he shall have complied' with the requirements of surrender or deposit as above set forth. Rule 53."

139.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that UCC § 3-305. DEFENSES AND CLAIMS IN RECOUPMENT as well as UCC § 3-306. CLAIMS TO AN INSTRUMENT, would apply to Theya Kanagaratnam.

140.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that

remedies apply pursuant to Title 41 CFR § 105-55.030 - Discharge of indebtedness; reporting requirements.

(a) Before discharging a delinquent debt (also referred to as a close out of the debt), the General Services Administration (GSA) will take all appropriate steps to collect the debt in accordance with 31 U.S.C. 3711(g), including, as applicable, administrative offset, tax refund offset, Federal salary offset, referral to Treasury, Treasury-designated debt collection centers or private collection contractors, credit bureau reporting, wage garnishment, litigation, and foreclosure. Discharge of indebtedness is distinct from termination or suspension of collection activity and is governed by the Internal Revenue Code. When collection action on a debt is suspended or terminated, the debt remains delinquent and further collection action may be pursued at a later date in accordance with the standards set forth in this part. **When GSA discharges a debt in full or in part, further collection action is prohibited. Therefore, GSA will make the determination that collection action is no longer warranted before discharging a debt. Before discharging a debt, GSA will terminate debt collection action.**

(b) Section 3711(i), Title 31, United States Code, requires GSA to sell a delinquent non-tax debt upon termination of collection action if the Secretary determines such a sale is in the best interests of the United States. Since the discharge of a debt precludes any further collection action (including the sale of a delinquent debt), GSA may not discharge a debt until the requirements of 31 U.S.C. 3711(i) have been met.

(c) Upon discharge of a debt of more than $600, GSA must report the discharge to the Internal Revenue Service (IRS) in accordance with the requirements of 26 U.S.C. 6050P and 26 CFR 1.6050P-1. GSA may request Treasury or Treasury- designated debt collection centers to file such a discharge report to the IRS on the Agency's behalf.

(d) When discharging a debt, GSA will request the GSA Office of General Counsel to release any liens of record securing the debt.

141.  It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that

51

Plaintiff submitted a set of bonds to discharge the charges at issue, in trust, before this court, See Affidavit of Notice [of Discharge]. The Clerk of Court can process through its TT&L computer portal.

142.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the charges (penal/ty sum) have been discharged and said commercial presentment has been **settled**.

143.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Theya Kanagaratnam should be released from any and all commercial liability.

144.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that **the Clerk of Court, and Judge, have a "known legal duty to grant the relief Plaintiff seeks," in said case.**

145.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that once the bonds were tendered bank, banker, and bar members, were estopped from any further action:

**NOTICE OF ESTOPPEL BY BOND, Am Jur 2nd, Vol. 28, ESTOPPEL AND WAIVER, §25. In Bond.** The presentment of the bond meets the estoppel and waiver requirements "In Bond" as "A bond is a formal written instrument, and the recitals therein are frequently held to be operative as an estoppel." Am Jur 2nd, Vol. 28, ESTOPPEL AND WAIVER, §25. In Bond, page 623-625. Therein, the case of **Speake v. United States**, 9 Cranch (U.S.) 28

(1815), addresses the issue of discharging "penal sums" proving that this concept of discharge is very old. Therein, both the **Federal Miller Act** (codified at Title 40 U.S.C.) and the applicable **State "Little Miller Act"** apply as related to the discharging subject matter.

146.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that in the U.S. Const., A3, §2, Cl. 1, we have four law forms; common law, equity, admiralty, and maritime.

147.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that in 1938 common law and equity were merged to form "civil law."

148.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that in 1966 admiralty and maritime were merged into "civil law," which then allowed admiralty remedies to be applied to the other law forms/jurisdictions and vice versa.

149.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank, banker, and bar member(s) have no excuse for lack of knowledge as they are aware of the quick class on bonding see Handling Surety Performance Bond and Payment Bond Claims, R. James Reynolds, Jr. found at:

https://www.margolisedelstein.com/files/reynolds_-_surety_performance_bond_claims_1.pdf

150.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that after more than 30 days have passed estoppel applies against further claims.

151.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that because more than 30 days tolled the bank, banker, and bar member(s) were barred from any further claim in accord with the **doctrine of collateral estoppel**.

152.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank, banker, and bar member(s) are aware the law found at Title 27 CFR §72.11, "commercial crimes" defined, Title 26 USC § 6325, Title 28 USC § 2041, and of maintaining fraudulent securities claims in violation of Title 18 USC § 472 "Uttering counterfeit obligations or securities" and 18 USC § 2073 "False entries and reports of moneys or securities". This violation is actionable sounding in tort.

153.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the commercial penalty sum for not acknowledging the discharge and then mail and file frivolous documents/attempt to foreclose result in a charge in accord with Title 18 USC § 2073 "False entries and reports of moneys or securities".

154.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the case of **Department of Agriculture Rural Development Rural Housing Service v. Kirtz** (Docket 22-846), acknowledges lack of sovereign immunity on the part of bank, banker, and Bar member(s):

No. 22-846. Argued November 6, 2023—Decided **February 8, 2024**
The Fair Credit Reporting Act of 1970, as amended by the Consumer Credit Reporting Reform Act of 1996, **allows consumers to sue lenders who willfully or negligently supply false information about them to entities that generate credit reports**. Respondent Reginald Kirtz secured a loan from a division of the United States Department of Agriculture and later sued the agency for money damages under the FCRA. Kirtz alleged that the USDA falsely told TransUnion—**a credit reporting agency**—that his account was past due, **thus damaging his credit score and his ability to secure loans at affordable rates**. The USDA moved to dismiss, invoking sovereign immunity. The District Court sided with the USDA. The Third Circuit reversed, **holding that 15 U.S.C. §§1681n and 1681o authorize suits for damages against "any person" who violates the FCRA, and §1681a expressly defines "person" to include "any" government agency. 46 F. 4th 159, 164-166.**
Held: A consumer may sue a federal agency for defying the FCRA's terms. Pp. 4-20.

155.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that "An attorney for the DEFENDANT cannot admit evidence into the court. He is either an attorney or a witness," and, "Statements of counsel in brief or in argument are not facts before the court." (Trinsey v. Pagliaro D.C.Pa. 1964, 229 F. Supp. 647).

156.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that "The

record for judicial review generally has been limited to the administrative record, so participants who fail to develop evidence during internal review risk forfeiting the use of that evidence in court." Heimshoff v. Hartford Life & Accident Insurance Co., 187 Led 2d, 571 U.S. ___ (2013). The Note and subsequent recordings supplied by Bar counsel are therefore inadmissible as they have been supplied with intent to defraud Plaintiff of a remedy.

157.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that "Indeed, no more than [an affidavit] is necessary to make the prima facie case." Id at 536, U.S. v. Kis, 658 F.2d 526, (7th Cir. 1981). See **EXHIBIT D.**

158.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that that they were repeatedly served with legal notice to perform and refused their fiduciary duty.


## CONCLUSION:

I, Theya Kanagaratnam, in my capacity as the Beneficiary, Secured Party Creditor, Holder In Due Course, and Principal Owner of the ESTATE for THEYA KANAGARATNAM **STAND FIRM IN EQUITY** AND **INSTRUCT/MOVE THE CASE TRUSTEE AS THE MASTER IN CHANCERY AND ALL FISCAL AGENTS TO ADJUST THE ACCOUNT, SETOFF, SETTLE, AND DISCHARGE ALL LIABILITIES AND RELEASE THE LIEN ON MY PROPERTY. SETTLEMENT TENDER IS PAYMENT PAID. DEBT IS DISCHARGED.**

DEFENDANTS and their alleged Creditors have refused and failed to comply with the NON-NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANCE and that the alleged Creditors are knowingly, intentionally, and willfully in Default in Dishonor and Estoppel in the commercial realm. Attorneys for SELENCE FINANCE have intentionally mislead this court with unclean hands in the nature of FRCP Rule 11 and FRCP Rule 12(b)(6).

## Details of Full Administrative Procedure / Forensic Evidence Analysis:

After receiving correspondence from Defendants called NOTE, LOAN MODIFICATION AGREEMENT and DEED OF TRUST (hereinafter "Offer") Plaintiff detected issues with the offer including lack of disclosure, uncertainty of terms, errors with Accounting, NOTE and Contract and brought to the Defendants attention to correct these mistakes and to avoid any possible mail fraud and fictitious use of language pertaining to the Fraud Act 18 USC § 1001.  As part of the Forensic Evidence Analysis / Administrative

1   Procedure, over the course of the last few months,

2   following are, but not limited to, some of the notices

3   Plaintiff Presented to the DEFENDANTS:

 

    a. NON NEGOTIABLE NOTICE OF CONDITONAL ACCEPTANCE – Exhibit E
       US BANK: 7022 2410 0000 3631 4322 Received: February 20, 2024
       SELENE FINANCE: 7022 2410 0000 3631 4339 Received: February 16, 2024
       MTC FINANCIAL: 7022 2410 0000 3631 4346 Received: February 15, 2024

    b. NON NEGOTIABLE NOTICE OF RESCISSION FOR CAUSE – Exhibit F
       US BANK: 7022 2410 0000 3631 4337 Received: March 7, 2024
       SELENE FINANCE: 7022 2410 0000 3631 4421 Received: March 5, 2024
       MTC FINANCIAL: 7022 0410 0001 1888 9027 Received: March 6, 2024

    c. NON NEGOTIABLE NOTICE OF ACCEPTANC – Exhibit F
       US BANK: 7022 2410 0000 3631 4337 Received: March 7, 2024
       SELENE FINANCE: 7022 2410 0000 3631 4421 Received: March 5, 2024
       MTC FINANCIAL: 7022 0410 0001 1888 9027 Received: March 6, 2024
       (See Docket filing on 05/03/2024 Pages 48-62 for evidence)

    d. NON NEGOTIABLE NOTICE OF DEFAULT IN DISHONOR AND ESTOPPEL -Exhibit G
       US BANK:  RE 214 471 637 US Received: May 30, 2024
       SELENE FINANCE: 9589 0710 5270 1617 5160 59 Received: May 24, 2024
       MTC FINANCIAL: 9589 0710 5270 1617 5160 66 Received: May 24, 2024

## COUNT I:

### VIOLATION OF FDCPA , CALIFORNIA ROSENTHAL ACT (SB 187), FCRA AND OTHER VIOLATIONS

1.   Defendants were involved in an administrative process to perform

    a full forensic audit of the accounting records and contract in

    accord with the FDCPA, 15 USC § 1692 et, seq.

2. Defendants are knowingly, intentionally, and willfully in violation of the FDCPA, 15 USC § 1692g and e(2A), and FCRA 15 USC § 1681a,n,o.

3. Defendants shouldn't even be respected with the status of a "Debt Collector" even though they are trying to hide-behind by calling themselves "creditors" and by saying FDCPA doesn't apply to them because they are not "debt collectors." However, this alleged debt was paid by Plaintiff's minor account at closing. A look at Page 3 of the Deed of Trust (DOT)(For Details refer to Page 15 of Evidence Filed by Plaintiff on 05/06/2024) under Borrower's Covenant itself would show that was the case as it states: "Borrower is lawfully seised of the estate hereby conveyed and have the right to grant and convey the Property and that property is unencumbered…" How is it possible for the Borrower to be lawfully seised of the estate at that point if the bank was in deed loaning the money for it? Plaintiff and millions of other Americans have been, due to ignorance and brainwashing they receive from cradle to grave, are deceived and misled into believing that Banks are really giving them a loan.

4. CA Rosenthal Fair Debt Collection Practices Act Senate Bill 187 amended the law to explicitly include mortgage debt as a covered consumer debt. By not answering any of Plaintiff's

1    Notices/Queries Defendants are in gross violation of the

2    Rosenthal Act.

3  5.  Further Defendants have violated the following by NOT responding

4    to any of Plaintiff's Administrative Process Notices/Queries:

5        a. Fair Credit Reporting Act: 15 USC § 1681n "Civil liability for
            wilful non-compliance."
6        b. Fair Credit Reporting Act: 15 USC § 1681o "Negligent non-
            compliance."
7        c. Fair Debt Collection Practices Act: 15 USC 1692e(2)(A) "False or
            misleading representations of the character, amount, or legal
            status of any debt."
8        d. 15 USC § 1 "Trusts in restraint of trade illegal, penalty."
         e. 15 USC § 2 "Monopolizing trade a felony, penalty."
         f. 18 USC § 371 "Conspiracy to commit offense or to defraud United
9           States."
         g. 18 USC § 472 "Uttering counterfeit obligations or other
10          securities."
         h. 18 USC § 1001 "False statements."
11       i. UCC § 3-305 "Defences and claims in recoupment."
         j. UCC § 3-306 "Claims to an instrument."
         k. 18 USC § 2073 "False entries and reports of moneys or
12          securities."

13

14  Defendants are collectively in violation of all of the above as

15  they have failed to respond and provide any information, details

16  and or evidence that were put forth to them as part of the Forensic

17  Evidence Analysis/Administrative Process. They disregarded

18  Plaintiff's Administrative Process in its entirety and failed to

19  respond to any of Notices/Queries.

20  Therefore, Plaintiff demands Defendants Point-for-Point Answer

21  the REQUEST FOR ADMISSION BY NEGATIVE AVERMENT RESPONSIVE TO

22  WRITINGS OF DEFENDENTS filed in Conjunction with this Amended

    Complaint.

23

24

1

2

3

4

5          **COUNT II:**

6    <u>**FRAUD AND WILLFUL VIOLATION OF TERMS AND CONDITIONS OF NON-
     NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANCE**</u>

7

8    6.  Defendants   are   knowingly,   intentionally,   and   willfully

9        violating the Terms and Conditions of the NON-NEGOTIABLE NOTICE

10       OF CONDITIONAL ACCEPTANCE (Exhibit E).

11   7.  Plaintiff  Demands  that  the  alleged  Creditors  and  Nominees

12       (Defendants)  render  the  full  GAAP  Accounting,  CUSIP,  1099 OID,

13       and MoneyNet Daily Transfer Log 120 which will prove that they

14       did  not  loan  their  own  money,  but  it  was  the  Plaintiff  who

15       extended her credit from her minor account at **31 CFR § 363.6** as

16       all debts are prepaid without recourse.

17

18          **COUNT III:**

19          **RECISSION**

     8.  The  original  contract  was  **rescissioned  due  to  lack  of  full**

20       **disclosure (Exhibit F)**.

21

22   9.  DEFENDANTS are engaged in restraint of trade by restricting access to

23       Plaintiff's credit, in violation of 15 USC § 1, and conspiracy to commit

24       offense and defraud the United States in violation of 18 USC § 371.

10. DEFENDANTS did not disclose the REMIC and CUSIP for the NOTE and did not provide Plaintiff with the IRS 1099 OID as required by IRS Publication 1212, 938, 550 to file for the Tax Class 5 Gift and Estate Class Forms.

11. DEFENDANTS may have filed the 1099 A and embezzled the property though Plaintiff never abandoned the property nor received a refund.

## COUNT IV:
## BREACH OF FIDUCIARY DUTY

12. Defendants have failed and refused to administratively setoff and discharge the liabilities in accord with Public Policy.

13. Defendants have failed and refused to process tender of a negotiable instrument in violation of 31 USC § 5118(d)(1,2), UCC § 1-201(24), UCC § 3-307, UCC § 3-601, UCC § 3-602 and UCC § 3-603. **Therefore, there is discharge.**

14. Defendants have failed and refused to process tender of a bond in violation of UCC § 3-307, 48 CFR Ch. 1 § 53.225, 41 CFR § 105-55.030, 26 USC § 6325, 18 USC § 2073, and UCC § 3-306. **Therefore, there is discharge.**

15. Defendants are estopped by operation of law to continue their collection effort in violation of UCC § 3-305 and UCC § 3-306; which in part states:

When GSA discharges a debt in full or in part, further collection action is prohibited. Therefore, GSA will make the determination that collection action is no longer warranted before discharging a debt. **Before discharging a debt, GSA will terminate debt collection action.**

16. It appears that the Defendants are knowingly, intentionally, and willfully operating in restraint of trade by refusing legal tender in violation of 15 USC §§ 1, 2, 18 USC § 371 and 18 USC § 2073.

17. Defendants, as fiscal agents of the U.S. Treasury Department, 12 USC § 266, are operating in violation of Department of Agriculture Rural Development Rural Housing Service v Kirtz, U.S. S. Ct. February 8, 2024 No. 22-846. Held: "A consumer may sue a federal agency for defying the FCRA's terms. Pp. 4-20." See 15 USC § 1681n "civil liability for willful non-compliance" and 15 USC § 1681o "civil liability for negligent non-compliance."

18. Defendants are operating in violation of FRCP Rule 12(b)(6); "failure to state a claim upon which relief can be granted." Defendants do not have standing to collect or to request payment more than one time in this legal relation.

19. Plaintiff was forced to file for Chapter 7 Bankruptcy as this court failed to grant the time necessary to conduct the Private Forensic Evidence Analysis / Full Administrative Process as Defendants were attempting to steal Plaintiff's Property – her only roof-over-her-head and throw her to the

streets on February 16, 2024 and Again on March 19, 2024 and Again on May 21, 2024 and now again on July 23, 2024 while committing fraud and in gross violation many other statues, codes and law as stated throughout this Complaint. Note: Expert Forensic Analysis provided proof that the alleged not being properly securitized.  Therefore, it was properly listed on the Bankruptcy Scheduled as unsecured debt.

## COUNT V:
## SLANDER OF TITLE AND PERSONAL DAMAGE

20.  Defendants disparaged Plaintiff's exclusive valid title by and through the preparing, posting, publishing and recording of documents including but not limited to Notice of Default, Notice of Trustee's Sale.

21.  By posting, publishing, and recording of said documents Defendants' disparagement of Plaintiff's legal title was made to the world at large.

22.  As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiff's title to the Property has been disparaged and slandered and there is a cloud on Plaintiff's title, and Plaintiff has suffered, and continue to suffer, damages in amount to be determined.

23.  As a further proximate result of Defendants' conduct, Plaintiff has incurred expenses in order to clear title to the

subject property and will continue to incur additional charges for such purpose until the cloud on Plaintiff's title to the property has been removed.  The amounts of future expenses and charges are not ascertainable at this time.

24.  As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered humiliation, mental anguish, anxiety, depression, and emotional and physical distress resulting in the loss of sleep and other injuries to her health and well-being and continues to suffer such injuries on an ongoing basis.  The amount of such damages are not ascertainable at this time.

# **RELIEF SOUGHT:**

**WHEREFORE**, Plaintiff requests this Court to order the following:

1. Cancel the foreclosure of Plaintiff's Property.

2. Defendants shall process the tender of the bond, as legal tender, adjust the account, setoff, settle, and discharge the liabilities by Public Policy 31 USC 5118(d)(1,2) Or Admit to refusal of tender, and there is still discharge.

3. Release and Reconvey the Title to Plaintiff.

4. For any other such relief which the court deems just and equitable for violating the FDCPA, FCRA, Public Policy, Slandering of Title and Personal Damages caused to Plaintiff.

I, Theya Kanagaratnam, living woman, Affiant, Beneficiary, Principal Owner, Secured Party Creditor, and Holder In Due Course of the Cestui Que Vie Estate THEYA KANAGARATNAM being of sound mind, over 18 years of age, hereby state under penalty of perjury, to the best of my knowledge and belief that the above is true and correct in accord with 28 USC 1746(1) to provide and place evidentiary testimony before the commercial record.

Respectfully submitted,

DATED this 5th day of June, 2024

By: *Theya: Kanagaratnam*
Theya Kanagaratnam, living woman
Beneficiary,
Lender,
Creditor,
Secured Party,
Real Party In Interest,
Without Prejudice,
Without Recourse,
d/b/a THEYA KANAGARATNAM

66

# EXHIBIT "14"

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Rene C. Davidson Courthouse

| | |
|---|---|
| Theya Kanagarantnam<br>　　　Plaintiff/Petitioner(s)<br>vs.<br>Selene Finance LP et al<br>　　　　　　Defendant/Respondent<br>(s) | No.　　24CV061740<br><br>Date:　08/22/2024<br>Time:　9:00 AM<br>Dept:　24<br>Judge:　Rebekah Evenson<br><br>ORDER re: Hearing on Demurrer to Plaintiff's First Amended Complaint; filed by Selene Finance LP (Defendant) + filed by Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) on 06/25/2024 |

Prior to the hearing, the Court issued a tentative ruling, which was not contested and was affirmed as set forth below.

The Demurrer filed by Selene Finance LP, US Bank Trust National Association on 06/25/2024 is Sustained without Leave to Amend.

The Demurrer to Plaintiff's First Amended Complaint by Defendants Selene Finance LP and US Bank Trust National Association is **SUSTAINED, WITHOUT LEAVE TO AMEND.**

Plaintiff's First Amended Complaint alleges five causes of action, for (1) "Violation of FDCPA, California Rosenthal Act (SB187), FCRA and Other Violations", (2) "Fraud and Willful Violation of Terms and Conditions of Non-Negotiable Notice of Conditional Acceptance", (3) Rescission, (4) Breach of Fiduciary Duty, and (5) "Slander of Title and Personal Damage".

First, as previously discussed in the Court's May 9, 2024 order on Defendants' prior demurrer to Plaintiff's original Complaint, the Court takes judicial notice that Plaintiff filed for Chapter 7 bankruptcy on February 15, 2024. Any claims arising from Defendants' pending nonjudicial foreclosure of Plaintiff's real property belong to Plaintiff's bankruptcy trustee, not Plaintiff, unless Plaintiff's bankruptcy trustee abandoned those claims. (See Bostanian v. Liberty Savings

ORDER re: Hearing on Demurrer to Plaintiff's First Amended Complaint;<br>　　　filed by Selene Finance LP (Defendant) + filed by Selene<br>　　　Finance LP (Defendant); US Bank Trust National<br>　　　Association (Defendant) on 06/25/2024

Page 1 of 3

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Rene C. Davidson Courthouse

Bank (1997) 52 Cal.App.4th 1075, 1081.) On May 9, 2024, the Court granted Plaintiff leave to amend the complaint to allege that her bankruptcy trustee abandoned the claims asserted in this case, or to substitute her bankruptcy trustee in place of herself to assert her claims. Plaintiff filed an amended complaint, but the amendment does not allege that the bankruptcy trustee abandoned the claims asserted in this case, nor does plaintiff substitute the bankruptcy trustee in place of plaintiff to assert her claims. Furthermore, in opposition to the demurrer, Plaintiff "stands by her First Amended Complaint" (see opposition brief at page 3) and does not identify any further amendment she would make to address the standing defect. Therefore, Plaintiff has not demonstrated standing to assert the claims alleged in this case, and she has demonstrated lack of intention to take the actions necessary to demonstrate standing.

Second, Plaintiff's causes of action each fail for additional reasons.

Plaintiff's First Cause of Action fails to allege a violation of the FDCPA because the definition of a debt collector under the FDCPA does not include mortgage servicing companies. (See Lai v. American Home Servicing Inc. (E.D. Cal. 2010) 680 F.Supp.2d 1218, 1224.) Plaintiff fails to identify any provision of the Rosenthal Act that Defendants violated, or what conduct by Defendants may have violated some provision of the Rosenthal Act.

Plaintiff's Second Cause of Action fails to state a cause of action for fraud. Plaintiff does not identify any misrepresentation made by Defendants, or any facts showing that Plaintiff relied on a misrepresentation by Defendants to her detriment. First Amended Complaint Exhibit E, referenced in the Second Cause of Action, is a communication from Plaintiff to US Bank, not a representation by Defendants to Plaintiff. Plaintiff does not allege that Defendants ever affirmed or agreed to any information or statements contained in Exhibit E.

Plaintiff's Third Cause of Action seeks rescission of "the original contract", without adequately identifying the contract to which she refers. Plaintiff also fails to allege that she is offering to restore to Defendants everything of value she received from the contract (e.g., the proceeds of the secured loan), as required by Civil Code section 1691(b).

Plaintiff's Fourth Cause of Action for Breach of Fiduciary Duty fails, because a financial institution owes no common law duty of care, and no fiduciary duty, to a borrower when the institution's involvement in the transaction does not exceed the scope of its role as a lender or loan servicer. (See, e.g., Nymark v. Heart Federal Savings & Loan Assoc. (1991) 231 Cal.App.3d 1089, 1096.) Plaintiff alleges no facts taking her case outside this general rule.

Plaintiff's Fifth Cause of Action fails to identify how she has suffered direct pecuniary loss as a result of the Notice of Default and Notice of Trustee's Sale. Moreover, the publication of those notices is privileged. (See Civil Code section 2924(d).)

Plaintiff's opposition does not address any of the issues raised in Defendants' moving papers or suggest any way that she can further amend her pleading to allege facts in support of any legally cognizable cause of action. The Court therefore declines to give Plaintiff another opportunity to amend her pleading.

ORDER re: Hearing on Demurrer to Plaintiff's First Amended Complaint; filed by Selene Finance LP (Defendant) + filed by Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) on 06/25/2024

Page 2 of 3

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

Defendants' Request for Judicial Notice is **GRANTED.**

Defendants Selene Finance LP and US Bank Trust National Association are **DISMISSED** from this case, with prejudice.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

Dated :  08/22/2024

*Rebekah Evenson*

**Rebekah Evenson / Judge**

---

ORDER re: Hearing on Demurrer to Plaintiff's First Amended Complaint;
filed by Selene Finance LP (Defendant) + filed by Selene
Finance LP (Defendant); US Bank Trust National
Association (Defendant) on 06/25/2024

Page 3 of 3

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>08/28/2024<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _A. Amponsah_ Deputy<br>A. Amponsah |
| PLAINTIFF/PETITIONER:<br>Theya Kanagarantnam | |
| DEFENDANT/RESPONDENT:<br>Selene Finance LP et al | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>24CV061740 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Order re: Hearing on Demurrer to Plaintiff's First Amended Complaint; filed by Selene Finance LP (Defendant) + filed by Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) on 06/25/2024 entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Kelly Andrew Beall
WOLFE & WYMAN LLP
kabeall@ww.law

Chad Finke, Executive Officer / Clerk of the Court

Dated: 08/28/2024                    By:

A. Amponsah

A. Amponsah, Deputy Clerk

**CERTIFICATE OF ELECTRONIC SERVICE
CODE OF CIVIL PROCEDURE 1010.6**

| **SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>08/28/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _A. Amponsah_ Deputy<br>A. Amponsah |
| PLAINTIFF/PETITIONER:<br>Theya Kanagarantnam | |
| DEFENDANT/RESPONDENT:<br>Selene Finance LP et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24CV061740 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Theya Kanagarantnam
2316 Lakeshore Ave.
#16
Oakland, CA 94606

Chad Finke, Executive Officer / Clerk of the Court

Dated: 08/28/2024                           By:

_A. Amponsah_

A. Amponsah, Deputy Clerk

**CERTIFICATE OF MAILING**

# EXHIBIT "15"

Electronically Received 08/27/2024 10:14 AM

Kelly Andrew Beall (SBN 162456)
kabeall@ww.law
**WOLFE & WYMAN LLP**
**2212 Dupont Drive**
**Irvine, California 92612-1525**
**Telephone: (949) 475-9200**
**Facsimile: (949) 475-9203**

**Attorneys for Defendants,**
**SELENE FINANCE LP and U.S. BANK TRUST NATIONAL**
**ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT**
**SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST**

**FILED**
Superior Court of California
County of Alameda

08/29/2024

Chad Finke, Executive Officer / Clerk of the Court

By: A. Amponsah      Deputy
A. Amponsah

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ALAMEDA**

| | |
|---|---|
| THEYA KANAGARATNAM,<br><br>        Plaintiff,<br><br>    v.<br><br>SELENE FINANCE LP, US BANK TRUST NATIONAL ASSOCIATION, MTC FINANCIAL, INC DBA TRUSTEE CORPS AND DOES 1-20,<br><br>        Defendants. | Case No.: 24CV061740<br><br>Rebekah Evenson<br>Assigned to the Hon. ~~Karin Schwartz~~, Dept 24<br><br>**[PROPOSED] JUDGMENT OF DISMISSAL WITH PREJUDICE**<br><br>Action Filed:  January 29, 2024 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that Defendants, SELENE FINANCE LP and U.S. BANK

TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS

OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST'S Demurrer to Plaintiff, THEYA

KANAGARATNAM'S First Amended Complaint came on regularly for hearing in Dept. 24 on

August 22, 2024, before the Hon. Judge ~~Karin Schwartz~~ Rebekah Evenson, Judge Presiding.

    The Court having sustained Defendants, SELENE FINANCE LP and U.S. BANK TRUST

NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS

OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST'S Demurrer without leave to amend now

rules as follows:

1

4994298.1

1    **IT IS HEREBY ORDERED AS FOLLOWS:**

2         Judgment of dismissal with prejudice on the First Amended Complaint shall be entered in

3    favor of Defendants, SELENE FINANCE LP and U.S. BANK TRUST NATIONAL

4    ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE

5    FOR RCF 2 ACQUISITION TRUST and against Plaintiff, THEYA KANAGARATNAM.

6    **IT IS HEREBY FURTHER ORDERED AS FOLLOWS:**

7         Defendants, SELENE FINANCE LP and U.S. BANK TRUST NATIONAL

8    ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE

9    FOR RCF 2 ACQUISITION TRUST are hereby awarded costs against Plaintiff, THEYA

10   KANAGARATNAM.

11

12   **IT IS SO ORDERED.**

13

14   DATED:    08/29/2024                    By: _Rebekah Evenson_____

15                                                ~~Hon. Karin Schwartz,~~
                                                  JUDGE OF THE SUPERIOR COURT
16                                                **Rebekah Evenson / Judge**

17

18

19

20

21

22

23

24

25

26

27

28

2

4994298.1

**PROOF OF SERVICE**

STATE OF CALIFORNIA        )
                                  )   ss.
COUNTY OF ORANGE         )

I, Kathy A. Hagmaier, declare:

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business and email addresses are as follows: 2212 Dupont Drive, Irvine, California 92612-1525; kahagmaier@ww.law

On August 27, 2024, I served the document(s) described **[PROPOSED] JUDGMENT OF DISMISSAL WITH PREJUDICE** on all interested parties as follows:

☒    **BY MAIL** as stated on the ATTACHED SERVICE LIST as follows:

       ☒    **STATE** - I am "readily familiar" with Wolfe & Wyman LLP's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

       ☐    **FEDERAL** – I deposited such envelope in the U.S. Mail at Irvine, California, with postage thereon fully prepaid.

☒    **BY ELECTRONIC MAIL SERVICE** as follows: I caused the following party(s) to be served the above listed document(s) by electronic mail service at the following email addresses to the party(ies) noted on the attached Service List:

☐    **BY PERSONAL SERVICE** as follows: I caused a copy of such document(s) to be delivered by hand to the offices of the addressee between the hours of 9:00 A.M. and 5:00 P.M.

☐    **BY OVERNIGHT COURIER SERVICE** as follows:  I caused such envelope to be delivered by overnight courier service to the offices of the addressee.  The envelope was deposited in or with a facility regularly maintained by the overnight courier service with delivery fees paid or provided for.

☒    **STATE**       I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐    **FEDERAL**    I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.

Executed on August 27, 2024, at Irvine, California.

                                         _____
                                         Kathy A. Hagmaier

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

4810142.1

**SERVICE LIST**
**Alameda County Superior Court 24CV061740**
**KANAGARANTNAM V. SELENE FINANCE LP, et al.**
**W&W File No. 1467-024**
**[Revised: March 18, 2024]**

Theya Kanagaratnam                                    Plaintiff in Pro Per
2316 Lakeshore Avenue, #16
Oakland, CA 94606

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

4810142.1

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>09/19/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _A. Amponsah_ Deputy<br>A. Amponsah |
| PLAINTIFF/PETITIONER:<br>Theya Kanagarantnam | |
| DEFENDANT/RESPONDENT:<br>Selene Finance LP et al | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>24CV061740 |

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Judgment entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.

Kelly Andrew Beall
WOLFE & WYMAN LLP
kabeall@ww.law

Chad Finke, Executive Officer / Clerk of the Court

Dated: 09/19/2024

By:

A. Amponsah

A. Amponsah, Deputy Clerk

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>09/19/2024<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _A. Amponsah_ Deputy<br>A. Amponsah |
| PLAINTIFF/PETITIONER:<br>Theya Kanagarantnam | |
| DEFENDANT/RESPONDENT:<br>Selene Finance LP et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24CV061740 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Theya Kanagarantnam
2316 Lakeshore Ave.
#16
Oakland, CA 94606

Chad Finke, Executive Officer / Clerk of the Court

Dated: 09/19/2024                    By:

_A. Amponsah_

A. Amponsah, Deputy Clerk

**CERTIFICATE OF MAILING**

# EXHIBIT "16"

1 | Kelly Andrew Beall (SBN 162456)
  | *kabeall@ww.law*
2 | WOLFE & WYMAN LLP
  | 2212 Dupont Drive
3 | Irvine, California 92612-1525
  | Telephone: (949) 475-9200
4 | Facsimile: (949) 475-9203

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
09/20/2024 at 11:09:29 AM
By: Angela Linhares,
Deputy Clerk

5 | Attorneys for Defendants,
6 | SELENE FINANCE LP and U.S. BANK TRUST NATIONAL
  | ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT
7 | SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF ALAMEDA

11 | THEYA KANAGARATNAM,

| Case No.: 24CV061740

12 | Plaintiff,

| Assigned to the Hon. Rebekah Evenson, Dept 24

13 | v.

14 | SELENE FINANCE LP, US BANK TRUST NATIONAL ASSOCIATION, MTC FINANCIAL, INC DBA TRUSTEE CORPS AND DOES 1-20,

| **DEFENDANTS' NOTICE OF ENTRY OF JUDGMENT OF DISMISSAL WITH PREJUDICE**

16 | Defendants.

| Action Filed: January 29, 2024

19 | **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

20 | PLEASE TAKE NOTICE that on August 29, 2024, a Judgment of Dismissal With

21 | Prejudice was entered in favor of Defendants, SELENE FINANCE LP and U.S. BANK TRUST

22 | NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS

23 | OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST and against Plaintiff, THEYA

24 | ///

25 | ///

26 | ///

27 | ///

28 | ///

1

DEFENDANTS' NOTICE OF ENTRY OF JUDGMENT OF DISMISSAL WITH PREJUDICE

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

5021921.1

1   KANAGARATNAM.  A true and correct copy of the Judgment Of Dismissal With Prejudice is

2   attached hereto as **Exhibit "1"** and incorporate herein by reference.

3

4   DATED:  September 19, 2024                WOLFE & WYMAN LLP

5

6                                            By: _____

7                                                KELLY ANDREW BEALL
                                             Attorneys for Defendants,
8                                            **SELENE FINANCE LP and U.S. BANK TRUST**
                                             **NATIONAL ASSOCIATION, NOT IN ITS**
9                                            **INDIVIDUAL CAPACITY BUT SOLELY AS**
                                             **OWNER TRUSTEE FOR RCF 2 ACQUISITION**
10                                           **TRUST**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' NOTICE OF ENTRY OF JUDGMENT OF DISMISSAL WITH PREJUDICE**

5021921.1

# EXHIBIT "1"

Electronically Received 08/27/2024 10:14 AM

1 | Kelly Andrew Beall (SBN 162456)
*kabeall@ww.law*
2 | WOLFE & WYMAN LLP
2212 Dupont Drive
3 | Irvine, California 92612-1525
Telephone: (949) 475-9200
4 | Facsimile:  (949) 475-9203

**FILED**
Superior Court of California
County of Alameda
08/29/2024
Chad Fike, Executive Officer/Clerk of the Court
By: _____ Deputy
A. Amponsah

5 | Attorneys for Defendants,
SELENE FINANCE LP and U.S. BANK TRUST NATIONAL
6 | ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT
SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST
7 |

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF ALAMEDA

10 |

11 | THEYA KANAGARATNAM,

12 | Plaintiff,

13 | v.

14 | SELENE FINANCE LP, US BANK TRUST
NATIONAL ASSOCIATION, MTC
15 | FINANCIAL, INC DBA TRUSTEE CORPS
AND DOES 1-20,
16 |
17 | Defendants.

Case No.: 24CV061740

Assigned to the Hon. ~~Karin Schwartz~~ Rebekah Evenson, Dept 24

~~[PROPOSED]~~ JUDGMENT OF
DISMISSAL WITH PREJUDICE

Action Filed:  January 29, 2024

18 |

19 | TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

20 | PLEASE TAKE NOTICE that Defendants, SELENE FINANCE LP and U.S. BANK

21 | TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS

22 | OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST'S Demurrer to Plaintiff, THEYA

23 | KANAGARATNAM'S First Amended Complaint came on regularly for hearing in Dept. 24 on

24 | August 22, 2024, before the Hon. Judge ~~Karin Schwartz~~ Rebekah Evenson, Judge Presiding.

25 | The Court having sustained Defendants, SELENE FINANCE LP and U.S. BANK TRUST

26 | NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS

27 | OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST'S Demurrer without leave to amend now

28 | rules as follows:

1

4994298.1

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

1   **IT IS HEREBY ORDERED AS FOLLOWS:**

2       Judgment of dismissal with prejudice on the First Amended Complaint shall be entered in

3   favor of Defendants, SELENE FINANCE LP and U.S. BANK TRUST NATIONAL

4   ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE

5   FOR RCF 2 ACQUISITION TRUST and against Plaintiff, THEYA KANAGARATNAM.

6   **IT IS HEREBY FURTHER ORDERED AS FOLLOWS:**

7       Defendants, SELENE FINANCE LP and U.S. BANK TRUST NATIONAL

8   ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE

9   FOR RCF 2 ACQUISITION TRUST are hereby awarded costs against Plaintiff, THEYA

10  KANAGARATNAM.

11

12  **IT IS SO ORDERED.**

13

14  DATED:  08/29/2024        By: ~~Rebekah Evenson~~

15                             ~~Hon. Karin Schwartz,~~

                             JUDGE OF THE SUPERIOR COURT

16                               **Rebekah Evenson / Judge**

17

18

19

20

21

22

23

24

25

26

27

28

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

2

[PROPOSED] JUDGMENT OF DISMISSAL WITH PREJUDICE

4994298.1

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                            )      ss.
COUNTY OF ORANGE            )

I, Kathy A. Hagmaier, declare:

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business and email addresses are as follows: 2212 Dupont Drive, Irvine, California 92612-1525; kahagmaier@ww.law

On August 27, 2024, I served the document(s) described [PROPOSED] JUDGMENT OF DISMISSAL WITH PREJUDICE on all interested parties as follows:

☒     BY MAIL as stated on the ATTACHED SERVICE LIST as follows:

☒     STATE - I am "readily familiar" with Wolfe & Wyman LLP's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐     FEDERAL – I deposited such envelope in the U.S. Mail at Irvine, California, with postage thereon fully prepaid.

☒     BY ELECTRONIC MAIL SERVICE as follows: I caused the following party(s) to be served the above listed document(s) by electronic mail service at the following email addresses to the party(ies) noted on the attached Service List:

☐     BY PERSONAL SERVICE as follows: I caused a copy of such document(s) to be delivered by hand to the offices of the addressee between the hours of 9:00 A.M. and 5:00 P.M.

☐     BY OVERNIGHT COURIER SERVICE as follows:  I caused such envelope to be delivered by overnight courier service to the offices of the addressee.  The envelope was deposited in or with a facility regularly maintained by the overnight courier service with delivery fees paid or provided for.

☒     STATE          I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐     FEDERAL          I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.

Executed on August 27, 2024, at Irvine, California.

Kathy A. Hagmaier

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

4810142.1



**SERVICE LIST**
Alameda County Superior Court 24CV061740
KANAGARANTNAM V. SELENE FINANCE LP, et al.
W&W File No. 1467-024
[Revised: March 18, 2024]

Theya Kanagaratnam
2316 Lakeshore Avenue, #16
Oakland, CA 94606

Plaintiff in Pro Per

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

4810142.1

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>09/19/2024<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _A. Amponsah_ Deputy<br>A. Amponsah |
| PLAINTIFF/PETITIONER:<br>Theya Kanagarantnam | |
| DEFENDANT/RESPONDENT:<br>Selene Finance LP et al | |
| CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6 | CASE NUMBER:<br>24CV061740 |

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Judgment entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.

Kelly Andrew Beall
WOLFE & WYMAN LLP
kabeall@ww.law

Chad Finke, Executive Officer / Clerk of the Court

Dated: 09/19/2024                    By:

_A. Amponsah_

A. Amponsah, Deputy Clerk

**CERTIFICATE OF ELECTRONIC SERVICE**
**CODE OF CIVIL PROCEDURE 1010.6**

| **SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>09/19/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _A. Amponsah_ Deputy<br>A. Amponsah |
| PLAINTIFF/PETITIONER:<br>Theya Kanagarantnam | |
| DEFENDANT/RESPONDENT:<br>Selene Finance LP et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24CV061740 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Theya Kanagarantnam
2316 Lakeshore Ave.
#16
Oakland, CA 94606

Chad Finke, Executive Officer / Clerk of the Court

Dated: 09/19/2024

By:

_A. Amponsah_

A. Amponsah, Deputy Clerk

**CERTIFICATE OF MAILING**

1  PROOF OF SERVICE

2  STATE OF CALIFORNIA )
                      )    ss.
3  COUNTY OF ORANGE   )

4  I, Kathy A. Hagmaier, declare:

5  I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action.
   My business and e-mail addresses are as follows: 2212 Dupont Drive, Irvine, California 92612-1525;
6  kahagmaier@ww.law

7  On September 20, 2024, I served the document(s) described **DEFENDANTS' NOTICE OF ENTRY OF JUDGMENT
   OF DISMISSAL WITH PREJUDICE** on all interested parties as follows:

8

9  ☒    **BY MAIL** as stated on the ATTACHED SERVICE LIST as follows:

10      ☒    **STATE** - I am "readily familiar" with Wolfe & Wyman LLP's practice of collection and processing
             correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same
11           day with postage thereon fully prepaid at Irvine, California, in the ordinary course of business. I am aware that
             on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more
12           than one (1) day after date of deposit for mailing in affidavit.

13      ☐    **FEDERAL** – I deposited such envelope in the U.S. Mail at Irvine, California, with postage thereon
             fully prepaid.

14

15  ☒    **BY ELECTRONIC MAIL SERVICE** as follows: I caused the following party(s) to be served the above listed
         document(s) by electronic mail service at the following email addresses to the party(ies) noted on the attached
        Service List:

16

17  ☐    **BY PERSONAL SERVICE** as follows: I caused a copy of such document(s) to be delivered by hand to the
         offices of the addressee between the hours of 9:00 A.M. and 5:00 P.M.

18  ☐    **BY OVERNIGHT COURIER SERVICE** as follows: I caused such envelope to be delivered by overnight
         courier service to the offices of the addressee. The envelope was deposited in or with a facility regularly
19       maintained by the overnight courier service with delivery fees paid or provided for.

20  ☒    **STATE**        I declare under penalty of perjury under the laws of the State of California that the above is true
             and correct.

21

22  ☐    **FEDERAL**      I declare that I am employed in the offices of a member of the State Bar of this Court at whose
             direction the service was made.

23      Executed on September 20, 2024, at Irvine, California.

24                                                        Kathy A. Hagmaier

25

26

27

28

*(left margin vertical text)* WOLFE & WYMAN LLP — ATTORNEYS & COUNSELORS AT LAW

4810142.1

SERVICE LIST
Alameda County Superior Court 24CV061740
KANAGARANTNAM V. SELENE FINANCE LP, et al.
W&W File No. 1467-024
[Revised: March 18, 2024]

Theya Kanagaratnam
2316 Lakeshore Avenue, #16
Oakland, CA 94606

Plaintiff in Pro Per



4810142.1

# EXHIBIT "17"

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Rene C. Davidson Courthouse

| | |
|---|---|
| Theya Kanagarantnam<br>        Plaintiff/Petitioner(s)<br>vs.<br>Selene Finance LP et al<br>        Defendant/Respondent<br>(s) | No.    24CV061740<br><br>Date:    11/07/2024<br>Time:    9:00 AM<br>Dept:    24<br>Judge:    Rebekah Evenson<br><br>ORDER re: Hearing on Motion to Set<br>    Aside/Vacate Judgment<br>    (CCP 473) filed by Selene<br>    Finance LP (Defendant);<br>    US Bank Trust National<br>    Association (Defendant)<br>    on 09/25/2024 |

Prior to the hearing, the Court issued a tentative ruling, which was not contested and was affirmed as set forth below.

On August 22, 2024, the Court sustained the demurrer to Plaintiff's First Amended Complaint by Defendants Selene Finance LP and US Bank Trust National Association, without leave to amend, and dismissed those Defendants from this case, with prejudice.

On August 29, 2024, the Court entered a Judgment of Dismissal, with prejudice, in favor of those Defendants.

On September 18, 2024, Plaintiff filed a document captioned "Notice to Court of Assigned Trusteeship to Set Off Settle, Discharge and Balance Account to Zero, Release Lien and Reconvey Title per Discharge Bonds Issued". Page 3 of that document begins with a heading that states "Motion to Set Aside Judgment, Discharge Alleged Debt, Release Lien and Reconvey Title".

The Court construes Plaintiff's September 18, 2024 filing as a motion to vacate the August 29, 2024 judgment entered in favor of Defendants Selene Finance LP and US Bank Trust National Association.

That motion is **DENIED.** Plaintiff sets forth no valid ground to vacate the August 29, 2024 judgment, or any legally cognizable reason why the Court's August 22, 2024 order sustaining those Defendants' demurrer to Plaintiff's First Amended Complaint was in error.

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

The Court orders counsel to obtain a copy of this order from the eCourt portal.

Dated :  11/07/2024

*Rebekah Evenson*

**Rebekah Evenson / Judge**

---

ORDER re: Hearing on Motion to Set Aside/Vacate Judgment (CCP 473)
filed by Selene Finance LP (Defendant); US Bank Trust
National Association (Defendant) on 09/25/2024                    Page 2 of 2

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>11/08/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _A. Amponsah_ Deputy<br>A. Amponsah |
| PLAINTIFF/PETITIONER:<br>Theya Kanagarantnam | |
| DEFENDANT/RESPONDENT:<br>Selene Finance LP et al | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>24CV061740 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Order re: Hearing on Motion to Set Aside/Vacate Judgment (CCP 473) filed by Selene Finance LP (Defendant); US Bank Trust National Association (Defendant) on 09/25/2024 entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Kelly Andrew Beall
WOLFE & WYMAN LLP
kabeall@ww.law

Theya Kanagarantnam

Chad Finke, Executive Officer / Clerk of the Court

Dated: 11/08/2024

By:

_A. Amponsah_

A. Amponsah, Deputy Clerk

**CERTIFICATE OF ELECTRONIC SERVICE
CODE OF CIVIL PROCEDURE 1010.6**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612<br><br>PLAINTIFF/PETITIONER:<br>Theya Kanagarantnam<br><br>DEFENDANT/RESPONDENT:<br>Selene Finance LP et al | **FILED**<br>Superior Court of California<br>County of Alameda<br>11/08/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: A. Amponsah Deputy<br>A. Amponsah |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24CV061740 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Theya Kanagarantnam
2316 Lakeshore Ave.
#16
Oakland, CA 94606

Chad Finke, Executive Officer / Clerk of the Court

Dated: 11/08/2024

By:

A. Amponsah

A. Amponsah, Deputy Clerk

**CERTIFICATE OF MAILING**

# EXHIBIT "18"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

| | |
|---|---|
| Theya Kanagarantnam<br>          Plaintiff/Petitioner(s)<br>vs.<br>Selene Finance LP et al<br>          Defendant/Respondent<br>(s) | No.    24CV061740<br><br>Date:    09/30/2024<br>Time:    1:05 PM<br>Dept:    24<br>Judge:    Rebekah Evenson<br><br>ORDER |

On September 20, 2024, Plaintiff filed a document entitled "Notice To Court Of Assigned Trusteeship To Set Off, Settle, Discharge And Balance Account," and on September 26, 2024, Plaintiff filed a document entitled "Notice of Court Equity to Enforce Settlement, Release Lien and Reconvey Title." Included with these submissions are documents that purport to be motions, declarations, and other papers, but the documents are unclear and unintelligible.

To the extent that Plaintiff seeks ex parte relief via these papers, Plaintiff has failed to comply with the applicable rules regarding ex parte applications. (see California Rules of Court, rule 3.1201 et seq.) Specifically, Plaintiff failed to submit a declaration regarding service, a declaration making the factual showing required by rule 3.1202(c), a memorandum, or a proposed order.

To the extent that Plaintiff seeks to file a noticed motion, Plaintiff has failed to comply with the applicable rules regarding motions. (see California Rules of Court, rule 3.1100 et seq. and Local Rule 3.30.) Plaintiff has not reserved a date for a noticed motion, and there is no indication that Plaintiff served a noticed motion on Defendants.

Because the documents filed on September 20 and 26 do not conform to the rules of court, and do not conform to the requirements for ex parte applications or noticed motions, the Court does not intend to set a hearing or issue a further order addressing those documents.

Clerk is directed to serve copies of this order, with proof of service, to counsel and to self-represented parties of record.


Dated :  09/30/2024

*Rebekah Evenson*

**Rebekah Evenson / Judge**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

| **SUPERIOR COURT OF CALIFORNIA** **COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>09/30/2024<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _A. Amponsah_ Deputy<br>A. Amponsah |
| PLAINTIFF/PETITIONER:<br>Theya Kanagarantnam | |
| DEFENDANT/RESPONDENT:<br>Selene Finance LP et al | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>24CV061740 |

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the General Order (Court Order) entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.

Kelly Andrew Beall                                          Theya Kanagarantnam
WOLFE & WYMAN LLP
kabeall@ww.law

Chad Finke, Executive Officer / Clerk of the Court

Dated: 09/30/2024                    By:

_A. Amponsah_

A. Amponsah, Deputy Clerk

**CERTIFICATE OF ELECTRONIC SERVICE**
**CODE OF CIVIL PROCEDURE 1010.6**

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA**<br><br>COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612<br><br>PLAINTIFF/PETITIONER:<br>Theya Kanagarantnam<br><br>DEFENDANT/RESPONDENT:<br>Selene Finance LP et al | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Alameda<br>09/30/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _A. Amponsah_ Deputy<br>A. Amponsah |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24CV061740 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Theya Kanagarantnam
2316 Lakeshore Ave.
#16
Oakland, CA 94606

Chad Finke, Executive Officer / Clerk of the Court

Dated: 09/30/2024

By:

_A. Amponsah_

A. Amponsah, Deputy Clerk

**CERTIFICATE OF MAILING**

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ALAMEDA

| | |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br><br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>09/15/2025<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _____ Deputy<br>G. Fu |
| PLAINTIFF/PETITIONER:<br>Theya Kanagarantnam | |
| DEFENDANT/RESPONDENT:<br>Selene Finance LP et al | |
| **NOTICE OF REJECTION – PLEADINGS** | CASE NUMBER<br>24CV061740 |

We are unable to process your ☐ **complaint/petition** ☐ **answer/response** ☐ **general denial** ☐ **amended complaint** ☐ **cross-complaint** ☐ **other:** _____ submitted on _____ for the following reason(s):

1. ☐ The required fee of $ _____ was not submitted.

2. ☐ Check enclosed in the amount of $_____ is ☐ altered T ☐ unsigned.

3. ☐ The case number ☐ is missing ☐ does not correspond to our records.

4. ☐ Summons must conform exactly to the caption of the complaint.

5. ☐ Proof of service of cross-complaint on all parties who have appeared on this case is required.

6. ☐ Reclassification fee of $ _____ is required with filling of ☐ cross-complaint ☐ amended complaint, as this document is changing the jurisdiction of the case.

7. ☐ A court order is required in order to file this ☐ cross-complaint ☐ amended complaint.

8. ☑ Other: _Document must be on pleading paper format per California Rules of Court 2.111. Enclose is information on Local Rule, sample and blank pleading papers for your use._
   _____

Chad Finke, Executive Officer / Clerk of the Court

Dated: _09/15/2025_____    By: _____
                                          Deputy Clerk
                                   G. Fu, Deputy Clerk

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>09/15/2025<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ Deputy<br>G. Fu |
| PLAINTIFF/PETITIONER:<br>Theya Kanagarantnam | |
| DEFENDANT/RESPONDENT:<br>Selene Finance LP et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24CV061740 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Theya Kanagarantnam
2316 Lakeshore Ave. #16
Oakland, CA, 94606

Chad Finke, Executive Officer / Clerk of the Court

Dated: 09/15/2025                    By:

G. Fu, Deputy Clerk

**CERTIFICATE OF MAILING**

# EXHIBIT "19"

2025097545        08/04/2025 09:31 AM    4 PGS

OFFICIAL RECORDS OF ALAMEDA COUNTY
MELISSA WILK, CLERK-RECORDER
RECORDING FEES: $108.00

RECORDING REQUESTED BY:

ServiceLink

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

**ELECTRONICALLY RECORDED**

| APN: 023-0415-036-00 | TS No: CA08000646-23-1 | TO No: 230240783-CA-VOI |
|---|---|---|

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
**(The above statement is made pursuant to CA Civil Code Section 2923.3(d)(1).  The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(d)(2).)**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED May 24, 2013.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On **September 8, 2025** at **12:00 PM**, at the **Fallon Street emergency exit to the Alameda County Courthouse, 1225 Fallon St., Oakland, CA 94612, MTC Financial Inc. dba Trustee Corps**, as the duly Appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust recorded on June 19, 2013 as Instrument No. 2013215140, of official records in the Office of the Recorder of Alameda County, California, executed by THEYA KANAGARATNAM, A SINGLE WOMAN, as Trustor(s), in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, as nominee for QUICKEN LOANS INC.. MML 5357 as Beneficiary, **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER**, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as: **SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

The property heretofore described is being sold "as is".  The street address and other common designation, if any, of the real property described above is purported to be: 2316 LAKESHORE AVE APT 16, OAKLAND, CA 94606

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

APN: 023-0415-036-00                TS No: CA08000646-23-1                TO No: 230240783-CA-VOI

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $360,001.79 (Estimated).    However, prepayment premiums, accrued interest and advances will increase this figure prior to sale.  Beneficiary's bid at said sale may include all or part of said amount.  In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the Trustee.  In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right.  The property offered for sale excludes all funds held on account by the property receiver, if applicable.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

## Notice to Potential Bidders

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a Trustee auction.  You will be bidding on a lien, not on the property itself.  Placing the highest bid at a Trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien.  If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property.  You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information.  If you consult either of these resources, you should be aware that the same Lender may hold more than one mortgage or Deed of Trust on the property.

## Notice to Property Owner

The sale date shown on this Notice of Sale may be postponed one or more times by the Mortgagee, Beneficiary, Trustee, or a court, pursuant to Section 2924g of the California Civil Code.  The law requires that information about Trustee Sale postponements be made available to you and to the public, as a courtesy to those not present at the sale.  If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may visit the Internet Website address www.nationwideposting.com or call Nationwide Posting & Publication at 916.939.0772 for information regarding the Trustee's Sale for information regarding the sale of this property, using the file number assigned to this case, CA08000646-23-1.  Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Website.  The best way to verify postponement information is to attend the scheduled sale.

APN: 023-0415-036-00          TS No: CA08000646-23-1          TO No: 230240783-CA-VOI

## <u>Notice to Tenant</u>

### NOTICE TO TENANT FOR FORECLOSURES AFTER JANUARY 1, 2021

You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call 916.939.0772, or visit this internet website www.nationwideposting.com, using the file number assigned to this case CA08000646-23-1 to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

Date: August 1, 2025

MTC Financial Inc. dba Trustee Corps
TS No. CA08000646-23-1
17100 Gillette Ave
Irvine, CA 92614
Phone: 949-252-8300
TDD: 711 949.252.8300

_____

By: Bernardo Sotelo, Authorized Signatory

**SALE INFORMATION CAN BE OBTAINED ONLINE AT www.nationwideposting.com**
**FOR AUTOMATED SALES INFORMATION PLEASE CALL:**
**Nationwide Posting & Publication AT 916.939.0772**

**To the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.**

APN: 023-0415-036-00                    TS No: CA08000646-23-1                    TO No: 230240783-CA-VOI

## EXHIBIT "A"

PARCEL ONE:

AN UNDIVIDED 4.2% INTEREST AS TENANT IN COMMON IN AND TO TRACT 4135, FILED APRIL 2, 1979, IN BOOK 110, PAGE 5, OF MAPS, ALAMEDA COUNTY RECORDS.

EXCEPTING THEREFROM, UNIT 1 TO 16, BUILDING 2316 AND UNITS 1 TO 6, BUILDING 2324, AS SHOWN ON THE CONDOMINIUM PLAN ATTACHED AS EXHIBIT D TO THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS TO TRACT MAP 4135, REFERRED TO IN PARCEL ONE, A CONDOMINIUM PROJECT, RECORDED APRIL 4, 1979, SERIES NO. 79-062227, OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM, EASEMENTS FOR PARKING AREAS AND STORAGE AREAS AS SHOWN ON THE CONDOMINIUM PLAN REFERRED TO IN PARCEL ONE.

PARCEL TWO:

UNIT 16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

PARCEL THREE:

AN EXCLUSIVE EASEMENT TO USE PARKING AREA NO. P-6, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

PARCEL FOUR:

AN EXCLUSIVE EASEMENT TO USE STORAGE SPACE NO. S-16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

# EXHIBIT "20"



## Property Search Detail

| | |
|---|---|
| Status: | Sold to outside party for: $444,449.45 |
| APN: | 023-0415-036-00 |
| TS Number: | CA08000646-23-1 |
| Sale Date: | 09/16/2025 |
| Sale Time: | 12:00 PM |
| Sale County: | ALAMEDA |
| Property Address: | 2316 LAKESHORE AVE APT 16<br>OAKLAND, CA 94606 |
| Sale Location: | At the Fallon Street emergency exit to the Alameda County Courthouse, 1225 Fallon St., Oakland, CA 94612 |
| Final Bid: | $444,449.45 |

**NOTE TO ANY ELIGIBLE POST SALE BIDDERS:** If the property is subject to CA Civil Code §2924f and 2924m and you are an eligible post sale tenant buyer or eligible post sale bidder as defined in CA Civil Code §2924m you must timely send your written notice of intent to bid and/or a post-sale bid to the trustee, **Trustee Corps,17100 Gillette Ave., , Irvine, CA, 92614** as required pursuant to CA Civil Code § 2924m. This NOTE is provided solely for the purpose of providing the trustee's mailing address and should not be taken as legal advice. If you think you may qualify as an eligible post sale tenant buyer or eligible post sale bidder you should consider contacting an attorney or appropriate real estate professional for advice.

Nationwide Posting & Publication
A Division of First American Title Insurance Company

First American Title Insurance Company, and the operating divisions thereof, make no express or implied warranty respecting the information presented and assume no responsibility for errors or omissions. First American and the eagle logo are registered trademarks or trademarks of First American Financial Corporation and/or its affiliates.

©2025 First American Financial Corporation and/or its affiliates. All rights reserved.

**Privacy Notice**

This website uses cookies and similar technologies to manage your sessions, manage content, and improve your website experience. To learn more about these technologies, your options, and about other categories of personal information we collect through this website and how we may use it, please see our Privacy Policy.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Adriana Barrett, declare as follows:

I am employed in the County of Orange, State of California.  I am over the age of eighteen (18) and not a party to the within action.  My business address is 4665 MacArthur Court, Suite 200, Newport Beach, California 92660.  I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service.  Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

On October 20, 2025, I served the within **DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS COMPLAINT** on all interested parties in this action as follows:

[ ]    by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Theya Kanagaratnam
2316 Lakeshore Ave, 16
Oakland, CA 94606
*Plaintiff pro per*

**[X]    (BY MAIL SERVICE)** I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ ]    (BY ELECTRONIC SERVICE) Based on an agreement of the parties to accept service electronically, I caused the document(s) to be transmitted electronically to the e-mail address(es) indicated herein. To the best of my knowledge, the transmission was reported as complete, and no error was reported that the electronic transmission was not completed.

[ ]    (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(b)(2)(E). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(b)(2)(E).  A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

**[X]    (FEDERAL)** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 20, 2025, at Newport Beach, California.

*Adriana Barrett*
_____
Adriana Barrett

1
**PROOF OF SERVICE**